```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
In re:

LIBOR-Based Financial Instruments          MEMORANDUM AND ORDER
Antitrust Litigation.
                                           11 MDL 2262 (NRB)


This Document Applies to:

CASES LISTED IN APPENDIX.
------------------------------------X
```
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Defendants Coöperatieve Rabobank U.A. (f/k/a Coöperatieve Centrale Raiffeisen-Boerenleenbank B.A.); Bank of America, N.A.; and Credit Suisse Group AG, Credit Suisse AG, and Royal Bank of Canada seek leave to file motions to strike class allegations in the Exchange-Based, Mortgagor, and Over-the-Counter ("OTC") complaints, respectively. Letter from David R. Gelfand, ECF No. 1308; Letter from Arthur J. Burke, ECF No. 1315; Letter from Jason Hall, ECF No. 1318.  For the reasons stated herein, defendants' requests are denied, except that we strike the nationwide class allegations in the Mortgagor complaint.

I.  **Legal Standard**

A court will deny a motion to strike as premature unless the defendants "demonstrate from the face of the [c]omplaint that it would be impossible to certify the alleged class regardless of the facts [the] [p]laintffs may be able to obtain during discovery." Reynolds v. Lifewatch, Inc., --- F. Supp. 3d

1

----, No. 14 CV 3575, 2015 WL 5730792, at *4, 2015 U.S. Dist. LEXIS 133130, at *11 (S.D.N.Y. Sept. 29 2015) (alterations in original, internal quotation marks omitted).  We will discuss each application seriatim.

## II.   Exchange-Based Class

Defendant Coöperatieve Rabobank U.A. (f/k/a Coöperatieve Centrale Raiffeisen-Boerenleenbank B.A.) ("Rabobank") seeks leave to file a motion to strike the trader-based class allegations in the Exchange-Based Plaintiffs' complaint. Rabobank argues that (1) individualized liability and standing issues will predominate over common questions; (2) the proposed class is overbroad; (3) the proposed class is a "fail-safe" class; and (4) the proposed class is not ascertainable.

Rabobank argues that individual issues will predominate over common ones due to the day-by-day nature of plaintiffs' trader-based claims.  At bottom, this argument is another version of Rabobank's argument that the class is overbroad: according to Rabobank, given the limited number of claims this Court has allowed plaintiffs to plead, proof of such manipulation will have no impact on the vast majority of those who traded in Eurodollar futures during the multi-year class period, and therefore will not resolve an issue common to the class as a whole.  But the typical relief for an overbroad class is, if possible, redefinition, not the termination of class

2

allegations.  See Robidoux v. Celani, 987 F.2d 931, 937 (2d Cir. 1993) ("A court is not bound by the class definition proposed in the complaint and should not dismiss the action simply because the complaint seeks to define the class too broadly.").  Other courts in this Circuit have certified classes addressing conduct on particular days, see In re Amaranth Natural Gas Commodities Litig., 269 F.R.D. 366, 386-87 (S.D.N.Y. 2010),[1] and plaintiffs concede that the class definition is subject to revision.  See Letter of Christopher Lovell & David E. Kovel at 8, ECF No. 1323 ("[T]he preliminary definition of the Class must be general."). The precise scope of plaintiffs' claims will presumably be clarified by the completion of class discovery.  At that time the plaintiffs will bear the burden of articulating a class definition that meets the requirements of Rule 23.  To the extent that Rabobank contends that a common question must be common to every class member, that is not the law.  See Johnson v. Nextel Commc'ns, 780 F.3d 128, 137 (2d Cir. 2015) ("Rule 23(a)(2) simply requires that there be issues whose resolution

---

[1] That Amaranth involved fewer futures contracts over a shorter period of time certainly suggests that plaintiffs in this case may face greater challenges in devising a model demonstrating artificiality and causation than plaintiffs in Amaranth, but it does not compel this Court to strike the class allegations.  Rabobank further suggests that Amaranth possesses less persuasive force in light of the Supreme Court's decision in Comcast Corp. v. Behrend, 133 S.Ct. 1426 (2013), because the Court in Amaranth "deferred until trial a number of issues that now must be determined at the class certification stage."  Letter of David R. Gelfand at 3, ECF No. 1331.  While Rabobank's point is well-taken, the requirements of Comcast do not compel a holding at this stage that plaintiffs cannot put forward a model sufficient to meet the required standards.

will affect all or a significant number of the putative class members." (emphasis added)).

