# Simpson Thacher & Bartlett LLP

900 G St. NW
WASHINGTON, D.C., 20001

———

TELEPHONE: +1-202-636-5500
FACSIMILE: +1-202-636-5502

Direct Dial Number
+1-202-636-5579

E-mail Address
aellis@stblaw.com

BY ECF AND BY HAND

August 16, 2017

Re:   *In re LIBOR-Based Financial Instruments Antitrust Litig.*, 11-md-2262 (NRB), *Mayor and City Council of Baltimore, et al. v. Credit Suisse AG*, 11-cv-5450 (NRB)

Honorable Naomi Reice Buchwald
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

Dear Judge Buchwald:

      I write on behalf of all remaining Defendants in the OTC Action in opposition to OTC Plaintiffs' request to add Bucks County Water And Sewer Authority ("Bucks County") as a named plaintiff and to "substitute a plaintiff who is a Credit Suisse counterparty" at some point in the future.  ECF No. 2215.  As discussed below, Plaintiffs' eleventh-hour request would require the re-opening of a class certification schedule this Court has repeatedly emphasized is "fixed and firm" and, in any event, would be futile.

      Plaintiffs' request to "substitute" Bucks County for SEIU is a misnomer; unlike SEIU, Bucks County does not allege any bond transactions and does not seek to assert any claims against Credit Suisse.  Instead, Bucks County purportedly entered into an interest rate swap with RBC (which SEIU and other named plaintiffs never alleged) that is unique among the swaps held by the current named plaintiffs.  The OTC Plaintiffs presumably want to add Bucks County as a named plaintiff so Plaintiffs can argue that one of the named plaintiffs has standing to assert claims on behalf of a new, narrower class that was proposed for the first time in the OTC Plaintiffs' class certification reply brief.[1]  Plaintiffs' attempt to fundamentally reframe their case for class certification at this

---

[1]   In their class certification reply, Plaintiffs proposed for the first time several "narrower" classes (or subclasses) to address concerns over absorption and netting, *see* ECF No. 2190 at 2 n.4, including

August 16, 2017                                                                                  Honorable Naomi Reice Buchwald

late hour should be denied because (1) the addition of Bucks County at this stage of the proceedings, let alone a yet to be identified class representative at some later date, would cause undue prejudice to Defendants and waste the parties' and the Court's resources by restarting the certification process, (2) Plaintiffs have not shown good cause for modifying the Court's "fixed and firm" class certification schedule to accommodate their delay in adding Bucks County or the yet to be identified additional class representative, and (3) adding Bucks County would not salvage OTC Plaintiffs' newly proposed subclass.

**Plaintiffs' Requests Would Cause Undue Prejudice and Waste Resources**

Plaintiffs' request to add Bucks County (or any named plaintiff at this stage) would unduly prejudice Defendants. Defendants have spent the last 20 months preparing for, litigating and opposing the OTC Plaintiffs' motion for class certification. During that time, Defendants have reviewed over one million pages of document discovery, analyzed and assessed 253,418 over-the-counter transactions, taken five 30(b)(6) depositions of named plaintiffs, three depositions of plaintiffs' experts, and submitted and responded to two rounds of expert reports for each side. These efforts culminated in Defendants' submission of over 100 pages of briefing on class certification issues,[2] which was tailored to the current named plaintiffs and proposed class and based on, among other things, complex analyses of named plaintiffs' documents and data, which Defendants do not have from Bucks County.

Adding any named plaintiff at this late date would prejudice Defendants because Defendants would now be required to essentially start over and conduct new discovery and analysis to address the specific facts and legal arguments implicated by the addition of the new plaintiff. Plaintiffs grossly understate the inefficiency and delay that would result from adding Bucks County. As an initial matter, Plaintiffs would need to amend their complaint to reflect the new party, as Plaintiffs' own authority acknowledges. *See, e.g.*, *In re: Avon Sec. Litig.*, 1998 WL 834366, at *3-4 (S.D.N.Y. Nov. 30, 1998). Defendants would then be entitled to move to dismiss those claims. Assuming some claims survived, the parties would then need to conduct discovery and additional expert analysis related to Bucks County's claims and any proposed subclass that Bucks County seeks to represent.

Plaintiffs do not specify what the "expedited" discovery from Bucks County would entail, let alone the timeline for completion. ECF No. 2215 at 3. Discovery of the current named plaintiffs lasted over a year and included, among other things, serving

---

a class that is purportedly "not affected by absorption" because its members only transacted prior to the suppression period, *id.* at 19. None of the current named plaintiffs fall within that category.

