# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION | MDL No. 2262 (NRB) |
| THIS DOCUMENT RELATES TO: | |
| MAYOR AND CITY COUNCIL OF BALTIMORE, et al.,<br><br>      Plaintiffs,<br>v.<br><br>CREDIT SUISSE AG, et al.,<br><br>Defendants. | No. 11-cv-5450 (NRB) |

**OTC PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR AN ORDER APPROVING NOTICE PROGRAM AND PRELIMINARY APPROVAL OF PLAN OF DISTRIBUTION IN CONNECTION WITH THE CLASS <u>SETTLEMENT WITH CITIBANK, N.A. & CITIGROUP INC.</u>**

5294135v1/012751

## **TABLE OF CONTENTS**

                                                                                  **Page**

I. INTRODUCTION ................................................................................................................ 1

II. THE PROPOSED NOTICE PLAN WARRANTS APPROVAL ........................................ 3

    A. OTC Plaintiffs' Proposed Notice Program—Which Provides Direct Notice to All Reasonably Ascertainable Class Members and Publication Notice to the Remainder—Is the Best Practicable Under the Circumstances ............................. 3

    B. The Contents of the Long Form Notice, Publication Notice, and Proof of Claim Comply with Rule 23(c)(2)(B) and Comport with Due Process ............................ 8

III. THE PLAN OF DISTRIBUTION SHOULD BE PRELIMINARILY APPROVED ....... 11

IV. CONCLUSION ................................................................................................................. 13

## **TABLE OF AUTHORITIES**

**Cases**

*Hart v. RCI Hosp. Holdings, Inc.*,
  No. 09cv3043 (PAE), 2015 WL 5577713 (S.D.N.Y. Sept. 22, 2015) .................................... 11

*In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.*,
  271 F. App'x 41 (2d Cir. 2008) ............................................................................................... 4

*In re CertainTeed Corp. Roofing Shingle Prods. Liability Litig.*,
  269 F.R.D. 468 (E.D. Pa. 2010) ............................................................................................ 10

*In re Credit Default Swaps Antitrust Litig.*,
  No. 13MD2476 (DLC), 2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016) .................................. 11

*In re Elec. Books Antitrust Litig.*,
  No. 11md2293 (DLC), 2014 WL 1282293 (S.D.N.Y. Mar. 28, 2014) ................................... 11

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
  No. 05 CIV 10240 CM, 2007 WL 2230177 (S.D.N.Y. 2007) ................................................ 13

*In re Holocaust Victim Assets Litig.*,
  424 F.3d 132 (2d Cir. 2005) .................................................................................................. 11

*In re MetLife Demutualization Litig.*,
  689 F. Supp. 2d 297 (E.D.N.Y. 2010) ..................................................................................... 4

*In re PaineWebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y.) .................................................................................................... 11

*In re Payment Interchange Fee & Merch. Discount Antitrust Litig.*,
  No. 05-MD-1720, 2008 WL 115104 (E.D.N.Y. Jan. 8, 2008) ................................................. 8

*In re Platinum & Palladium Commodities Litig.*,
  No. 10CV3617, 2014 WL 3500655 (S.D.N.Y. July 15, 2014) ................................................. 7

*In re Vitamin C Antitrust Litig.*,
  *No. 06-MD-1738 BMC JO*, 2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) ........................ 7, 8

*In re WorldCom, Inc., Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005) ................................................................................... 11

*J. Truett Payne Co., Inc. v. Chrysler Motors Corp.*,
  451 U.S. 557 (1981) .............................................................................................................. 11

*Jermyn v. Best Buy Stores, L.P.*,
  No. 08 CIV. 00214 CM, 2010 WL 5187746 (S.D.N.Y. Dec. 6, 2010) .................................. 4, 7

*Long v. HSBC USA Inc.*,
  No. 14 CIV. 6233 HBP, 2015 WL 5444651 (S.D.N.Y. Sept. 11, 2015) ..................................... 3

