**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION | Master File No. 11-md-2262 (NRB) (THK) |
| THIS DOCUMENT RELATES TO: | |
| MAYOR AND CITY COUNCIL OF BALTIMORE, et al.,<br><br>                    Plaintiffs,<br><br>          v.<br><br>CREDIT SUISSE AG, et al.,<br><br>                    Defendants. | Case No.: 1:11-cv-05450-NRB |

**MEMORANDUM OF LAW IN SUPPORT OF THE OTC PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND SERVICE AWARDS FOR NAMED PLAINTIFFS**

## TABLE OF CONTENTS

I. Introduction .................................................................................................................1

II. Argument.....................................................................................................................6

    A.    Class Counsel's Fee Request Is Fair & Reasonable ..........................................6

        1.    Class Counsel Are Entitled to Fees from the Common Fund....................6

        2.    The Requested Fee Is Fair & Reasonable Under the Percentage Method—the Method Preferred in the Second Circuit .............................7

            a.    The Percentage Method Is Preferred in the Second Circuit ................................................................................7

            b.    A Fee of 30% of the Monetary Settlement Value Is Fair & Reasonable .............................................................8

        3.    The Requested Fee Is Reasonable Under Lodestar "Crosscheck"...........................................................................9

        4.    The *Goldberger* Factors Support the Requested Fee Award ..................12

            a.    Time & Labor Expended by Counsel (Goldberger Factor 1).........................................................................12

            b.    Magnitude & Complexity of the Litigation (Goldberger Factor 2).........................................................................14

            c.    Risk of the Litigation (Goldberger Factor 3) ................................15

                 i    Contingency Risk ............................................................15

                 ii    Liability Risk ...................................................................16

                 iii    Damages Risk ..................................................................17

            d.    Quality of the Representation (Goldberger Factor 4) ...................18

            e.    Requested Fee in Relation to the Settlement (Goldberger Factor 5) ....................................................19

            f.    Public Policy Considerations (Goldberger Factor 6)....................19

    B.    Class Counsel's Expenses Should Be Reimbursed..............................................20

    C.    Incentive Awards for the Named Plaintiffs Are Appropriate .............................22

III. Conclusion ...............................................................................................................23

5311953v1/012751

# TABLE OF AUTHORITIES

**Cases**

*Allapattah Servs. Inc. v. Exxon Corp.*,
   454 F. Supp. 2d 1185 (S.D. Fla. 2006) ..................................................................... 9

*Anwar v. Fairfield Greenwich Ltd.*,
   No. 09-cv-118, 2012 WL 1981505 (S.D.N.Y. June 1, 2012) ................................. 19, 20, 22, 23

*Athale v. Sinotech Energy Ltd.*,
   No. 11-cv-05831, 2013 WL 11310686 (S.D.N.Y. Sept. 4, 2013) ................................. 6, 17, 20

*Blum v. Stenson*,
   465 U.S. 886 (1984) ........................................................................................... 11

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ............................................................................................. 6

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ............................................................................. 15, 16

*City of Providence v. Aeropostale, Inc.*,
   No. 11 CIV. 7132 CM GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014) ..................... 16, 19

*Dial Corp. v. News Corp.*,
   317 F.R.D. 426 (S.D.N.Y. 2016) ........................................................................... 21

*Dornberger v. Metro. Life Ins. Co.*,
   203 F.R.D. 118 (S.D.N.Y. 2001) ........................................................................... 23

*Duchene v. Michael Cetta, Inc.*,
   No. 06-cv-4576, 2009 WL 5841175 (S.D.N.Y. Sept. 10, 2009) ................................... 23

*Fleisher v. Phoenix Life Ins. Co.*,
   No. 11-cv-8405, 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) ............................... passim

*Fogarazzo v. Lehman Bros., Inc.*,
   No. 03 Civ. 5194(SAS), 2011 WL 671745 (Feb. 23, 2011) ........................................ 7

*Gelboim v. Bank of Am. Corp.*,
   823 F.3d 759 (2d Cir. 2016) .................................................................................. 2

*Gierlinger v. Gleason*,
   160 F.3d 858 (2d Cir. 1998) ................................................................................ 10

*Goldberger v. Integrated Resources, Inc.*,
   209 F.3d 43 (2d Cir. 2000) .............................................................................. passim

ii

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)..................................................................................18

*Hicks v. Stanley*,
   No. 01-cv-10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)............................................20

*Hyun v. Ippudo USA Holdings*,
   2016 WL 1222347 (S.D.N.Y. Mar. 24, 2016) .........................................................8

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
   No. 06-md-1775 (JG) (VVP), 2012 WL 3138596 (E.D.N.Y. Aug. 2, 2012) ................ 8, 19, 21

*In re Bank of Am. Corp. Secs., Derivatives & ERISA Litig.*,
   2013 WL 12091355 (S.D.N.Y. Apr. 8, 2013) ...................................................21

*In re Beacon Assocs. Litig.*,
   No. 09 Civ. 777(CM), 2013 WL 2450960 (S.D.N.Y. May 9, 2013)...........................7, 8, 16

*In re BioScrip, Inc. Secs. Litig.*,
   No. 13-cv-6922 (AJN), 2017 WL 3208941 (S.D.N.Y. July 26, 2017)...............................7, 10

*In re Citigroup Inc. Bond Litig.*,
   988 F. Supp. 2d 371 (S.D.N.Y. 2013) ..............................................................21

*In re Continental Ill. Secs. Litig.*,
   962 F.2d 566 (7th Cir. 1992) ..........................................................................9

*In re Credit Default Swaps Antitrust Litig.*,
   2016 WL 2731524 (S.D.N.Y. Apr. 26, 2017) ...............................................5, 21

*In re Deutsche Telekom AG Secs. Litig.*,
   2005 WL 7984326 (S.D.N.Y. June 14, 2005) ...........................................1, 8, 21

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   No. 02-3400, 2010 WL 4537550 (S.D.N.Y. 2010) .................................................17

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ....................................................................10

*In re High-Crush Ptrs. L.P. Secs. Litig.*,
   No. 12-cv-8557 (CM), 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ....................................15

*In re Initial Public Offering Secs. Litig.*,
   671 F. Supp. 2d 467 (S.D.N.Y. 2009) ...............................................1, 7, 8, 21

*In re Lloyd's Am. Trust Fund Litig.*,
   No. 96 Civ. 1262 RWS, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ......................1, 7, 11

*In re Marsh & McLennan Companies, Inc. Secs. Litig.*,
  No. 04 Civ. 8144(CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) .............................. 7, 19

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ................................................................................. 19

*In re NASDAQ Market-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) ....................................................................... 14, 15, 18

*In re Priceline.com, Inc. Secs. Litig.*,
  No. 3:00-cv-1884 (AVC), 2007 WL 2115592 (D. Conn. July 20, 2007) ................................. 8