Nor will individual standing issues necessarily predominate over common issues.  Rabobank contends that a trial would be consumed by individualized inquiry into whether each putative class member has suffered damages.  While Rabobank notes a number of factors that may need to be taken into account in order to determine whether an absent member of the putative class was injured by Rabobank's conduct, they have not shown that such issues could not be "determined objectively through mechanical calculation," Amaranth, 269 F.R.D. at 381, thus obviating the need for numerous "mini-trials" as to every putative class member's holdings.

Rabobank further argues that plaintiffs' proposed class is an impermissible "fail-safe" class, or one defined in terms of legal injury, because it only includes as class members traders in Eurodollar futures who "were harmed" by manipulation of LIBOR.  Such a class necessarily raises individual questions, as the factfinder must determine whether an individual has a claim in order to determine whether he or she belongs in the class.  However, Rabobank has identified no case holding that the appropriate relief is to strike the class allegations entirely, and, as with an overbroad class, reformation of the class definition, if possible, is the appropriate response.  See

4

Mazzei v. Money Store, 288 F.R.D. 45, 55 (S.D.N.Y. 2012) (redefining class to avoid fail-safe class).

Finally, Rabobank contends that the class is unascertainable, because the current record shows that plaintiffs will be unable to obtain documents to demonstrate who should form a part of the class.  Rule 23 includes an implied requirement of ascertainability, "the touchstone of [which] is whether the class is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member."  Brecher v. Republic of Argentina, 806 F.3d 22, 24 (2d Cir. 2015) (internal quotation marks omitted).  While the length of time that has passed since the events underlying these cases and the challenges some parties have encountered in obtaining the relevant trading records certainly indicate that plaintiffs may find it difficult to show that they can identify class members, this argument is decidedly not one grounded on the complaint alone, and is therefore an improper basis for a motion to strike.

**III. Mortgagor Class**

Defendant Bank of America, N.A. ("Bank of America") requests leave to strike the class allegations in the putative Mortgagor Class' First Amended Complaint.  Plaintiff Carlito J. Rivera brings claims of fraud by omission and of violations of California's Unfair Competition Law ("UCL").  Rivera originally

5

sought to represent a class consisting of "[a]ll residents of the United States of America who obtained a LIBOR-indexed Adjustable Rate Mortgage loan from Defendant Bank of America, N.A. during the Manipulation Period [March 2007 through March 2011]."[2]  First Amended Complaint ¶ 243, ECF No. 844.  Bank of America argues that this Court should strike the class allegations because (1) variations in state laws preclude class certification; (2) individual issues of actual and justifiable reliance predominate over common issues; and (3) individual issues of mitigation predominate over common issues.

Following the filing of Bank of America's letter application, Rivera limited his putative class to California residents, contending that this concession rendered Bank of America's state-law argument moot.  However, we find that Rivera's concession is not so limited.  Rather, having decided to limit his claims to California residents, his nationwide class allegations are struck.

None of Bank of America's remaining arguments is availing. First, reliance, in this case, does not present an inherently individual issue.  Under California case law "a presumption, or at least an inference, of reliance arises" in fraud claims

---

[2] This Court dismissed the First Amended Complaint's causes of action against other defendants in LIBOR V and allowed only Rivera's claims against his counterparty Bank of America to proceed, 11 MD 2262, 2015 WL 6696407, at *17, 2015 U.S. Dist. LEXIS 149629, at *90 (S.D.N.Y. Nov. 3, 2015), rendering the broader class definition alleged in the First Amended Complaint no longer applicable.

"wherever there is a showing that a misrepresentation was material." Engalla v. Permanente Med. Grp., Inc., 15 Cal. 4th 951, 977, 938 P.2d 903, 919 (1997), as modified (July 30, 1997). Courts applying California law have found that that presumption extends to the class such that reliance may be proved on a classwide basis if, for instance, all class members received the same representations and the class representatives establish actual reliance. See, e.g., Jordan v. Paul Fin., LLC, 285 F.R.D. 435, 465-66 (N.D. Cal. 2012). Therefore, Rivera may be able to make a showing of classwide reliance through common proof, and as a result reliance does not present an inherently individual issue in this context.[3]

Finally, Bank of America's mitigation defense does not present an issue that, as a matter of law, predominates over common issues. Even if "a defense . . . arise[s] and . . . affect[s] different class members differently, [this fact] does not compel a finding that individual issues predominate over common ones." Augustin v. Jablonsky (In re Nassau Cty. Strip Search Cases), 461 F.3d 219, 225 (2d Cir. 2006). Rather, the fact that individual issues exist will need to be weighed against the common issues Rivera is able to prove when the Court determines whether common or individual issues predominate.