[2]      *See* ECF No. 1973; ECF No. 1993; ECF No. 2019; ECF No. 2022; ECF No. 2029; ECF No. 2030; ECF No. 2032; ECF No. 2035; ECF No. 2087; ECF No. 2101; ECF No. 2139; ECF No. 2170.

August 16, 2017                                                                 Honorable Naomi Reice Buchwald

requests for production, meeting and conferring on the scope of document and data productions, reviewing and analyzing such productions, follow-up requests for additional documents and data, conducting expert analyses regarding the plaintiffs' transactions, serving and answering written discovery requests, and conducting multiple depositions. Plaintiffs fail to explain how Bucks County would be any different. And contrary to Plaintiffs' letter, Defendants do not have all of Bucks County's transaction data. *Id*. Because Bucks County did not participate in class certification discovery, Defendants do not have any data related to Bucks County's transactions in LIBOR-Based Instruments with non-Defendants and have no understanding of how Bucks County's float-for-float swap with RBC related to Bucks County's total exposure to LIBOR. In any event, Plaintiffs do not dispute that even the most "expedited" discovery schedule would require the re-opening of a class certification schedule this Court has repeatedly emphasized is "<u>fixed</u> and <u>firm</u>." ECF No. 1268; ECF No. 1441.

After completing a lengthy discovery process, Defendants would need to and be entitled to file amended or supplemented expert reports, and to submit amended or supplemented oppositions to the OTC Plaintiffs' motion for class certification. Plaintiffs are wrong that "a short letter brief" limited to adequacy would be sufficient, ECF No. 2215 at 3, for several reasons. First, the addition of Bucks County would present a shift in the nature of Plaintiffs' class, not simply a new plaintiff seeking to represent precisely the same class. Understanding and evaluating this new proposed class would require that the parties redo much of the work they just completed. Second, Bucks County's swap would require discovery and expert analysis into unique issues that are not shared with other named plaintiffs. Based on a preliminary investigation, Bucks County's swap is unique in at least three respects: (1) it is a float-for-float swap that appears to be a hedge against changes in tax rates (Bucks County made payments based on a tax exempt municipal index administered by the Bond Market Association ("BMA") in exchange for 69% of 1-month LIBOR); (2) it involves a cap; and (3) the swap was mutually terminated early in February 2012, after Bucks County would be charged with inquiry notice (such that Bucks County may have received compensation at the time of termination for alleged suppressed payments during the class period).[3] Thus, not only would Defendants have to conduct additional discovery and expert analyses regarding Bucks County's transactions, similar to the work that was required for each of the current named plaintiffs, but evaluating Bucks County's claims and request to serve as a class representative would also require (at a minimum) expert analysis of the unique features of Bucks County's swap and discovery into Bucks County's decision to terminate the swap for an agreed upon compensation years after the purported suppression and years after sophisticated investors were on inquiry notice of potential suppression. Permitting Bucks County to

---

[3]   *See* App. F to Bucks County Water And Sewer Authority Revenue Bonds, Series of 2013, at p. 32 (May 30, 2013), *available at* https://emma.msrb.org/ER678702-ER526019-ER928679.pdf.

Simpson Thacher & Bartlett LLP

August 16, 2017                                                                 Honorable Naomi Reice Buchwald

step in after the close of class certification briefing would be a waste of the substantial resources expended by the Court and the parties since December 2015 and would significantly delay these proceedings.

Further compounding such prejudice and waste is Plaintiffs' request that the Court dismiss Credit Suisse without prejudice so that they have an opportunity to "substitute a plaintiff who is a Credit Suisse counterparty" at any time in the future that suits them. ECF No. 2215 at 4 n.4. If such relief were granted, the Court and Defendants would face the interminable prospect of a *third* wave of class certification proceedings—including amendment of the complaint, motions to dismiss, discovery, exchange of expert reports, and class certification briefing—to address the issues associated with this yet to be identified named plaintiff. Such a prospect would leave the Court and Defendants dealing with class certification for years, despite the Court's attempt to create a "fixed and firm" class certification schedule.