*Precision Assocs., Inc. v. Panalpina World Transport (Holding) Ltd.*,
  2015 WL 6964973 (E.D.N.Y. Nov. 10, 2015) ....................................................................... 12

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) ...................................................................................................... 8

*Weigner v. The City of New York*,
  852 F.2d 646 (2d Cir. 1988) .................................................................................................... 4

*Weinberger v. Kendrick*,
  698 F.2d 61 (2d Cir. 1982) ...................................................................................................... 8

*Yang v. Focus Media Holding Ltd.*,
  No. 11 CIV. 9051 CM GWG, 2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) ........................... 12

**Rules**

Fed. R. Civ. P. 23 ................................................................................................... 3, 7, 8, 10

**Other Authorities**

Manual for Complex Litigation § 30.211, at 223 ........................................................................ 7

I.      INTRODUCTION

Plaintiffs Mayor and City Council of Baltimore, City of New Britain, Vistra Energy Corp., Yale University, and Jennie Stuart Medical Center, Inc. (collectively, the "OTC Plaintiffs"), respectfully move this Court for an order approving dissemination of notice to settlement class members and preliminarily approving a plan for distribution of settlement funds, in connection with the class settlement (the "Citi Settlement" or "Settlement") reached between the OTC Plaintiffs and Citibank, N.A. and Citigroup Inc. ("Citi").[1]

OTC Plaintiffs propose a thorough and comprehensive notice campaign—substantively identical to that approved for the Barclays Settlement—which has been designed by esteemed notice experts Dr. Shannon Wheatman and Kathy Kinsella of Kinsella Media, LLC.  The proposed Notice Program consists of direct notice, paid media in national newspapers, business and trade magazines, online media across various websites, global earned media with an internationally distributed press release, and a dedicated website.  Direct notice will be sent to:

- A list of Citi's counterparties derived from Citi's central repositories for trade data regarding interest rate swaps, swaptions, forward rate agreements and other instruments affected by the Settlement;

- A list of likely class members whose identities and addresses have been ascertained from five Defendants' business records (totaling over 40 thousand entries);

- Counterparties of two additional defendants who have agreed to provide direct notice to their own counterparties; and

- Mailing lists comprised of 24,123 institutional investors (including insurance companies, pension funds, hedge funds, and banks) and 66,946 state, city, and county government offices that are likely to be potential class members.

In addition, a proposed paid media program is designed to reach additional class members who do not receive direct notice, and has been carefully tailored to reach potential class members

---

[1] *See* Selzer Decl. Ex. A, (executed settlement agreement), ECF No. 2226-1 ("Settlement Agreement").

1

through media outlets including, *inter alia*, *The Wall Street Journal*, *Financial Times*, *CFO Magazine*, *The Economist*, and *Bloomberg Businessweek*. All told, 15 newspapers, trade magazines and business magazines will be used, with a combined estimated circulation of over 4.6 million. In addition, the proposed Notice Plan will produce Internet advertisements that will provide information on the Settlement, with a purchase of approximately 30,000,000 gross impressions across various websites. Finally, a global press release distributed through Business Newswire will be translated into 9 languages, reaching audiences across the world. Finally, the Claims Administrator will establish a website at www.USdollarLiborSettlement.com to enable Class Members to get complete information on the Settlement and to file a claim.

The proposed notices themselves explain, in clear and concise language, the legal options and monetary benefits available to class members under the Citi Settlement, and were created with the help of a leading expert in the form and content of notice.

The proposed Plan of Distribution—also substantively identical to the plan preliminarily approved for the Barclays Settlement—is also simple and fair to all class members, and was devised with the assistance of Kenneth Feinberg, the Settlement Administrator. Plaintiffs do not seek final approval now of the proposed Plan of Distribution. Rather, Plaintiffs only seek preliminary approval of that plan. So the only question is whether the proposed Plan of Distribution is sufficiently reasonable to be *sent* to Class Members, for their review and comment, prior to the final approval hearing. It clearly is.