*In re Sumitomo Copper Litig.*,
  74 F. Supp. 2d 393 (S.D.N.Y. 1999) ......................................................................... 8, 20

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  No. M 07–1827 SI, 2013 WL 1365900 (N.D. Cal. Apr. 3, 2013) ................................... 1, 9, 21

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
  724 F. Supp. 160 (S.D.N.Y. 1989) ............................................................................. 10

*In re Vitamin C Antitrust Litig.*,
  No. 06-MD-1738 BMC JO, 2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) ........................... 14

*In re Vitamins Antitrust Litig.*,
  Case No. 99-197(TFH), 2001 WL 34312839 (D.D.C. 2001) ........................................... 9, 20

*In re WorldCom, Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005) ......................................................................... 19

*Johnson v. Brennan*,
  No. 10 Civ. 4712(CM), 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ............................. 7, 11

*Johnson v. City of New York*,
  No. 08-cv-3673 (KAM) (LB), 2010 WL 5818290 (E.D.N.Y. Dec. 13, 2010) ......................... 9

*Kurzweil v. Philip Morris Companies, Inc.*,
  No. 94 Civ. 2373 (MBM), 1999 WL 1076105 (S.D.N.Y. Nov. 30, 1999) ............................. 8

*LeBlanc-Sternberg v. Fletcher*,
  143 F.3d 748 (2d Cir. 1998) ................................................................................... 10

*Luciano v. Olsten Corp.*,
  109 F.3d 111 (2d Cir. 1997) ................................................................................... 11

*Maley v. Del Glob. Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) ......................................................................... 16

iv

*Missouri v. Jenkins*,
   491 U.S. 274 (1989) ................................................................................................ 10

*Park v. The Thomson Corp.*,
   No. 05 Civ. 2931 (WHP), 2008 WL 4684232 (S.D.N.Y. Oct. 22, 2008) ................................ 16

*Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*,
   818 F.2d 278 (2d Cir. 1987) ................................................................................ 20

*Sewell v. Bovis Lend Lease, Inc.*,
   No. 09 Civ. 6548 (RLE), 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) ........................... 10, 22

*Sykes v. Harris*,
   No. 09-cv-8486, 2016 WL 3030156 (S.D.N.Y. May 24, 2016) ............................................. 17

*Taft v. Ackermans*,
   No. 02-cv-7951, 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) ............................................ 18

*Velez v. Novartis Pharma. Corp.*,
   2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) .................................................................. 8, 15

*Virgin Atl. Airways Ltd. v. British Airways PLC*,
   257 F.3d 256 (2d Cir. 2011) ................................................................................ 14

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ................................................................................ 9

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ......................................................................... 7, 12, 14

*West Virginia v. Chas. Pfizer & Co.*,
   314 F. Supp. 710 (S.D.N.Y. 1970) ................................................................................ 17

*Yap v. Sumitomo Corp. of Am.*,
   No. 88-cv-700, 1991 WL 29112 (S.D.N.Y. Feb. 22, 1991) .................................................... 23

**Other Authorities**

31 No. 7 Futures & Derivatives L. Rep. 1 .................................................................. 16

7B Charles A. Wright et al., *Federal Practice and Procedure* § 1803 (3d ed. 1998) ................... 6

v

Court-appointed interim co-lead class counsel Susman Godfrey L.L.P. and Hausfeld L.L.P. ("Class Counsel") for the Over-the-Counter Plaintiffs (the "OTC Class" or the "OTC Plaintiffs") hereby respectfully move the Court for an award of attorneys' fees, litigation expenses, and incentive awards for the named plaintiffs in connection with the settlement between Barclays Bank plc. ("Barclays") and the OTC Plaintiffs (the "Barclays Settlement").

## I. INTRODUCTION

After more than six years of hard-fought litigation for the OTC Class on a fully contingent basis, Class Counsel have recovered $120 million in monetary relief and additional valuable non-monetary relief in the form of discovery cooperation for the benefit of the OTC Class as a result of the Barclays Settlement. To obtain that result, Class Counsel have invested over $25 million in time and $13,961,666 in expenses in this case over the last six years, an investment that Class Counsel made on a wholly contingent basis, with no assurance either of payment for their services or recoupment of their expenses. The requested fee of 30% of the net settlement fund (after deducting expenses) is well within the range regularly approved by courts in this Circuit and around the country. *In re Initial Public Offering Secs. Litig.*, 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009) (awarding plaintiffs' counsel one-third of the net settlement fund of $170,084,950.00); *In re Deutsche Telekom AG Secs. Litig.*, 2005 WL 7984326, at *4 (S.D.N.Y. June 14, 2005) (Buchwald, J.) (awarding attorneys' fees of 28% of a $120 million settlement); *see also In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07–1827 SI, 2013 WL 1365900, at *8 (N.D. Cal. Apr. 3, 2013) (awarding attorneys' fees of 28.6% of a $1.08 billion settlement). A 30% fee here produces a modest lodestar multiplier of 1.22, which is below the range of multipliers regularly approved by courts in this Circuit, and meets the relevant *Goldberger* factors used to measure reasonableness. *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262 RWS, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) ("Here, the resulting multiplier of

1

2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit."). The award is justified by the outstanding results achieved for the OTC Class through the efforts of Class Counsel in vigorously pursuing the complex claims at issue in this case in the face of significant risks and substantial expense, entirely on a contingent basis.

The Barclays Settlement was achieved as a result of the tireless and diligent prosecution of this case by Class Counsel, who faced and overcame substantial risks and demonstrated an unquestioned willingness and ability to pursue this case through any interlocutory appeals and through to a jury trial if necessary to obtain a fair and just recovery for the OTC Class. Class Counsel's work in this case began with their initial case investigation and the filing of the complaint, the Consolidated Amended Complaint, and the Second Amended Complaint (the "Complaint"). In addition to detailed factual allegations, the OTC Plaintiffs' Complaint incorporated extensive expert "economic evidence . . . such as the LIBOR–FRED divergence." *Gelboim v. Bank of Am. Corp.*, 823 F.3d 759, 782 (2d Cir. 2016).

The OTC Plaintiffs then faced five Rule 12(b) motions to dismiss their Complaint (as well as an opposition to a motion for leave to amend that functioned as yet another motion to dismiss). That multi-year cycle of motion to dismiss briefing and argument in this Court has thus far led to two appeals to the Second Circuit, as well as a trip to the Supreme Court on an issue of appellate jurisdiction where OTC counsel filed an amicus brief. The OTC Plaintiffs have also written scores of letters to the Court, *inter alia*, providing supplemental authority, addressing discovery disputes, and presenting scheduling issues.