---

[3] This argument applies with even more force to Rivera's UCL claim, which, for absent class members, requires not reliance, but only exposure to the allegedly fraudulent representations. See, e.g., Stearns v. Ticketmaster Corp., 655 F.3d 1013, 1020 (9th Cir. 2011).

Such an analysis is properly conducted at the class certification stage.

## IV. OTC Class

Defendants Credit Suisse Group AG, Credit Suisse AG, and Royal Bank of Canada seek leave to strike class allegations in the OTC complaint as to claims brought by plaintiff SEIU Pension Plans Master Trust ("SEIU"). SEIU purchased bonds issued by affiliates of defendants, and SEIU's counterparties allegedly acted as the agents of defendants for the purposes of issuing the relevant bonds. SEIU brings claims of breach of the implied covenant of good faith and fair dealing and unjust enrichment. Defendants assert that four issues involving 1) intent; (2) agency; (3) damages; and (4) defenses bar class certification as a matter of law. None of these issues precludes class certification based on the complaint alone.

First, defendants argue that evaluating defendants' intent will involve numerous individual inquiries into the state of mind "of the individuals involved in issuing and/or monitoring each bond," which "will differ for each Defendant and issuance." Letter of Jason Hall at 2, ECF No. 1318. However, as plaintiffs correctly note, they may prove intent by focusing on the alleged manipulation of LIBOR, see LIBOR III, 27 F. Supp. 3d 447, 483 (S.D.N.Y. 2014), and do not need to inquire as to the state of mind of the individuals issuing any specific instrument.

8

Because plaintiffs may be able to make such a showing through common proof, intent does not present an inherently individual issue, much less one that necessarily predominates over common issues.

Second, defendants contend that the fact-intensive nature of the agency analysis dictates that plaintiffs' class allegations fail as a matter of law. According to defendants, this is so because the necessity of proving an agency relationship is either unique to SEIU, in which case SEIU's claims are no longer typical of the class, see Fed. R. Civ. P. 23(a)(3), or multiple class members possess similar claims against counterparties other than those to SEIU's transactions, in which case a trial would need to involve inquiries as to each counterparty's relationship with a defendant. However, we have been given no reason at this stage to conclude that SEIU's claims are atypical, as they arise out of bond offerings that each have a face value of at least a billion dollars, nor have defendants identified any reason to conclude that examining the relationship between defendants and their subsidiaries or affiliates entails an individual question. See Fed. R. Civ. P. 23(b)(3) (class action may be maintained if "questions of law or fact common to class members predominate over any questions affecting only individual members" of the class (emphasis added)); Joseph M. McLaughlin, McLaughlin on Class Actions §

5:23 ("If, to establish a prima facie showing on a given question, the plaintiffs will need to present evidence that varies from class member to class member, then an individual question is at hand." (emphasis added)).

Third, defendants argue that damages present an individual question. However, the Second Circuit has recently reiterated that "it [is] well-established . . . that the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification under Rule 23(b)(3)." Roach v. T.L. Cannon Corp., 778 F.3d 401, 405 (2d Cir. 2015) (internal quotation marks omitted). Any individual question of this sort will need to be balanced against the common issues plaintiffs are able to demonstrate at the class certification stage. Finally, SEIU, defendants contend, is subject to unique defenses, such as waiver, ratification, and limitations. However, there is no reason at this stage, as plaintiffs point out, to presume that defendants will not advance identical arguments against the class as a whole, and therefore these defenses may not be unique to SEIU. To the extent that defendants contend that their defenses require individualized inquiry, as noted supra at 7, such defenses do not "compel a finding that individual issues predominate over common ones." In re Nassau Cty. Strip Search Cases, 461 F.3d at 227.

10

## CONCLUSION

For the reasons stated above, defendants' requests to file motions to strike class allegations from the Mortgagor, OTC, and Exchange-Based complaints are denied, except that we strike the nationwide class allegations in the Mortgagor complaint. The Clerk is directed to terminate the motions listed in the appendix.

**IT IS SO ORDERED.**

Dated:   New York, New York
         May 12, 2016

*[signature]*
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

11

# APPENDIX

This Memorandum and Order resolves the following docket entries in the following cases:

| CASE NAME | CASE NO. | ECF NO. |
|---|---|---|
| In re Libor-Based Financial Instruments Antitrust Litigation | 11-md-2262 | 1308, 1315, 1318 |
| Metzler Investment GmbH v. Credit Suisse Group AG | 11-cv-2613 | 325 |
| Mayor & City Council of Baltimore v. Bank of America Corp. | 11-cv-5450 | 140 |
| Payne v. Bank of America Corp. | 13-cv-598 | 170 |