Indeed, denial of the OTC Plaintiffs' request to add Bucks County (and, potentially in the future, some counterparty of Credit Suisse) as a named plaintiff follows *a fortiori* from this Court's April 20, 2017 opinion denying the Exchange-Based Plaintiffs' request for leave to permit a new named plaintiff to intervene as a class representative in that case. ECF No. 1859 at 6. The Exchange-Based Plaintiffs sought leave to add a new class representative over a year into class certification discovery, after the expert discovery phase of the proceedings had begun, and after the deadline (requested by Plaintiffs) for transaction data discovery had expired. The OTC Plaintiffs seek leave to add a new class representative at an even later stage of the litigation, after all class certification proceedings (save any hearing before the Court) have been completed. This Court should follow the same procedure here and decline the OTC Plaintiffs' invitation to pursue a "wasteful, futile, and prejudicial" detour. *Id.* at 3.

**Plaintiffs Have Not Shown Good Cause for Modifying the Court's "Fixed and Firm" Class Certification Schedule**

Plaintiffs have offered nothing to meet their burden of showing good cause[4] for re-opening the class certification schedule to accommodate their delay in seeking to add Bucks County, or any other named plaintiff, in support of a new purportedly "absorption-free" class or as a "substitute" for SEIU.

Plaintiffs have been aware for over a year that absorption—the issue that led Plaintiffs to look for a new plaintiff—posed risks to their ability to convince the Court to

---

[4]   Under Rule 16, filings that would modify a case management order may only be made with permission of the Court and with good cause shown. Fed. R. Civ. P. 16(b)(4); *see also Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339–40 (2d Cir. 2000).

August 16, 2017                                          Honorable Naomi Reice Buchwald

certify their broadly defined class. Absorption was raised in Defendants' renewed motions to dismiss Plaintiffs' antitrust claims filed in July 2016, *see* ECF No. 1481 at 28-34, and addressed by the Court in *LIBOR VI*, *see In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2016 WL 7378980, at *18-20 (S.D.N.Y. Dec. 20, 2016). Thus, there can be no dispute that Plaintiffs have known about the potential need to evaluate a narrower, smaller class or subclass no later than July 7, 2016.

Even assuming that Plaintiffs' request could properly be construed as a motion to substitute, Plaintiffs still fail to show cause for the delay in the Court's class certification schedule. Plaintiffs have been on notice of SEIU's non-compliance with its obligations for months, but never explained why SEIU withdrew as a class representative, why SEIU stopped responding to requests from Defendants, the exact date when they knew that SEIU would not appear for a deposition, whether Plaintiffs reasonably should have been aware of SEIU's decision to no longer participate in the case earlier, or what steps they took to identify a new "substitute" for SEIU. Instead, Plaintiffs simply claim that they had no reason to expect that SEIU would not appear for a deposition until "shortly before its withdrawal." ECF No. 2215 at 3. The record suggests otherwise. SEIU's failure to appear for a deposition in June 2017 only continued a pattern that dated back to February 2017, when Defendants first sought to depose SEIU. *See* ECF No. 2139 at 2. During that time period, SEIU ignored written discovery requests, refused to provide dates for a deposition, and unilaterally canceled a deposition that Defendants had scheduled. Against this timeline, Plaintiffs cannot meet their burden of showing good cause by merely claiming without support or explanation that they were unaware that SEIU would withdraw and had no cause to seek a "substitute" until June 15, 2017.

Plaintiffs' request is far from "routine," and granting it would effectively allow a plaintiff to lie in wait and make structural changes to the proposed class in response to a defendant's class certification opposition. The law does not condone such gamesmanship. *See Davis v. Lenox Hill Hospital*, 2004 WL 1926086, at *3 (S.D.N.Y. Aug. 31, 2004) (rejecting attempt to add new plaintiffs at the class certification stage, and denying class certification, where the plaintiff waited until days after the "firm date for the close of class discovery"); *cf. In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 962 F. Supp. 2d 606, 626-27 (S.D.N.Y. 2013) ("Plaintiffs '[are] not entitled to an advisory opinion from the Court informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies.'" (quoting *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 699 (6th Cir. 2004)). Although Plaintiffs claim that *Duling v. Gristede's Operating Corp.* is "directly on point," the decision could not be more distinguishable. 265 F.R.D. 91 (S.D.N.Y. 2010). There, before plaintiffs even sought leave to add the new named plaintiff, the defendants had conducted discovery concerning that new plaintiff (including by deposition), the new plaintiff had submitted a declaration in support of the motion for class certification, and the parties had stipulated to a schedule allowing for the filing of amended pleadings, *id.* at 99-100, 103, none of which can be said about Bucks

5

Simpson Thacher & Bartlett LLP

August 16, 2017                                                                 Honorable Naomi Reice Buchwald