OTC Plaintiffs propose a *pro rata* distribution to class members based on a simple calculation: the sum of the suppressed daily underpayments each claimant received on his or her LIBOR-based instruments. Each suppressed daily underpayment is calculated as: the dollar amount of the LIBOR-based payment that was due to the Claimant that day (using historical

5294135v1/012751

reported LIBOR rates and payment frequency) multiplied by the magnitude of suppression applicable for that day and then divided by the historical reported LIBOR rate for that day. The allocation is based on a but-for model created by Dr. B. Douglas Bernheim—the Edward Ames Edmonds Professor of Economics and Chair of the Department of Economics at Stanford University—who created a model that estimates what U.S. dollar LIBOR ("LIBOR") would have been absent its suppression by the panel banks during the Class Period. In order to distribute funds fairly to class members claiming from the Citi Settlement, OTC Plaintiffs will use that model to calculate Class Members' pro rata share of the settlement funds, adjusted by expert consultants at Bates White to include tenors and time-periods not encompassed in Dr. Bernheim's model. Charts detailing the weekly average of suppression during the Class Period for each tenor—which will be used for the calculations—will be posted on the website created for this settlement. The proposed *pro rata* distribution will then distribute funds to Class Members based on those calculations.

The proposed notice program fully comports with due process and Federal Rule of Civil Procedure 23 and is the best notice practicable under the circumstances. Similarly, the proposed Plan of Distribution has a reasonable and rational basis. As such, approval of the proposed notice plan and preliminary approval of the proposed Plan of Distribution, is warranted.

## II. THE PROPOSED NOTICE PLAN WARRANTS APPROVAL

### A. OTC Plaintiffs' Proposed Notice Program—Which Provides Direct Notice to All Reasonably Ascertainable Class Members and Publication Notice to the Remainder—Is the Best Practicable Under the Circumstances

"For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Long v. HSBC USA Inc.*, No. 14 CIV. 6233 HBP, 2015 WL 5444651, at *10 (S.D.N.Y. Sept. 11, 2015). However, neither individual nor

actual notice to each class member is a required; rather, "class counsel [need only] act[] reasonably in selecting means likely to inform the persons affected." *Jermyn v. Best Buy Stores, L.P.*, No. 08 CIV. 00214 CM, 2010 WL 5187746, at *3 (S.D.N.Y. Dec. 6, 2010) (citing *Weigner v. The City of New York*, 852 F.2d 646, 649 (2d Cir. 1988)); *In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.*, 271 F. App'x 41, 44 (2d Cir. 2008) ("It is clear that for due process to be satisfied, not every class member need receive actual notice[.]").  In evaluating the reasonableness of a proposed notice program, the "Court has virtually complete discretion." *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 345 (E.D.N.Y. 2010). Here, Plaintiffs—on the advice, recommendation, and counsel of their notice experts, Dr. Shannon Wheatman and Kathy Kinsella—propose a thorough, two-pronged notice program that is amply capable of reaching the beneficiaries of the Citi Settlement. *See* Wheatman Decl. ¶¶ 7–11.

*First*, OTC Plaintiffs propose to provide direct notice to class members whose names and addresses have been obtained from the business records of Defendants Citi, Barclays Bank plc, JPMorgan Chase, RBC, Bank of America, Deutsche Bank, and UBS. Wheatman Decl. ¶ 13(b). Citi has produced what it describes as an extremely large amount of trade data extracted from a set of databases constituting Citi's central repositories for trade data regarding, among other things, interest rate swaps, swaptions, forward rate agreements, and other instruments affected by the Settlement. Ard Decl. ¶ 4. In addition, Citi has produced information identifying U.S. counterparties that are at the heart of the OTC Class. Ard Decl. ¶ 4. Citi has also committed to either producing to the OTC Plaintiffs for purposes of providing direct notice, producing to an agent of Citi for the purposes of providing direct notice, or itself providing direct notice to its foreign counterparties. Ard Decl. ¶ 4. JPMorgan Chase, RBC, Barclays, Bank of America, Deutsche Bank, and UBS have already produced addresses for 46,587 of their counterparties.