After this Court set a schedule for class certification, the OTC Plaintiffs plunged into discovery in anticipation of their motion to certify this case as a class action. Class Counsel reviewed more than 1.1 million documents produced by the sixteen defendant LIBOR panel banks and 6,384 audio files, in addition to regulatory orders, trial transcripts, and evidence from

2

civil and criminal LIBOR investigations in the United States and around the world.   Class Counsel further developed detailed discovery requests to the defendants in consultation with the OTC Plaintiffs' expert witnesses regarding trading, cash-flow, and borrowing data relating to financial instruments issued by the defendants, and Class Counsel participated in scores of meet-and-confers with the eight (and then, post-*Gelboim*, sixteen) defendants to resolve the defendants' objections to the OTC Plaintiffs' discovery requests and obtain that data. Class Counsel also diligently pursued discovery from four third-party brokers, discovery that formed an important component of the OTC Plaintiffs' expert witness's analysis.   More importantly, Class Counsel expended significant time and resources to understand the complex datasets of the defendants and the third-party brokers, efforts that proved crucial to the OTC Plaintiffs' motion for class certification.

Class Counsel further defended five Rule 30(b)(6) depositions of the named plaintiffs, defended three depositions of the OTC Plaintiffs' expert witnesses, and conducted two depositions of the defendants' expert witnesses.

Class Counsel worked with the OTC Plaintiffs' expert witness, Chair of Stanford University's Economics Department Dr. B. Douglas Bernheim, to develop a detailed model that painstakingly reconstructed what LIBOR would have been in the "but-for" world absent the defendants' suppression and the resulting damages suffered by the OTC-Plaintiffs.   Developing the OTC Plaintiffs' more than 300 pages of expert reports required tens of thousands of hours of in-depth analysis of more than 686 gigabytes of data.   Class Counsel's exhaustive work in conjunction with Dr. Bernheim produced a rigorous econometric model, the only LIBOR-suppression and damages model by any class plaintiffs that is not subject to a *Daubert* challenge by the defendants.   Class Counsel also worked with Nobel-prize winning economist Dr. Joseph

Stiglitz who provided an expert opinion on the susceptibility of the LIBOR-setting process to collusion and the availability of classwide proof of the same.

This six-year effort culminated in the OTC Plaintiffs' motion for class certification, now pending before the Court, which involved exhaustive legal research, assiduous compilation of evidence, and comprehensive briefing over a three-month period—supported by more than sixty pages of legal memoranda, more than sixty pages of attorney declarations, and 149 exhibits. Class Counsel have also vigorously defendant against a *Daubert* challenge by the defendants against the OTC Plaintiffs' Nobel-prize winning expert witness Dr. Joseph Stiglitz.

Class Counsel also drafted preliminary approval briefing and overcame two objections to the Barclays Settlement, worked with highly-regarded notice experts to develop a comprehensive notice program, and developed a plan of distribution for the Barclays Settlement with the assistance of Kenneth Feinberg and economic consulting firm Bates White.

In short, Class Counsel have indefatigably prosecuted this case on behalf of the OTC Plaintiffs in the face of significant risks and a massive investment of time and capital, all on a contingent fee basis.

The risks inherent in this case have manifested themselves time and again, with the OTC Plaintiffs' primary claims—their antitrust claims—being dismissed by this Court, only to be revived on appeal, and then dismissed again as against all foreign-domiciled defendants.

Notwithstanding these risks and many more, Class Counsel achieved a settlement of $120 million that is an outstanding first settlement for the OTC Plaintiffs in this massive and complex litigation.[1]   In addition to a $120 million settlement fund for the OTC Class, the Barclays Settlement incorporates provisions requiring Barclays to provide extensive discovery

---

[1] The relevant facts detailing the Barclays Settlement are set forth in the OTC Plaintiffs' memorandum of law in support of preliminary approval of the Barclays Settlement and the accompanying declaration.  Dkts. 1337, 1338.

cooperation to the OTC Plaintiffs which will assist the OTC Plaintiffs in pursuing their claims against the other, non-settling LIBOR panel banks. That promised cooperation, which was negotiated as a result of hard, arms' length bargaining between the parties, includes, *inter alia*, post-settlement document productions, proffer sessions in which Barclays's attorneys and witnesses will disclose the facts uncovered in Barclays' own internal investigations of LIBOR-related conduct, and interviews with Barclays employees. The Barclays Settlement was the product of almost two years of negotiations between Class Counsel and Barclays, including, in addition to many other communications, three in-person mediation sessions with three different highly-experienced mediators.

Class Counsel therefore apply for a fee of 30% of the net monetary value of the settlement (after deducting expenses).[2] That 30% award would result in a multiplier of 1.22 using a lodestar crosscheck—well below what courts in this Circuit regularly approve as reasonable. In addition to an award of attorneys' fees, Class Counsel also seek reimbursement for $13,961,666.57 in litigation expenses, composed largely of expert fees that produced a suppression and damages model used for both class certification and the plan of allocation for the Barclays Settlement. That suppression and damages model is the *only* such model that is not subject to a *Daubert* motion by the defendants. Courts regularly approve reimbursement of such litigation expenses in class actions as a matter of course. *See, e.g.*, *In re Credit Default Swaps Antitrust Litig.*, 2016 WL 2731524, at *18 (S.D.N.Y. Apr. 26, 2017) (approving $10 million in expenses "[m]ost of" which "were incurred in connection with retention of experts" where the case settled just prior to the due date for class certification motions). Further, the OTC Plaintiffs seek $25,000 in incentive awards for the named plaintiffs to compensate them for their

---

[2] The OTC Class was advised in the Notice that Class Counsel may apply for fees up to one-third of the settlement fund from the Barclays Settlement.

exemplary dedication of time, resources, and personnel on behalf of the OTC Class, in producing documents, working with counsel to understand those documents, and sitting for lengthy depositions.

The OTC Plaintiffs respectfully request that the Court should grant their application for attorneys' fees, reimbursement of expenses, and incentive awards.

## II. ARGUMENT

### A.    *Class Counsel's Fee Request Is Fair & Reasonable*

#### 1.    **Class Counsel Are Entitled to Fees from the Common Fund**

"[A] lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). "The court's authority to reimburse the parties stems from the fact that the class action [device] is a creature of equity and the allowance of attorney-related costs is considered part of the historic equity power of the federal courts." 7B Charles A. Wright et al., *Federal Practice and Procedure* § 1803 (3d ed. 1998).

> The purposes of the doctrine are to fairly and adequately compensate class counsel for services rendered; to ensure that all class members contribute equally towards the costs associated with litigation pursued on their behalf; and to encourage skilled counsel to represent those who seek redress for injury inflicted on an entire class and thereby discourage future misconduct of a similar nature.

*Fleisher v. Phoenix Life Ins. Co.*, No. 11-cv-8405, 2015 WL 10847814, at *14 (S.D.N.Y. Sept. 9, 2015); *see also Athale v. Sinotech Energy Ltd.*, No. 11-cv-05831, 2013 WL 11310686, at *7 (S.D.N.Y. Sept. 4, 2013) ("The rationale for the doctrine is an equitable one: it prevents unjust enrichment of those benefitting from a lawsuit without contributing to its cost.").