County.  More importantly, the addition of the new plaintiff in *Duling* did not constitute a shift in the nature of the putative class or the arguments relating to class certification; rather, the Court allowed the addition of a plaintiff in *Duling* to address arguments concerning the adequacy and typicality of the *proposed class representatives*, *id.* at 98, unlike the OTC Plaintiffs, who are trying to remedy flaws in the *class itself*.  Plaintiffs' other cases are similarly distinguishable.  For example, in *Doe v. Pataki*, the court held that the class of plaintiffs, who were added after summary judgment, were covered by the summary judgment ruling.  3 F. Supp. 2d 456, 474 (S.D.N.Y. 1998).  In *Avon*, substitution was sought after the *only* named plaintiff in the litigation withdrew, thus leaving no one but the potential substitute plaintiffs to represent the absent members of the class.  *In re: Avon*, 1998 WL 834366, at *2; *cf. Cortigiano v. Oceanview Manor Home for Adults*, 227 F.R.D. 194, 201 (E.D.N.Y. 2005) (motion for substitution served less than four months after the filing of the complaint, and before the start of discovery).  The OTC Plaintiffs have "been aware since the filing of this lawsuit of the obstacles facing [their] class claims," and their failure to confront the flaws until now should not be excused.  *Davis*, 2004 WL 1926086, at *4.

## Plaintiffs Have Not Demonstrated That Adding Bucks County Would Be Anything Other than Futile

Even assuming the prejudice to Defendants and disruption of the class certification schedule were minimal, and Plaintiffs had met their burden to show good cause for their delay (none of which is the case), Plaintiffs' request to add Bucks County should be denied.  Simply put, adding Bucks County would not cure the many deficiencies in Plaintiffs' motion for class certification.

As set forth in Defendants' downstream opposition brief, the effect of any alleged suppression on swapholders cannot be determined using common evidence and instead requires highly individualized inquiries that will predominate over any common questions of fact or law.  ECF No. 2032.  Plaintiffs' effort to craft a new "absorption-free" class is a tacit admission that there are strong grounds to find the class, as presently defined, uncertifiable because individual issues of absorption will predominate.  Moreover, any class (narrowed or not) will face issues of net injury, which requires an individualized assessment of each putative class member's LIBOR-based exposures.  Thus, even assuming Plaintiffs were able to propose an "absorption-free" class, such a class would still face idiosyncratic issues of netting, and Plaintiffs have offered no way to identify uninjured members of their proposed class using common proof.  And Plaintiffs' proposed class would not be absorption-free in any event, because even if a class member transacted in LIBOR-linked interest rate swaps only prior to the class period, they may still have entered into other LIBOR-linked instruments (anything from loans to exotic derivatives) during the class period, which would still be subject to absorption issues, requiring consideration of those issues as part of a (highly complex) netting analysis.

Simpson Thacher & Bartlett LLP

August 16, 2017                                                   Honorable Naomi Reice Buchwald

Plaintiffs' claims would also require individualized inquiries with respect to contractual terms, such as arbitration clauses, and, as to state law claims, determinations of which jurisdiction's law governs each plaintiff's claims and variations in the applicable substantive laws.  *Id.* at 23-27.  The addition of Bucks County removes none of these issues; indeed, it would only exacerbate them.

If anything, Bucks County only highlights the idiosyncrasies that plague Plaintiffs' motion for class certification.  The unique features of Bucks County's swap (the early termination, Bucks County's hedge against changing tax rates, and the cap), make determining whether Bucks County suffered an injury, is an adequate representative, and has typical claims particularly idiosyncratic.

In any event, Plaintiffs have not met their burden of showing that their new, hypothetical class even exists.  Despite over a year of extensive class certification discovery, Plaintiffs have not offered any data, documents, expert analyses, or briefing suggesting that there is a numerous group of putative class members that purchased swaps during the alleged pre-suppression period only and had no other LIBOR-based exposure.  Nor have Plaintiffs shown, as they must, that their new class would satisfy the prerequisites of Rule 23(a) and 23(b)(3).  *See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 201–02 (2d Cir. 2008).  Thus, the OTC Plaintiffs have made no showing, and there is nothing in the record suggesting, the existence or sufficiency of a class of the type Bucks County seeks to lead.

For the foregoing reasons and those stated in Defendants' July 28, 2017 letter, ECF No. 2139, Plaintiffs' requests to add Bucks County and to "substitute a plaintiff who is a Credit Suisse counterparty" at some point in the future should be denied.

Respectfully submitted,

/s/  Abram J. Ellis
Abram J. Ellis

cc:     Counsel of Record (*by ECF*)