4

Wheatman Decl. ¶ 17(b). And finally, Credit Suisse AG and HSBC have agreed to provide direct notice to their own counterparties. Wheatman Decl. ¶ 13(b); Ard Decl. ¶ 4. All told, every Defendant that remains a live defendant in the OTC Action has agreed to cooperate with OTC Plaintiffs in sending notice for the Citi Settlement.[2]

*Second*, OTC Plaintiffs propose to provide direct notice to mailing lists comprising 23,559 institutional investors (including insurance companies, pension funds, hedge funds, and banks) and 65,535 state, city, and county government offices that are likely to be potential class members. Wheatman Decl. ¶ 13(c)–(e).

*Third*, OTC Plaintiffs propose a rigorous publication notice program spanning 4 national newspapers, 2 business magazines, and 9 trade magazines—with a combined estimated circulation of 4.6 million, and multiple online media sources. Wheatman Decl. ¶¶ 17–26.

These publication outlets include, *inter alia*:

- *The Economist*, a business magazine written for top business decision-makers and opinion leaders who need a wide range of information and views on world events (circulation: 717,978);

- *Bloomberg Businessweek*, a business magazine covering business issues around the world (circulation: 1,009,973);

- *Institutional Investor*, a trade magazine targeted at the financial services industry (circulation: 91,298);

- *Pensions & Investments*, a trade magazine targeted at the institutional investment community (circulation: 50,139);

---

[2] On February 3, 2017, OTC Plaintiffs informed the Court that discussions were ongoing with 8 defendants regarding the production of their counterparty addresses for purposes of noticing the Barclays Settlement, and that several defendants dismissed for lack of personal jurisdiction refused to produce their counterparty addresses. Dkt. 1764. Plaintiffs asked for an order compelling defendants to produce that data, should the Court deem that necessary for notice of the Barclays Settlement and hereby re-urge that request should the Court deem that data necessary for the Citi Settlement. *Id.* OTC Plaintiffs have secured agreements to produce counterparty addresses or provide self-notice for the Citi Settlement from all non-dismissed defendants.

- *Financial Times*, a newspaper considered to be one of the world's leading business publication, which provides essential news to the global business community (circulation: 191,793); and

- *The Wall Street Journal*, a newspaper with a rich heritage in business and financial news (circulation: 1,321,827).

*See also generally* Wheatman Decl. ¶¶ 19–21 (list of proposed media outlets with descriptions of their subject matter, target audiences, and circulations). All told, the paid media program will place advertisements in national newspapers, business and trade magazines with a combined estimated circulation above 4.6 million. Further, Internet advertising will be used to provide potential Class Members with additional notice opportunities. The Internet advertising will be allocated across approximately 30,000,000 gross impressions[3] across various targeted websites, such as business to business websites, LinkedIn, Traders Magazine Online News, and CFA Institute Financial NewsBrief. *See* Wheatman Decl. ¶¶ 22–26.

*Fourth*, OTC Plaintiffs propose an earned media program that will include a global press release distributed through Business Wire to key financial and business media, with coverage of newspapers, television, radio, news agencies, analysts and business publications/editors throughout the world, using a variety of platforms and aggregators including AP Mobile, Yahoo! Finance and Viigo. *See* Wheatman Decl. ¶ 27.

*Fifth*, OTC Plaintiffs propose to establish a website at www.USdollarLiborSettlement.com to enable Class Members to get complete information on the Settlement and to file a claim. All notices will refer potential class members to that website so that they can get complete information about the Settlement. *See* Wheatman Decl. ¶ 28; Exs. 1–

---

[3] Gross impressions are the total number of times a media outlet containing the Notice is seen. This figure does not represent the total number of unique viewers of the Notice, as some viewers/readers will see the Notice in more than one media outlet.