2.      **The Requested Fee Is Fair & Reasonable Under the Percentage Method—the Method Preferred in the Second Circuit**

a.      *The Percentage Method Is Preferred in the Second Circuit*

"[C]ourts prefer the percentage method" of awarding attorneys' fees in class action cases. *Johnson v. Brennan*, No. 10 Civ. 4712(CM), 2011 WL 4357376, at *14 (S.D.N.Y. Sept. 16, 2011).  Under the percentage method, the Court "sets some percentage of the recovery as a fee" for class counsel.  *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000).

"The trend in this Circuit is toward the percentage method" because it "'directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.'"  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (quoting *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262, 2002 WL 31663577, at *25 (S.D.N.Y. Nov. 26, 2002)); *accord In re BioScrip, Inc. Secs. Litig.*, No. 13-cv-6922 (AJN), 2017 WL 3208941, at *16 (S.D.N.Y. July 26, 2017) (noting that "the trend in this Circuit has been toward the use of a percentage of recovery as the preferred method of calculating the award for class counsel in common fund cases" (internal quotation marks omitted)); *In re Beacon Assocs. Litig.*, No. 09 Civ. 777(CM), 2013 WL 2450960, at *5 (S.D.N.Y. May 9, 2013) (same); *Fogarazzo v. Lehman Bros., Inc.*, No. 03 Civ. 5194(SAS), 2011 WL 671745, at *2 (Feb. 23, 2011) ("The trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation."); *In re Initial Pub. Offering Secs. Litig.*, 671 F. Supp. 2d 467, 480 (S.D.N.Y. 2009) (same); *In re Marsh & McLennan Companies, Inc. Secs. Litig.*, No. 04 Civ. 8144(CM), 2009 WL 5178546, at *14 (S.D.N.Y. Dec. 23, 2009) ("[T]he percentage method continues to be the trend of district courts in this Circuit and has been expressly adopted in the vast majority of circuits.").

      b.    *A Fee of 30% of the Monetary Settlement Value Is Fair & Reasonable*

A 30% fee of the net settlement fund (after deducting expenses) for Class Counsel is fair and reasonable.  "District courts in the Second Circuit routinely award attorneys' fees that are 30 percent or greater," *Velez v. Novartis Pharma. Corp.*, 2010 WL 4877852, at *21 (S.D.N.Y. Nov. 30, 2010); *see also Hyun v. Ippudo USA Holdings*, 2016 WL 1222347, at *3 (S.D.N.Y. Mar. 24, 2016) ("Fee awards representing one third of the total recovery are common in this District."); *Fleisher*, 2015 WL 10847814, at *12 (quoting *Velez*, 2010 WL 4877852, at *21) ("District courts in the Second Circuit routinely award attorneys' fees that are 30 percent or greater,"); *Beacon*, 2013 WL 2450960, at *5 ("In this Circuit, courts routinely award attorneys' fees that run to 30% and even a little more of the amount of the common fund."), including in cases with settlement funds of similar or greater amounts, *see In re Muni. Derivatives Antitrust Litig.*, Case No. 1:08-cv-02516-VM-GWG, Dkt. 2029 (S.D.N.Y. July 8, 2016) (awarding 32.8% of a $100 million settlement);[3] *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-md-1775 (JG) (VVP), 2012 WL 3138596, at *3 (E.D.N.Y. Aug. 2, 2012) (awarding class counsel 25% of a $183 million settlement); *In re Initial Public Offering Secs. Litig.*, 671 F. Supp. 2d at 516 (awarding plaintiffs' counsel one-third of the net settlement fund of $170,084,950.00); *In re Priceline.com, Inc. Secs. Litig.*, No. 3:00-cv-1884 (AVC), 2007 WL 2115592, at *4 (D. Conn. July 20, 2007) (awarding 30% of an $80 million settlement); *In re Deutsche Telekom AG Secs. Litig.*, 2005 WL 7984326, at *4 (S.D.N.Y. June 14, 2005) (Buchwald, J.) (awarding attorneys' fees of 28% of a $120 million settlement);  *Kurzweil v. Philip Morris Companies, Inc.*, No. 94 Civ. 2373 (MBM), 1999 WL 1076105, at *3 (S.D.N.Y. Nov. 30, 1999) (awarding class counsel 30% of a $123 million settlement); *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 394 (S.D.N.Y. 1999) (awarding plaintiffs' counsel attorneys' fees of 27.5% of a $116.6 million

---

[3] The settlement amount is set out in Docket 2013, Case No. 1:08-cv-02516-VM-GWG.

settlement); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) (affirming the district court's fees award of 28% of a $96.89 million settlement); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07–1827 SI, 2013 WL 1365900, at *8 (N.D. Cal. Apr. 3, 2013) (awarding attorneys' fees of 28.6% of a $1.08 billion settlement); *Allapattah Servs. Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1213 (S.D. Fla. 2006) (awarding 31.5% of a $1.06 billion settlement); *In re Vitamins Antitrust Litig.*, Case No. 99-197(TFH), 2001 WL 34312839, at *10 (D.D.C. 2001) (awarding class counsel 34% of a $359 million settlement).

Indeed, the 30% fee requested here is significantly less than Class Counsel could obtain on the open market.  For example, Susman Godfrey regularly takes high-stakes non-class commercial cases on a contingent fee basis, and it typically negotiates contingent fee arrangements with individual non-class plaintiff clients for engagements where the firm advances expenses equal to 40% of the gross sum recovered, with percentage increases based on the milestones reached at the time of settlement.  Jt. Decl. ¶ 7.  "This fact is highly relevant to determining the appropriateness of the award because the Court's ultimate task is to 'approximate the reasonable fee that a competitive market would bear.'"  *Fleischer v. Phoenix Life Ins. Co.*, No. , 2015 WL 10847814, at *17 (S.D.N.Y. Sept. 9, 2015) (quoting *Johnson v. City of New York*, No. 08-cv-3673 (KAM) (LB), 2010 WL 5818290, at *4 (E.D.N.Y. Dec. 13, 2010)); *accord In re Continental Ill. Secs. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) ("The class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client.").

### 3.    The Requested Fee Is Reasonable Under Lodestar "Crosscheck"

The reasonableness of Class Counsel's requested 30% fee here is confirmed by the lodestar "crosscheck."  The Second Circuit permits courts to utilize a lodestar "crosscheck" to test the reasonableness of a percentage-based fee.  *See Goldberger*, 209 F.3d at 50.  The

9

"lodestar" is calculated by multiplying the number of hours expended on the litigation by each particular attorney or firm professional by their current hourly rate,[4] and totaling the amounts for all timekeepers.  Then, "a multiplier is typically applied to the lodestar." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004). "The multiplier represents the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *Id.* (citing *Goldberger*, 209 F.3d at 47).  "A district court relying on the cross-check approach need not 'exhaustively scrutinize[]' 'the hours documented by counsel.'"  *In re BioScrip, Inc.*, 2017 WL 3208941, at *17 (quoting *Goldberger*, 209 F.3d at 50).