6

2.  OTC Plaintiffs will also establish a toll-free number, where potential class members will be able to clarify any issues over which there may be confusion. *See* Wheatman Decl. ¶ 28.

Courts routinely approve notice programs, like this one, that combine direct notice and publication notice.  *See, e.g.*, *In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 BMC JO, 2012 WL 5289514, at *8 (E.D.N.Y. Oct. 23, 2012) ("The notice was also distributed widely, through the internet, print publications, and targeted mailings. The Court concludes that the distribution of the class notice was adequate.").  It is well-settled that where providing direct notice to every member of a class would be unreasonably burdensome or impracticable, supplementation through publication notice satisfies Federal Rule of Civil Procedure 23 and due process. *Jermyn*, 2010 WL 5187746, at *3 ("If the names and addresses of class members cannot be determined by reasonable efforts, notice by publication is sufficient to satisfy the requirements of the due process clause and Rule 23."); MANUAL FOR COMPLEX LITIGATION § 30.211, at 223 (endorsing publication notice in lieu of direct notice, "[i]n all cases the Court should strike an appropriate balance between protecting class members and making Rule 23 workable"); *see also In re Platinum & Palladium Commodities Litig.*, No. 10CV3617, 2014 WL 3500655, at *14 (S.D.N.Y. July 15, 2014) ("Given the greater difficulties in contacting Physical Class members, the proposed publication notice is the best practicable notice plan under the circumstances."), *appeal dismissed* (2d Cir. Oct. 6, 2014). Plaintiffs have obtained every class members' name and address that could be ascertained through reasonable efforts.

For these reasons, OTC Plaintiffs' proposed notice program is the best notice practicable under the circumstances and merits approval.

7

### B. The Contents of the Long Form Notice, Publication Notice, and Proof of Claim Comply with Rule 23(c)(2)(B) and Comport with Due Process

The contents of a class action settlement notice must (1) "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings" and (2) be written as to "be understood by the average class member." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114-15 (2d Cir. 2005) (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982)). "There are no rigid rules to determine whether a settlement notice satisfies constitutional or Rule 23(e) requirements[.]" *In re Vitamin C*, 2012 WL 5289514, at *8 (quotation omitted). Factors typically considered are:

- "whether there has been a succinct description of the substance of the action and the parties' positions";
- "whether the parties, class counsel, and class representatives have been identified";
- "whether the relief sought has been indicated";
- "whether the risks of being a class member, including the risk of being bound by the judgment have been explained";
- "whether the procedures and deadlines for opting out have been clearly explained"; and
- "whether class members have been informed of their right to appear in the action through counsel."

*Id.* (citing *In re Payment Interchange Fee & Merch. Discount Antitrust Litig.*, No. 05-MD-1720, 2008 WL 115104, at *15 (E.D.N.Y. Jan. 8, 2008)).

The content of the notices were prepared with the aid of Dr. Wheatman, who is a recognized expert in the form and content of notice. *See* Wheatman Decl. ¶ 4; ECF 220 ¶¶ 3–10. While serving with the Federal Judicial Center ("FJC"), Dr. Wheatman played an integral part in the development of the illustrative, "model" forms of notice designed to satisfy the plain language requirements of Federal Rule of Civil Procedure 23(c)(2). That research formed the

8

basis for her doctoral dissertation, *The Effects of Plain Language Drafting on Layperson's Comprehension of Class Action Notices* (2001) (Ph.D. dissertation, University of Georgia). And Courts have admitted her expert testimony on quantitative and qualitative evaluations of the effectiveness of notice programs. *See* Wheatman Decl. ¶ 4; ECF 220 ¶ 6.