Class Counsel in this case collectively have spent over 46,000 hours, representing a lodestar of $25,993,802, and have advanced $13,961,666.57 in expenses.[5]  Jt. Decl. ¶¶ 13, 14. That time represents Class Counsel's tireless efforts in investigating and prosecuting the OTC Plaintiffs' claims over an almost six year period.  Class Counsel's fee request of 30% of the net settlement fund (after deducting expenses), or $31,811,500, results in a crosscheck lodestar multiplier of 1.22.

The crosscheck multiplier of 1.22 falls well below the range considered reasonable by courts in the Second Circuit.  *See Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548 (RLE), 2012 WL 1320124, at *13 (S.D.N.Y. Apr. 16, 2012) ("Courts commonly award lodestar

---

[4] The lodestar is calculated at current hourly rates.  *See, e.g.*, *Missouri v. Jenkins*, 491 U.S. 274, 283–84 (1989) (endorsing "an appropriate adjustment for delay in payment" by applying "current" rate); *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998) (rates "should be 'current rather than historic'") (citation and internal quotations omitted); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) (current rates "should be applied in order to compensate for the delay in payment"); *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989) (citation omitted) (Using current rates helps "compensate for the delay in receiving compensation, inflationary losses, and the loss of interest.").

[5] Other firms billed a small portion of the overall time in this case.  These firms all performed work for the benefit of the OTC Class by helping in evaluation of the plan of distribution.

10

multipliers between two and six."); *Johnson v. Brennan*, No. 10 Civ. 4712 (CM), 2011 WL 4357376, at *13 (S.D.N.Y. Sept. 16, 2011) ("Courts routinely award counsel two to three times lodestar in class action settlements."); *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262 RWS, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) ("Here, the resulting multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit."). This low crosscheck multiplier confirms the reasonableness of Class Counsel's requested 30% fee.

Class Counsel's hourly rates are also reasonable. The rates for Class Counsel who billed meaningful time to this case (ranging from $225 to $275 per hour for staff attorneys, $325 to $450 per hour for associates, and $540 for junior partners to $1,500 per hour for the most senior partners) are Class Counsel's standard hourly rates and are regularly charged to hourly clients (and paid by those clients). Jt. Decl. ¶¶ 9, 11; *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997) ("The 'lodestar' figure should be 'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984))). Class Counsel's hourly rates are market rates for plaintiffs' and defense-side law firms of similar quality litigating matters of similar magnitude in New York City. Sara Randazzo & Jacqueline Palank, *Legal Fees Cross New Mark: $1,500 an Hour*, The Wall Street Journal, Feb. 16, 2016 (surveying attorneys' fees "filings over the past three months in about two dozen bankruptcy cases" and finding that "[f]or lawyers at the very top of th[e] fields [of antitrust and high-stakes litigation and appeals], hourly rates can hit $1,800 or even $1,950" and citing a 2011 article and observing

that the increases in hourly rates "mak[e] the $1,000-an-hour legal fees that once seemed so steep look quaint by comparison").[6]

### 4. The *Goldberger* Factors Support the Requested Fee Award

Under either the percentage method or the lodestar multiplier approach, the "'*Goldberger* factors' ultimately determine the reasonableness of a common fund fee," *Wal-Mart*, 396 F.3d at 121. The *Goldberger* factors, which the Court weighs in its discretion, are:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50 (citation omitted). Each of these factors confirms the requested 30% fee is reasonable.

#### a. Time & Labor Expended by Counsel (Goldberger Factor 1)

The first *Goldberger* factor—the "time and labor expended by counsel"—strongly supports approval of the requested fee. Class Counsel have spent over 46,000 hours prosecuting this case and, as discussed above, the lodestar multiplier is below the low end of the range approved by courts in this Circuit. The substantial time devoted to this litigation over six years reflects the immense effort Class Counsel have exerted in prosecuting this case and was reasonable, particularly given the complex nature of this action. Class Counsel have, among other things:

- Conducted an initial investigation of this case to develop the facts and legal theories that formed the basis of the allegations in the complaint and drafted and filed the complaint, amended complaint, second amended complaint, proposed third amended complaint, and third amended complaint (collectively, the "Complaint").

- Defended the Complaint from five Rule 12(b) motions to dismiss filed by the defendants and from the defendants' opposition to the OTC Plaintiffs' motions for leave to amend the complaint.

---

[6] https://www.wsj.com/articles/legal-fees-reach-new-pinnacle-1-500-an-hour-1454960708.

- Written scores of letters to the Court, *inter alia*, providing supplemental authority, addressing discovery disputes, and presenting scheduling issues.

- Appealed the dismissal of the OTC Plaintiffs' antitrust claims to the Second Circuit, and successfully filed an amicus brief to the Supreme Court on an issue of appellate jurisdiction.

- Attended three full-day, in-person mediation sessions conducted by highly experienced mediators, preceded by mediation briefing.  The terms of the Settlement were also negotiated in extensive in-person meetings, telephone calls, and email discussions over the course of almost two years.

- Successfully briefed a motion for preliminary approval of the Settlement and worked with experts to develop a comprehensive notice program and plan of distribution.

- Reviewed more than 1.1 million documents produced by the defendants and third parties, as well as trial transcripts and evidence from civil and criminal trials in the United States and the United Kingdom relating to LIBOR manipulation.

- Listened to 6,384 audio files produced by the defendants.

- Drafted discovery requests to the defendants for trading, cash-flow, and borrowing data on the defendants' financial instruments and participated in scores of meet and confers to obtain the production of that data.

- Diligently pursued discovery from four third-party brokers that formed an important component of the OTC Plaintiffs' expert witness analysis.

- Defended five 30(b)(6) depositions of the named plaintiffs; defended three depositions of plaintiffs experts; conducted two depositions of Defendants' experts.

- Worked with the OTC Plaintiffs' expert witnesses to draft extensive 30(b)(6) notices setting out questions essential to understanding the trade, cash-flow, and borrowing data produced by the defendants.

- Assisted the OTC Plaintiffs' expert witnesses in analyzing 686 gigabytes of data and developing two expert witness reports totaling more than 300 pages.

- Prepared more than sixty pages of briefing, more than sixty pages of attorney declarations, and 149 exhibits in support of the OTC Plaintiffs' motion for class certification and vigorously defendant against a *Daubert* challenge by the defendants against the OTC Plaintiffs' Nobel-prize winning expert witness Dr. Joseph Stiglitz.