A long form notice will be mailed directly to class members and a publication notice will be published in the various media outlets detailed in Section II.A, *supra*. Dr. Wheatman concludes that the publication and long form notices "effectively communicate information about the Settlement." Wheatman Decl. ¶ 32. The publication notice "is designed to capture the Class Member's attention with clear, concise, plain language," and contains plain language text providing "important information regarding the subject of the litigation, the Class definition, and the legal rights available to Class Members," without omitting any "important or required information." Wheatman Decl. ¶ 34. The publication notice also directs settlement class members to the settlement website, where the long form notice and other settlement-related documents are available—such as the Citi Settlement itself, the operative OTC Class Action Complaint, and certain Orders of the Court—affording class members further detailed, but still clear and concise, information about the Citi Settlement. *See* Wheatman Decl. ¶ 34; Ex. 2.

The long form notice contains similar, but more comprehensive, information about the Citi Settlement. *See* Wheatman Decl. ¶ 35. The long form notice states in plain, easily understood language: (i) the nature of the action; (ii) the claims pleaded and the defenses thereto (iii) the scope of the releases, as established by the Settlement Agreement, ¶¶ 2(hh)–(ii), 8(b), and modified by subsequent settlements; (iv) the definition of the settlement class; (v) the monetary benefits available to the class members, including the Plan of Distribution and Interim Co-Lead Class Counsel's intention to move for an award of fees, expenses, and incentive awards

9

and the maximum size of those awards (and the timing of that motion); (vi) the deadline and procedure for submitting a claim (and the necessity to submit a claim to receive benefits under the settlement); (vii) the deadlines and procedures for excluding oneself from the class, objecting to the settlement, and attending the fairness hearing; (viii) that settlement class members may, but need not, appear through their own counsel at the fairness hearing; (ix) the binding effect of the class judgment under Rule 23(c); and (x) the identity of Interim Co-Lead Class Counsel. *See* Wheatman Decl. ¶ 35 & Ex. 1. That more than satisfies Federal Rule of Civil Procedure 23(c)(2)(B).[4] *See* Wheatman Decl. ¶¶ 36, 37.

The Proof of Claim itself is simple to understand and submit—which will increase claims rates—while eliciting sufficient information for the Claims Administrator, in conjunction with the Settlement Administrator and Interim Co-Lead Class Counsel, to assess Class Members' claims and evaluate any potentially fraudulent or errant submissions. *See* Wheatman Decl. Ex. 3. The Proof of Claim has been designed, in conjunction with Bates White, to elicit sufficient information to assess the claims of holders of all financial instruments at issue in the Citi Settlement, e.g., asset swaps, collateralized debt obligations, credit default swaps, forward rate agreements, inflation swaps, interest rate swaps, total return swaps, options, and floating rate notes. *See* Wheatman Decl. Ex. 3; Ard Decl. ¶ 6. And it can be submitted online or in paper, at Class Members' election. *See* Wheatman Decl. Ex. 3. This is sufficient. *See, e.g.*, *In re CertainTeed Corp. Roofing Shingle Prods. Liability Litig.*, 269 F.R.D. 468, 482-84 (E.D. Pa. 2010).

---

[4] *See* Fed. R. Civ. P. 23(c)(2)(B) (requiring that the notice state in clear and concise language: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c).")

5294135v1/012751

### III. THE PLAN OF DISTRIBUTION SHOULD BE PRELIMINARILY APPROVED

The relevant standards for ***final*** approval of a plan of distribution were set forth recently by Judge Cote:

> A district court "has broad supervisory powers with respect to the ... allocation of settlement funds." *In re Holocaust Victim Assets Litig.,* 424 F.3d 132, 146 (2d Cir. 2005) (citation omitted). The plan of allocation must "meet the standards by which the settlement [is] scrutinized — namely, it must be fair and adequate." *Hart v. RCI Hosp. Holdings, Inc.,* No. 09cv3043 (PAE), 2015 WL 5577713, at *12 (S.D.N.Y. Sept. 22, 2015) (quoting *In re WorldCom, Inc. Sec. Litig.,* 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005)). A plan "need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Id.* (quoting *In re WorldCom, Inc.,* 388 F. Supp. 2d at 344). A principal goal of a plan of distribution must be the equitable and timely distribution of a settlement fund without burdening the process in a way that will unduly waste the fund.
>
> "[I]n the case of a large class action the apportionment of a settlement can never be tailored to the rights of each plaintiff with mathematical precision." *In re PaineWebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 133 (S.D.N.Y.), *aff'd In re PaineWebber Inc. Ltd. P'ships Litig.,* 117 F.3d 721 (2d Cir. 1997). The challenge of precisely apportioning damages to victims is often magnified in antitrust cases, as "damage issues in [antitrust] cases are rarely susceptible of the kind of concrete, detailed proof of injury which is available in other contexts." *J. Truett Payne Co., Inc. v. Chrysler Motors Corp.,* 451 U.S. 557, 565 (1981) (citation omitted); *see also In re Elec. Books Antitrust Litig.,* No. 11md2293 (DLC), 2014 WL 1282293, at *16 (S.D.N.Y. Mar. 28, 2014).

*In re Credit Default Swaps Antitrust Litig.*, No. 13MD2476 (DLC), 2016 WL 2731524, at *9 (S.D.N.Y. Apr. 26, 2016). Here, the issue is not whether the proposed Plan of Distribution should be finally approved. Rather, on this motion for preliminary approval of the Plan of Distribution, the only question is whether the proposed Plan of Distribution is sufficiently reasonable to be *sent* to Class Members, for their review and comment, prior to the final approval hearing. It clearly is.

Plaintiffs have retained Dr. Bernheim and Bates White to create a model of the but-for world, that is, an estimate of what LIBOR would have been, in each tenor, and for each period

11

during the class period, absent its suppression by the panel banks. His report was served in support of OTC Plaintiffs' forthcoming motion for class certification.

The Plan of Distribution for the Citi Settlement is materially identical to the Amended Plan of Distribution for the Barclays Settlement, ECF 2239-1, which this Court preliminarily approved on August 28, 2017. ECF 2243. For each Class Member's instrument(s), the Plan of Distribution calculates each claimant's "overall notional stake" as the sum of the "suppressed daily underpayments" for each qualifying LIBOR Instrument held by the authorized claimant. The suppressed daily underpayments for each instrument are calculated as follows:

> For each day during the class period when the Claimant had the right to be paid or to receive interest based upon the U.S. Dollar LIBOR rate, the suppressed daily underpayment equals: the dollar amount of the LIBOR-based payment that was due to the Claimant that day (using historical reported LIBOR rates and payment frequency) multiplied by the magnitude of suppression applicable for that day and then divided by the historical reported LIBOR rate for that day.

Ard Decl. ¶ 5; Ex. 1.

There is a clear rational basis for this proposal. *E.g.*, *Precision Assocs., Inc. v. Panalpina World Transport (Holding) Ltd.*, 2015 WL 6964973, at *7 (E.D.N.Y. Nov. 10, 2015); *see also* Hr'g Tr. 5:13-20, Feb. 5, 2015 (the Court, referencing Barclays' settlement with the Exchange-Based Plaintiffs, stating that "an allocation based on persistent suppression, coupled with trading volume or a calculation based on the federal reserve Eurodollar deposit rate . . . would be sufficient for this initial settlement").

OTC Plaintiffs propose to distribute the Net Settlement Fund to the settlement class members *pro rata*, in proportion to their notional stakes. Ard Decl. ¶ 5; Ex. 1. Courts routinely approve *pro-rata* distributions of this sort. *Yang v. Focus Media Holding Ltd.*, No. 11 CIV. 9051 CM GWG, 2014 WL 4401280, at *10 (S.D.N.Y. Sept. 4, 2014) ("Pro-rata distribution of settlement funds based on investment loss is clearly a reasonable approach." (citation omitted)).