5311953v1/012751

In sum, Class Counsel devoted very substantial time and financial resources in prosecuting this case on behalf of the OTC Class.

        b.        *Magnitude & Complexity of the Litigation (Goldberger Factor 2)*

The second *Goldberger* factor—"the magnitude and complexities of the litigation"—also strongly supports approval of the requested fee. No other case better embodies the challenges faced by plaintiffs in antitrust litigation than this one. *See Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 263 (2d Cir. 2011) (noting the "factual complexities of antitrust cases"); *Wal-Mart Stores*, 396 F.3d at 118 ("Federal antitrust cases are complicated, lengthy, and bitterly fought."); *In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 BMC JO, 2012 WL 5289514, at *4 (E.D.N.Y. Oct. 23, 2012) ("Federal antitrust cases are complicated lengthy, and bitterly fought, as well as costly."). This action was initially filed over six years ago and has undergone multiple rounds of briefing on four motions to dismiss as well as an opposition to leave to amend that functioned as the equivalent to a motion to dismiss. The OTC Plaintiffs' antitrust claims had been dismissed at the time of the Barclays Settlement, and, while reinstated by the Second Circuit, were dismissed again as against non-U.S. domiciled defendants. Meanwhile, the briefing on the OTC Plaintiffs' motion for class certification has been extensive, and whichever side loses that motion will likely pursue a Rule 23(f) petition. After class certification, the OTC Plaintiffs face the monumental task of completing merits discovery, including additional expert discovery, summary judgment briefing, and then a weeks- if not months-long trial from which the losing party will almost certainly appeal. *See, e.g., Vitamin C*, 2012 WL 5289514, at *4 ("This litigation has been pending since 2005 and has involved the production of thousands of documents, at least 17 fact witness depositions, expert discovery, and extensive motion practice. The Certified Classes are scheduled for a trial against the non-settling defendants that is expected to take at least three weeks."); *In re NASDAQ Market-Makers*

*Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998) (estimating that trial in a complex antitrust class action "could consume over a year").  In spite of the significant resources already expended preparing this case for trial, "[t]here can be no doubt that this class action would be enormously expensive to continue, extraordinarily complex to try, and ultimately uncertain of result." *NASDAQ*, 187 F.R.D. at 477.

c.    *Risk of the Litigation (Goldberger Factor 3)*

The third *Goldberger* factor—the "risk of the litigation"—also strongly supports approval of the requested fee.  The Second Circuit has identified "the risk of success as perhaps the foremost factor to be considered in determining [a reasonable fee award]."  *Goldberger*, 209 F.3d at 54 (internal quotation marks omitted); *see also Velez*, 2010 WL 4877852, at \*19 (stating that "the risk of litigation" is "[t]he most significant factor in determining an award of fees"). Class Counsel have taken on and overcome significant risks in this litigation.

i    Contingency Risk

"No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success." *Fleisher*, 2015 WL 10847814, at \*21 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974)).  Here, Class Counsel have invested more than 46,000 hours of time with a lodestar value of more than $25 million and yet, more than six years after this litigation began, have not been compensated for any of that time nor been reimbursed for any of the $13,961,666.57 in litigation expenses they have incurred.  *See In re High-Crush Ptrs. L.P. Secs. Litig.*, No. 12-cv-8557 (CM), 2014 WL 7323417, at \*16 (S.D.N.Y. Dec. 19, 2014) ("Lead Counsel undertook the representation of Lead Plaintiffs and the Class in this Action on a wholly contingent basis, investing substantial time and funds to prosecute this Action, without any guarantee of compensation of of recovering out-of-pocket expenses.");

15

*Fleisher*, 2015 WL 10847814, at *21 ("[T]he firm would not have been compensated for its time or expenses at all had it been unsuccessful in this litigation.").  Moreover, Class Counsel would not have been compensated for its time or expenses at all had they been unsuccessful in this litigation. *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 471 (2d Cir. 1974) ("[D]espite the most vigorous and competent of efforts, success is never guaranteed."); *Beacon Assocs. Litig.*, 2013 WL 2450960, at *13 ("And all of these matters were taken on contingency, so in view of the novelty of the issues there was some possibility that counsel would recover nothing at all."); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 366 (S.D.N.Y. 2002) ("The enormous risks of litigation are why settlement is frequently preferred. Settling avoids delay as well as uncertain outcome . . . .").  The risk of no recovery in complex class actions of this type is real and supports Class Counsel's request for fees.

ii   Liability Risk

"Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL 1883494, at *14 (S.D.N.Y. May 9, 2014).  The OTC Plaintiffs face significant risks in continuing to litigate this case, amplified by the complexity of the market for LIBOR-linked financial instruments and the fact that Barclays is a global financial institution with virtually unlimited litigation resources.

This case presents the Court, the parties, and eventually a jury with the task of understanding extremely complex derivative instruments in an opaque, unregulated market, during a period of extraordinary economic upheaval.  Should this case proceed to trial, "[t]he complexity of Plaintiff's claims *ipso facto* creates uncertainty . . . .  A trial on these issues would likely be confusing to a jury." *Park v. The Thomson Corp.*, No. 05 Civ. 2931 (WHP), 2008 WL 4684232, at *4 (S.D.N.Y. Oct. 22, 2008); *see* 31 No. 7 Futures & Derivatives L. Rep. 1

16

("Derivative instruments, in most cases, are highly complex and difficult to understand for even highly sophisticated and intelligent investors.").

Although the OTC Plaintiffs believe fervently in the merit of their case, it was not known at the time the settlement was reached how the Court would resolve the OTC Plaintiffs' anticipated motion for class certification (now pending before the Court).  *See Athale*, 2013 WL 11310686, at *6 ("Absent settlement, there is no assurance that Lead Plaintiff's motion for class certification would be granted or that Class status, if granted, would be maintained throughout trial.").  Nor was it clear how a jury would respond to the OTC Plaintiffs' claims or Barclays' defenses at trial. *See Sykes v. Harris*, No. 09-cv-8486, 2016 WL 3030156, at *18 (S.D.N.Y. May 24, 2016) ("Defendants asserted numerous novel defenses to Lead Plaintiffs' claims which put recovery for Class Members and Class Counsel at risk."); *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970)*, aff'd*, 440 F.2d 1079 (2d Cir. 1971) ("[N]o matter how confident one may be of the outcome of litigation, such confidence is often misplaced.").  That trial, moreover, would have required extensive fact and expert testimony, and regardless of outcome, the parties would be expected to pursue appeals from any result at trial.

iii     Damages Risk

Equally as significant as the risks in establishing liability in this case were the OTC Plaintiffs' risks in establishing damages.  The damages estimates in this case are heavily expert-driven, and, although the OTC Plaintiffs are confident in our ability to prove damages, the prospect of an expert battle at class certification and ultimately at trial adds substantial risk to the OTC Plaintiffs' claims.  *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-3400, 2010 WL 4537550, at *18 (S.D.N.Y. 2010) (noting that the burden in proving the extent of the class's damages weighed in favor of approving fee request, and that "[t]he jury's verdict . . . would . . . depend on its reaction to the complex testimony of experts, a reaction that is inherently uncertain

17

and unpredictable"); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 476 (S.D.N.Y. 1998) (observing that "[d]amages at trial would inevitably involve a battle of the experts" and noting that it is "difficult to predict with any certainty which testimony would be credited").