Under the terms of the Settlement Agreement, the Plan of Distribution was "devised" and will be "implemented with the assistance of the Settlement Administrator," Kenneth Feinberg. Settlement Agreement, ¶¶ 2(ff), 2(kk). Interim Co-Lead Class Counsel recommends the proposed Plan of Distribution as being in the best interests of the Class. *See In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 CIV 10240 CM, 2007 WL 2230177, at *11 (S.D.N.Y. 2007) ("In determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel."); Ard Decl. ¶ 5.

This proposal has more than a rational basis. If any Class Member disagrees, she will have a chance to explain why in advance of the Final Approval hearing, when the fairness and adequacy of the Plan of Distribution will be evaluated.[5]

## IV. CONCLUSION

For the foregoing reasons, OTC Plaintiffs' motion should be granted in its entirety.

Dated: September 6, 2017

| | |
|---|---|
| By:   /s/ Michael D. Hausfeld | /s/ William Christopher Carmody |
| Michael D. Hausfeld<br>Hilary Scherrer<br>Nathaniel C. Giddings<br>HAUSFELD LLP<br>1700 St. NW, Suite 650<br>Washington, D.C. 20006<br>Telephone: (202) 540-7200<br>Facsimile: (202) 540-7201<br>mhausfeld@hausfeldllp.com<br>hscherrer@hausfeldllp.com<br>ngiddings@hausfeldllp.com<br><br>Gary I. Smith<br>HAUSFELD LLP | William Christopher Carmody (WC8478)<br>Arun Subramanian (AS2096)<br>Seth Ard (SA1817)<br>Geng Chen (GC2733)<br>SUSMAN GODFREY L.L.P.<br>1301 Avenue of the Americas, 32nd Fl.<br>New York, New York 10019<br>Telephone: 212-336-3330<br>Facsimile: 212-336-8340<br>bcarmody@susmangodfrey.com<br>asubramanian@susmangodfrey.com<br>sard@susmangodfrey.com<br>gchen@susmangodfrey.com |

---

[5] The Settlement Agreement provides that the Court's determination as to the "Plan of Distribution, or any determination on appeal from any such order, shall not provide grounds for termination of this Agreement or settlement." Settlement Agreement, ¶ 13(b).

13

325 Chestnut Street
Suite 900
Philadelphia, PA 19106
267-702-2318 Direct
215-985-3270 Main
215-985-3271  Fax
gsmith@hausfeld.com

Marc M. Seltzer
Glenn C.  Bridgman
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars
Los Angeles, California  90067-6029
Telephone: (310) 789-3100
mseltzer@susmangodfrey.com
gbridgman@susmangodfrey.com

Matthew Berry
Drew D. Hansen
SUSMAN GODFREY LLP
1201 Third Avenue, Suite 3800
Seattle, WA 98101
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
mberry@susmangodfrey.com
dhansen@susmangodfrey.com

Barry C. Barnett (BB1984)
Karen Oshman
Michael Kelso
SUSMAN GODFREY L.L.P.
1000 Louisiana Street
Suite 5100
Houston, TX 77002-5096
Telephone: (713) 651-9366
bbarnett@susmangodfrey.com
koshman@susmangodfrey.com
mkelso@susmangodfrey.com

*Interim Co-Lead Class Counsel for the OTC Plaintiffs*

5294135v1/012751

# CERTIFICATE OF SERVICE

I hereby certify that on September 6, 2017, I caused the aforementioned document to be served via the Electronic Case Filing (ECF) system in the United States District Court for the Southern District of New York, on all parties registered for CM/ECF in the above-captioned matters.

Dated: September 6, 2017, at Houston, Texas.

                                                  /s/ *William Christopher Carmody*
                                                  William Christopher Carmody