*     *     *

The only certainties from the outset of this litigation were that there would be no attorneys' fees or reimbursement of expenses without a successful result, and that a successful result, if any, could be achieved only after lengthy, difficult, and expensive effort.

### d.   Quality of the Representation (Goldberger Factor 4)

The fourth *Goldberger* factor, "the quality of representation," also supports approval of the requested fee.  Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award and in assessing the quality of the representation.  *See, e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).  Class Counsel respectfully submits that the $120 million Barclays Settlement, the first in this case and achieved in face of complex claims and defenses, very real risks, and repeated setbacks, is strong evidence of the quality of Class Counsel's representation.

"To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*, No. 02-cv-7951, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007). "Susman Godfrey has significant experience with . . . class actions, including settlements thereof . . . [and] [t]he lawyers working for the Class have substantial experience prosecuting large-scale class actions." *Fleisher*, 2015 WL 10847814, at *22; *see also* Jt. Decl. Ex. A.  Hausfeld's attorneys "are highly experienced practitioners in complex litigation generally and antitrust litigation

specifically." *Air Cargo*, No. 06-MD-1775 (JG) (VVP), Dkt. 2362, 2012 WL 3138596, at 11 (E.D.N.Y. Oct. 19, 2015); *see also* Jt. Decl. Ex. B.

"The quality of opposing counsel is also important in evaluating the quality of Lead Counsel's work." *Fleisher*, 2015 WL 10847814, at *22 (quoting *City of Providence*, 2014 WL 1883494, at *17).  Courts repeatedly recognize that the caliber of the opposition faced by plaintiffs' counsel should be taken into consideration in assessing the quality of the plaintiffs' counsel's performance.  *See Anwar v. Fairfield Greenwich Ltd.*, No. 09-cv-118, 2012 WL 1981505, at *2 (S.D.N.Y. June 1, 2012) (considering "the quality and vigor of opposing counsel").[7]  Barclays is represented by skilled and highly regarded counsel from Sullivan & Cromwell, a prestigious firm with a well-deserved reputation for vigorous advocacy in the defense of complex civil cases, and the same is true of the other defendants in this action.

  e. *Requested Fee in Relation to the Settlement (Goldberger Factor 5)*

The fifth *Goldberger* factor—"the requested fee in relation to the settlement"—also supports approval of the requested fee, as discussed *supra* at Part II(A).

  f. *Public Policy Considerations (Goldberger Factor 6)*

Finally, the sixth *Goldberger* factor—public policy considerations—weighs heavily in favor of the requested fee.  *Goldberger*, 209 F.3d at 50.  Public policy considerations strongly favor incentivizing skilled private attorneys to undertake class action litigation both to vindicate the rights of class members and the law enforcement function of private action litigation.  *See In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 359 (S.D.N.Y. 2005) ("[T]o attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand

---

[7] *See also In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("The high quality of defense counsel opposing Plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement."); *Marsh & McLennan*, 2009 WL 5178546, at *19 (noting that the reasonableness of the requested fee was supported by fact that defendants "were represented by first-rate attorneys who vigorously contested Lead Plaintiffs' claims and allegations").

19

are able and willing to do so, it is necessary to provide appropriate financial incentives."); *Hicks v. Stanley*, No. 01-cv-10071, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding."); *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999) ("[T]he Second Circuit and courts in this district also have taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation.").

Those interests are particularly salient in this case, which has required a massive investment of attorney time and expenses by Class Counsel with no right to seek compensation whatsoever for their services until more than six years into the litigation.  In order to incentivize the very best private attorneys to take on complex, lengthy, difficult, and expensive class actions like this one, the fee awarded must be sufficient to justify the opportunity cost of foregoing hourly and fixed-fee cases where counsel are assured of compensation regardless of the outcome of the litigation at hand.

**B.      *Class Counsel's Expenses Should Be Reimbursed***

Class Counsel also request reimbursement in the amount of $13,961,666.57 for out-of-pocket expenses reasonably and necessarily incurred in connection with the prosecution of this case.  "[C]ounsel is entitled to reimbursement from the common fund for reasonable litigation expenses." *Athale*, 2013 WL 11310686, at *9; *See also Anwar,* 2012 WL 1981505, at *3 ("Courts routinely note that counsel is entitled to reimbursement from the common fund for reasonable litigation expenses." (citing *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir. 1987))); *Vitamins Antitrust Litig.*, 2001 WL 34312839, at *13 ("[A]n attorney who has created a common fund for the benefit of the class is entitled to reimbursement

20

of . . . reasonable litigation expenses from that fund . . . . Courts have routinely awarded expenses for which counsel would normally directly bill their clients.").

The expenses incurred by Class Counsel include fees charged by experts, mediation fees, court fees, electronic research, photocopies, and travel in connection with this litigation.  Courts regularly approve similar cost applications in large, complex antitrust class actions.  *Credit Default Swaps*, 2016 WL 2731524, at *18 (approving $10 million in expenses "[m]ost of" which "were incurred in connection with retention of experts" where the case settled just prior to the due date for class certification motions); *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 438 (S.D.N.Y. 2016) (approving $7.5 million in expenses most of which were expert fees); *TFT-LCD (Flat Panel) Antitrust Litig.*, 2013 WL 1365900, at *16 (approving $8.7 million in expenses); *In re Bank of Am. Corp. Secs., Derivatives & ERISA Litig.*, 2013 WL 12091355, at *1 (S.D.N.Y. Apr. 8, 2013) (approving $8 million in litigation expenses); *In re Citigroup Inc. Bond Litig.*, 988 F. Supp. 2d 371, 380 (S.D.N.Y. 2013) (approving $7.3 million in litigation expenses); *In re Initial Public Offering Secs. Litig.*, 671 F. Supp. 2d at 505 (approving $46 million in expenses).

Class counsel is sharing in the costs of these expenses by requesting a percentage of the *net* settlement fund after expenses are deducted, rather than a percentage of the gross settlement fund, as courts routinely approve. *See, e.g.*, *Muni. Derivatives*, No. 1:08-cv-02516-VM-GWG, Dkt. 2029; *Air Cargo*, 2012 WL 3138596, at *5; *Deutsche Telekom*, 2005 WL 7984326, at *4. The vast majority of the expenses for which Class Counsel seek reimbursement are expert witness fees.  These expert witness expenses were key to engaging experts of exceptional skill, experience, and integrity in developing a highly reliable suppression and damages model—an essential component both of class certification as well as a central component of the plan of allocation for the Barclays Settlement.  The proof of the reasonableness of these expert expenses is in the results—Dr. Bernheim is the *only* plaintiffs' expert whose suppression and damages

21

model is not subject to a *Daubert* challenge by the defendants.  *See* Dkt. 2021 (Defendants'
motion to exclude Berkshire Plaintiffs' expert Professor Robert Webb); Dkt. 2053 (Defendants'
motion to exclude EBPs' expert Eric Miller); Dkt. 2055 (Defendants' motion to exclude EBPs'
expert Dr. Janet Netz); Dkt. 2057 (Defendants' motion to exclude EBPs' expert Dr. Nejat
Seyhun); Dkt. 2059 (Defendants' motion to exclude EBPs' expert Dr. Craig Beevers).  Indeed,
"[t]he fact that Class Counsel [were] willing to [incur these expenses], where reimbursement was
entirely contingent on the success of this litigation, is perhaps the best indicator that the
expenditures were reasonable and necessary." *Fleisher*, 2015 WL 10847814, at *23.

**C.**      ***Incentive Awards for the Named Plaintiffs Are Appropriate***

The OTC Plaintiffs also seek incentive awards of $25,000 for named plaintiffs the Mayor
& City Council of Baltimore, the City of New Britain, Vistra Energy Corp., Yale University, and
Jennie Stuart Medical Center Inc., as stated in the notice.  "Courts consistently approve awards in
class action lawsuits to compensate named plaintiffs for the services they provide and burdens
they endure during litigation." *Anwar,* 2012 WL 1981505, at *3.

The named plaintiffs provided invaluable service to the class by, for example, providing
evidence to assist in the development of the OTC Plaintiffs' claims, collecting thousands of
documents in response to discovery requests, responding to scores of questions from counsel
about the documents and data produced, and preparing and sitting for lengthy 30(b)(6)
depositions by the defendants.  Providing this service to the class required the named plaintiffs to
dedicate considerable time and take key personnel away from their normal duties.  Courts
routinely approve incentive awards to class representatives who provide these types of services
to the Class.  *See, e.g.*, *Sewell*, 2012 WL 1320124, at *15 (approving incentive awards where the
named plaintiffs "served class members by providing counsel with relevant documents in their

possession, assisting counsel to prepare for the mediation, participating in litigation strategy, and reviewing and commenting on the terms of the settlement. (internal quotation marks omitted)).

Courts have approved similar and higher incentive awards in numerous cases. *See, e.g.*, *Anwar*, 2012 WL 1981505, at *4 (awarding $25,000 to class representative); *Duchene v. Michael Cetta, Inc.,* No. 06-cv-4576, 2009 WL 5841175, at *9 (S.D.N.Y. Sept. 10, 2009) (awarding $25,000, representing 0.8% of $3,150,000 settlement amount); *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118 (S.D.N.Y. 2001) (noting case law supporting payments of between $2,500 and $85,000 to representative plaintiffs in class actions); *Yap v. Sumitomo Corp. of Am.*, No. 88-cv-700, 1991 WL 29112, at *9 (S.D.N.Y. Feb. 22, 1991) ($30,000 incentive awards to each of the named plaintiffs).

It is respectfully submitted that the Court should grant incentive awards of $25,000 to each of the named class representative plaintiffs.

### III. CONCLUSION

The OTC Plaintiffs respectfully request that the Court award the requested attorneys' fees in the amount of $31,811,500, expenses in the amount of $13,961,666.57, and service awards of $25,000 for each named plaintiff, plus interest on the foregoing amounts at the same rate earned by the settlement fund.

5311953v1/012751

Dated:  September 22, 2017

By:      /s/ Michael D. Hausfeld                       /s/ William Christopher Carmody

Michael D. Hausfeld                                    William Christopher Carmody (WC8478)
Hilary Scherrer                                        Arun Subramanian (AS2096)
Nathaniel C. Giddings                                  Seth Ard (SA1817)
HAUSFELD LLP                                           Geng Chen (GC2733)
1700 St. NW, Suite 650                                 SUSMAN GODFREY L.L.P.
Washington, D.C. 20006                                 1301 Avenue of the Americas, 32nd Fl.
Telephone: (202) 540-7200                              New York, New York 10019
Facsimile: (202) 540-7201                              Telephone: 212-336-3330
Email: mhausfeld@hausfeldllp.com                       Facsimile: 212-336-8340
Email: hscherrer@hausfeldllp.com                       bcarmody@susmangodfrey.com
Email: ngiddings@hausfeldllp.com                       asubramanian@susmangodfrey.com
                                                       sard@susmangodfrey.com
Gary I. Smith                                          gchen@susmangodfrey.com
HAUSFELD LLP
325 Chestnut Street                                    Marc M. Seltzer (CA State Bar No. 54534)
Suite 900                                              Glenn C. Bridgman (CA State Bar No.
Philadelphia, PA 19106                                 270891)
267-702-2318 Direct                                    SUSMAN GODFREY L.L.P.
215-985-3270 Main                                      1901 Avenue of the Stars
215-985-3271  Fax                                      Los Angeles, California  90067-6029
GSmith@hausfeld.com                                    Telephone: (310) 789-3100
                                                       mseltzer@susmangodfrey.com
*Counsel for the Mayor & City Council of*              gbridgman@susmangodfrey.com
*Baltimore, Yale University, the City of New*
*Britain, Vistra Energy Corp., Jennie Stuart*          Drew D. Hansen (WA State Bar No.: 30467)
*Medical Center, Inc. and Interim Lead Counsel*        Matthew R. Berry (WA State Bar No.: 37364)
*for the Proposed OTC Plaintiff Class*                 SUSMAN GODFREY LLP
                                                       1201 Third Avenue, Suite 3800
                                                       Seattle, WA 98101
                                                       Telephone: (206) 516-3880
                                                       Facsimile: (206) 516-3883
                                                       Email: dhansen@susmangodfrey.com
                                                       mberry@susmangodfrey.com

                                                       Barry C. Barnett (BB1984)
                                                       Karen A. Oshman (TX State Bar No.: 15335800)
                                                       Michael C. Kelso (TX State Bar No.: 24092617)
                                                       SUSMAN GODFREY L.L.P.
                                                       1000 Louisiana Street
                                                       Suite 5100
                                                       Houston, TX 77002-5096
                                                       Telephone: (713) 651-9366
                                                       Facsimile: (713) 654-6666
                                                       bbarnett@susmangodfrey.com

24

koshman@susmangodfrey.com
mkelso@susmangodfrey.com

*Counsel for the Mayor & City Council of
Baltimore, Yale University, the City of New
Britain, Vistra Energy Corp., Jennie Stuart
Medical Center, Inc. and Interim Lead Counsel
for the Proposed OTC Plaintiff Class*

25

**CERTIFICATE OF SERVICE**

I hereby certify that on September 22, 2017, I caused the aforementioned document to be served via the email or Electronic Case Filing (ECF) system in the United States District Court for the Southern District of New York, on all parties registered for CM/ECF in the above-captioned matters.

Dated: September 22, 2017

/s/ William Christopher Carmody
William Christopher Carmody