## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION | MDL No. 11-md-2262 (NRB) |
| THIS DOCUMENT RELATES TO: | |
| The OTC Action | No. 11-cv-5450 |

## OTC PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF OTC PLAINTIFFS' APPLICATION FOR AN AWARD OF <u>ATTORNEYS' FEES AND EXPENSES</u>

# TABLE OF CONTENTS

**Page(s)**

Table of Authorities ........................................................................................................... ii

I.      INTRODUCTION ....................................................................................................1

II.     BACKGROUND .....................................................................................................3

III.    ARGUMENT ...........................................................................................................4

      A.      Class Counsel's Amended Attorneys' Fee Request Is Fair &
            Reasonable ...................................................................................................4

            1.      Courts Regularly Award Fees Using the Percentage-of-
                   Recovery Method ...........................................................................4

            2.      Class Counsel's Efforts Support the Amended Fee Request ......................8

            3.      The Amended Fee Request Is Reasonably Related to the
                   Barclays Settlement ......................................................................14

      B.      Class Counsel's Amended Expense Reimbursement Request Is Fair
            and Reasonable .........................................................................................18

IV.     CONCLUSION......................................................................................................21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

Cases

*Air Cargo Shipping Servs. Antitrust Litig. (Air Cargo I)*,
   2009 WL 3077396 (E.D.N.Y. Sept. 25, 2009) ........................................................................ 7

*Air Cargo Shipping Servs. Antitrust Litig. (Air Cargo II)*,
   2011 WL 2909162 (E.D.N.Y. July 15, 2011) .................................................................... 5, 12

*Air Cargo Shipping Servs. Antitrust Litig. (Air Cargo III)*,
   2012 WL 3138596 (E.D.N.Y. Aug. 2, 2012) ........................................................................ 5

*Air Cargo Shipping Servs. Antitrust Litig. (Air Cargo IV)*,
   2015 WL 5918273 (E.D.N.Y. Oct. 9, 2015) ........................................................................ 6

*Anwar v. Fairfield Greenwich Ltd.*,
   2012 WL 1981505 (S.D.N.Y. June 1, 2012) ...................................................................... 20

*Beckman v. KeyBank N.A.*,
   293 F.R.D. 467 (S.D.N.Y. 2013) ................................................................................ 16, 18

*Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) .................................................................................... 20

*In re Arakis Energy Corp. Sec. Litig.*,
   2001 WL 1590512 (E.D.N.Y. Oct. 31, 2001) .................................................................. 20

*In re Automotive Parts Antitrust Litig. (Auto Parts*, I),
   No. 12-cv-0103  (E.D. Mich. Dec. 5, 2016) ................................................................... 6, 8

*In re Automotive Parts Antitrust Litig. (Auto Parts*, II),
   2017 WL 3525415 (E.D. Mich. July 10, 2017) .............................................................. 6, 8

*In re Bristol-Myers Squibb Sec. Litig.*,
   361 F. Supp. 2d 229 (S.D.N.Y. 2005) ............................................................................ 16

*In re Colgate-Palmolive Co. ERISA Litig.*,
   36 F. Supp. 3d 344 (S.D.N.Y. 2014) .................................................................... 4, 15, 16

*In re Credit Default Swaps Antitrust Litig.*,
   2016 WL 2731524 (S.D.N.Y. April 26, 2016) ............................................................... 16

*In re CRT Antitrust Litig. (CRT*,
   I), 2016 WL 183285 (N.D. Cal. Jan. 14, 2016) ................................................................ 6

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) ............................................................... 13

*In re NTL, Inc. Sec. Litig.*,
   2007 WL 623808 (S.D.N.Y. Mar. 1, 2007) ............................................... 15

*In re Online DVD Rental Antitrust Litig.*,
   2011 WL 5883772 (N.D. Cal. Nov. 23, 2011) ......................................... 11

*In re Online DVD Rental Antitrust Litig.*,
   No. 09-md-2029, (N.D. Cal. Mar. 29, 2012)
   779 F.3d 934 (9th Cir. 2015) ............................................................. 11, 12

*In re Visa Check/Mastermoney Antitrust Litig.*,
   297 F. Supp. 2d 503 (E.D.N.Y. 2003) ...................................................... 21

*Kleen Prods. LLC v. Int'l Paper Co.*,
   2017 WL 3310975 (N.D. Ill. Aug. 3, 2017) ............................................ 10

*Kleen Prods. LLC v. Int'l Paper Co.*,
   2017 WL 5247928 (N.D. Ill. Oct. 17, 2017) ..................................... 11, 18

*Laydon v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*,
   2017 WL 1113080 (S.D.N.Y. Mar. 10, 2017) ......................................... 10

*Precision Assocs., Inc. v. Panalpina World Transport (Holding) Ltd.*
   *(Freight Forwarders II)*,
   2015 WL 6964973 (E.D.N.Y. Nov. 10, 2015) ........................................... 5

*Processed Egg Prods. Antitrust Litig. (Processed Egg I)*,
   2012 WL 5471481 (E.D. Pa. Nov. 9, 2012) .............................................. 8

*Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*,
   818 F.2d 278 (2d Cir. 1987) .................................................................... 20

*Seijas v. Republic of Argentina*
   2017 WL 1511352 (S.D.N.Y. Apr. 27, 2017) ..................................... 13, 15

*Sonterra Capital Master Fund, Ltd. v. UBS AG*,
   2017 WL 1091983 (S.D.N.Y. Mar. 10, 2017) ......................................... 10

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011) ..................................................................... 9

*Velez v. Novartis Pharma. Corp.*,
   2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) .......................................... 8

iii

*Vitamin C Antitrust Litig. (Vitamin C)*,
     2012 U.S. Dist. LEXIS 152275, at *30 (E.D.N.Y. Oct. 22, 2012) ........................................... 5

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
     396 F.3d 96 (2d Cir. 2005) ......................................................................................................... 5

5448855v1/012751

# I.     INTRODUCTION

Court-appointed interim co-lead class counsel for the OTC Plaintiffs, Susman Godfrey L.L.P. and Hausfeld LLP ("Class Counsel"), respectfully submit this supplemental memorandum in support of the OTC Plaintiffs' application for an award of attorneys' fees and expenses in response to the questions raised by the Court at the fairness hearing held on October 23, 2017 ("10/23/17 Hrg."), regarding the proposed settlement between the OTC Class and Barclays Bank PLC ( the "Barclays Settlement").[1]

First, with respect to the application for an award of attorneys' fees, OTC Plaintiffs hereby amend their request for attorneys' fees to be awarded from the Barclays Settlement downward from $31,811,500, or 30% of the net settlement fund, to an interim award of $24 million, or 20% of the principal amount of the settlement fund.  *See* Dkt. 2279 ("Initial Fee Br."). OTC Plaintiffs respectfully ask that the Court to reserve ruling on the remaining $7,811,500 portion of the award requested in the OTC Plaintiffs' original request until a later stage of this litigation.  The amended request for 20% of the principal amount of the settlement fund is well within the range of awards found to be reasonable under this Circuit's precedents, aligned with awards regularly approved in comparable multi-defendant antitrust class actions, and will reward Class Counsel for the outstanding result they have obtained for the OTC Class which was achieved only after years of hard-fought litigation undertaken entirely on a contingency fee basis. Indeed, the amended fee request of 20% of the principal amount of the settlement fund is more modest than the 25% that class counsel recently requested and received as an interim award from the initial settlement fund in the Yen LIBOR and Euroyen TIBOR actions.  *See Laydon v.*

---

[1] The transcript of this hearing and all unpublished pleadings, orders, and hearing transcripts not available on Westlaw are attached as exhibits to the Declaration of Geng Chen in Support of OTC Plaintiffs' Supplemental Memorandum in Support of OTC Plaintiffs' Application for an Award of Attorneys' Fees and Expenses, filed concurrently herewith.

*Mizuho Bank, Ltd.*, No. 12-cv-3419, slip op. ¶¶ 3, 5(e)-(f) (S.D.N.Y. Nov. 10, 2016), ECF No. 723.  For over six years, Class Counsel have worked tirelessly and incurred millions of dollars in expenses for the benefit of the OTC Class and have not received any compensation whatsoever for their services to date.  This amended fee request is *less* than Class Counsel's previously reported hourly rate lodestar of $26 million,[2] resulting in a negative multiplier of 0.92 when applying the common practice in antitrust cases—used by Judge Daniels in *Laydon* and many others, *see infra*—of considering cumulative lodestar when performing the crosscheck.  But even when considered in light of Class Counsel's lodestar as of the date the Barclays Settlement was reached, the amended request represents a 2.88 multiplier on a $8.3 million lodestar—well within the range found reasonable by courts in this Circuit.

Second, with respect to expenses, OTC Plaintiffs hereby modify their request to seek reimbursement of $656,337.64, representing only those expenses incurred through the date of the Barclays Settlement.[3]  This 95% reduction of $13,305,328.93 from OTC Plaintiffs' prior request will reimburse Class Counsel for only 4.7% of the expenses they have advanced or incurred on behalf of the OTC Class over the last six years.  This amended expense request furthermore represents only 0.55% of the $120 million Barclays settlement fund.  Courts in this Circuit regularly make interim expense reimbursement awards  that are double or triple the amount now being requested by Class Counsel, and those awards, particularly when made from partial settlements reached with defendants in multi-defendant actions, often represent a far greater percentage of those settlements funds.

---

[2] Class Counsel's lodestar through June 30, 2017, was $26 million.  *See* Dkt. 2280 ¶ 13 ("Joint Decl.").

[3] OTC Plaintiffs make no change to their request for incentive awards for named plaintiffs the Mayor & City Council of Baltimore, the City of New Britain, Vistra Energy Corp., Yale University, and Jennie Stuart Medical Center, Inc. *See* Initial Fee Br. at 22-23.

2

Finally, in response to the Court's request for additional detail and backup, Tr. 10/23/17 Hrg. 60:10, OTC Plaintiffs also submit for the Court's review a more detailed description of the work performed by Class Counsel and their expert economists at Bates White.[4]  Class Counsel respectfully submit that the services they have provided on behalf of the OTC Class, in light of the very substantial benefits Class Counsel have obtained for the OTC Class as a result of their efforts, fully support the amended fee and expense application, and OTC Plaintiffs respectfully request that the Court approve an interim award of $24 million in attorneys' fees and $656,337.64 in expenses to be paid from the Barclays Settlement.[5]

## II.   BACKGROUND

On November 11, 2015, more than four years into this hotly contested litigation,[6] Class Counsel entered into a settlement agreement with Barclays Bank PLC.  The Barclays Settlement provides for a cash payment of $120 million and additional valuable non-monetary relief in the form of discovery cooperation by Barclays which will assist OTC Plaintiffs' in their continued litigation against the non-settling defendants.[7]  This Court preliminarily approved the Barclays Settlement on December 21, 2016, *see* Dkt. 1678, and on September 22, 2017, OTC Plaintiffs filed motions for final approval of the settlement and for an award of attorneys' fees, expenses, and incentive awards for the named plaintiffs, *see* Dkts. 2274-85.  A fairness hearing was held on October 23, 2017.  At that hearing, the Court raised three primary areas of concern about the

---

[4] This description is set forth in the Joint Declaration of William C. Carmody and Michael D. Hausfeld in Support of OTC Plaintiffs' Supplemental Memorandum in Support of OTC Plaintiffs' Application for an Award of Attorneys' Fees and Expenses ("Suppl. Joint Decl."), filed concurrently herewith.

[5] A revised proposed order is attached as Exhibit 1.

[6] OTC Plaintiffs' initial complaint was filed on August 5, 2011.  *See* Class Action Complaint for Violation of the Federal Antitrust Laws, *Mayor & City Council of Baltimore v. Bank of Am.*, No. 11-cv-5450 (S.D.N.Y. Aug. 5, 2011), ECF No. 1.

[7] On July 24, 2017, OTC Plaintiffs reached a second settlement with Citibank, N.A. and Citigroup Inc. ("Citibank"), for $130 million, plus an agreement to provide extensive discovery cooperation.  *See* Dkt. 2226-1.

3

requested attorneys' fees and expense reimbursement.  First, the Court questioned the application of the percentage-of-recovery method.  *See* Tr. 10/23/17 Hrg. 60:14-17, 66:22-24.  Second, the Court remarked on the relationship between the fee requested by Class Counsel, Class Counsel's lodestar, and the results achieved by Class Counsel relative to the overall litigation.  *See id.* 60:1-2, 63:15-23, 64:3-6, 65:6-11, 66:22-24.  Third, the Court sought more information regarding the time and expenses submitted by Class Counsel and their relationship to the Barclays Settlement. *See id.* 59:21-23; 60:10-13, 66:9-13.  Class Counsel offered to submit supplemental briefing, *see id.* 63:2-3, 64:15-16, and now, after careful consideration of the Court's stated concerns, respectfully seek approval of an interim award of attorneys' fees of $24 million and expense reimbursement of $656,337.64.

## III.   ARGUMENT

### A.    <u>Class Counsel's Amended Attorneys' Fee Request Is Fair & Reasonable</u>

OTC Plaintiffs' amended fee request of 20% of the $120 million fund obtained by Class Counsel is fair and reasonable under both the percentage-of-recovery method endorsed by the Second Circuit and the lodestar/multiplier crosscheck often employed by courts as a "sanity check" regarding the percentage award.  *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014).  OTC Plaintiffs rely on their prior briefing addressing the *Goldberger* factors used in this Circuit to measure the reasonableness of a common fund-derived fee, and focus this supplemental briefing on the specific issues raised by the Court at the October 23rd fairness hearing.

#### 1.    Courts Regularly Award Fees Using the Percentage-of-Recovery Method

At the fairness hearing, the Court questioned the use of the percentage method when determining an appropriate fee award from a partial settlement in a multi-defendant antitrust

class action.  *See* Tr. 10/23/17 Hrg. 60:14-17, 66:22-24.  As the Court knows, the Second Circuit generally favors the percentage method for awarding attorneys' fees because it "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *see also* Initial Fee Br. at 7. This principle and preference hold equally true for interim fee awards drawn from partial settlements with one or more defendants in a multi-defendant action.  *See In re Vitamin C Antitrust Litig.* (*Vitamin C*), 2012 U.S. Dist. LEXIS 152275, at *30 (E.D.N.Y. Oct. 22, 2012) (noting that "[f]ees can be awarded based on an interim settlement" and recounting the Second Circuit's "trend" of "utiliz[ing] the percentage method" with the lodestar/multiplier method as a cross-check).  For instance, in the *Laydon* and *Sonterra* actions alleging manipulation of Yen-LIBOR and Euroyen TIBOR, Judge Daniels used the percentage method to make a first interim fee award of $14.5 million, equaling 25% of the $58 million common fund established by the first round of settlements in those actions. *See Laydon*, slip op. ¶¶ 3, 5(e)-(f).

This approach is common in and outside this Circuit: courts regularly make successive percentage-based interim fee awards over the life of a multi-defendant antitrust class action.  For example, Judge Gleeson applied this model to make two interim fee awards and one final award in the *Freight Forwarders* action and four interim fee awards and one final fee award in the *Air Cargo* action.  *See, e.g.*, *Precision Assocs., Inc. v. Panalpina World Transport (Holding) Ltd.* (*Freight Forwarders II*), 2015 WL 6964973, at *7-8 (E.D.N.Y. Nov. 10, 2015) (granting petition for second interim award request of 25% of $169 million settlement fund); *In re Air Cargo Shipping Servs. Antitrust Litig.* (*Air Cargo III*), 2012 WL 3138596, at *5-6 (E.D.N.Y. Aug. 2, 2012) (granting third fee award request of 25% of $222 million settlement fund); *In re Air Cargo*

*Shipping Servs. Antitrust Litig.* (*Air Cargo II*), 2011 WL 2909162, at *6-7 (E.D.N.Y. July 15, 2011) (granting second fee award request of 25% of $154 million settlement fund).

Interim fees in the amount of 25% of a settlement fund—as awarded in *Laydon*, *Freight Forwarders*, and *Air Cargo* described above—have been awarded in many class action cases.  In fact, courts often award fees of one-third of the fund established by a partial settlement.  Table 1 below describes fee awards made in a number of recent antitrust class actions, including cases with partial settlements, in descending order by size of the settlement fund, with the revised request in this case highlighted.  OTC Plaintiffs' original fee request for 30% of the net settlement fund (after deducting expenses) lay well within the range of what courts have recently awarded in similar cases; OTC Plaintiffs' amended fee request is near the bottom of that range.

**Table 1**

| Case | Settlement Fund | Fee Awarded | Fee Percentage |
|---|---|---|---|
| *In re Urethane Antitrust Litig.* (*Urethane III*), No. 04-md-1616 (D. Kan. July 29, 2016), ECF No. 3276 | $835 million | $278 million | 33-1/3% |
| *In re Air Cargo Shipping Servs. Antitrust Litig.* (*Air Cargo V*), No. 06-md-1775 (E.D.N.Y. Oct. 25, 2016), ECF No. 2484 | $388 million | $97 million | 25% |
| *In re Automotive Parts Antitrust Litig.* (*Auto Parts II*), 2017 WL 3525415 (E.D. Mich. July 10, 2017) | $379 million | $75.7 million | 20% |
| *In re Air Cargo Shipping Servs. Antitrust Litig.* (*Air Cargo IV*), 2015 WL 5918273 (E.D.N.Y. Oct. 9, 2015) | $333 million | $73.2 million | 22% |
| *In re Automotive Parts Antitrust Litig.* (*Auto Parts I*), No. 12-cv-0103 (E.D. Mich. Dec. 5, 2016), ECF No. 545 | $225 million | $44.9 million | 20% |
| *Air Cargo III* | $222 million | $54.4 million | 24% |
| *Freight Forwarders II* | $169 million | $42.2 million | 25% |
| *In re Steel Antitrust Litig.* (*Steel I*), No. 08-cv-5214 (N.D. Ill. Oct. 22, 2014), ECF No. 539 | $164 million | $54.1 million | 33% |
| *Air Cargo II* | $154 million | $38.5 million | 25% |
| *In re CRT Antitrust Litig.* (*CRT I*), 2016 WL 183285 (N.D. Cal. Jan. 14, 2016) | $127.5 million | $38.2 million | 30% |

| OTC Plaintiffs' Amended Fee Request | $120 million | $24 million | 20% |
|---|---|---|---|
| *Precision Assocs., Inc. v. Panalpina World Transport (Holding) Ltd.* (*Freight Forwarders III*), No. 08-cv-0042 (E.D.N.Y. Nov. 07, 2016), ECF No. 1396 | $118 million | $29.7 million | 25% |
| *Precision Assocs., Inc. v. Panalpina World Transport (Holding) Ltd.* (*Freight Forwarders I*), No. 08-cv-0042 (E.D.N.Y. Dec. 27, 2013), ECF No. 984 | $112 million | $16.9 million | 15%[8] |
| *In re Municipal Derivatives Antitrust Litig.* (*Muni Derivatives IV*), No. 08-cv-2516 (S.D.N.Y. July 8, 2016), ECF No. 2029 | $101 million | $33 million | 33-1/3% |
| *In re Air Cargo Shipping Servs. Antitrust Litig.* (*Air Cargo I*), 2009 WL 3077396 (E.D.N.Y. Sept. 25, 2009) | $85 million | $12.8 million | 15%[9] |
| *In re CRT Antitrust Litig.* (*CRT II*), No. 07-cv-5944 (N.D. Cal. June 8, 2017), ECF No. 5169 | $84.8 million | $25.4 million | 30% |
| *In re Urethane Antitrust Litig.* (*Urethane II*), No. 04-md-1616 (D. Kan. Dec. 13, 2011), ECF No. 2210 | $84 million | $28 million | 33-1/3% |
| *In re Municipal Derivatives Antitrust Litig.* (*Muni Derivatives II*), No. 08-cv-2516 (S.D.N.Y. Dec. 14, 2012), ECF No. 1744 | $81.6 million | $23.3 million | 29%[10] |
| *In re Urethane Antitrust Litig.* (*Urethane I*), No. 04-md-1616 (D. Kan. July 22, 2009), ECF No. 995 | $58.9 million | $19.6 million | 33-1/3% |
| *Laydon* | $58 million | $14.5 million | 25% |
| *In re Municipal Derivatives Antitrust Litig.* (*Muni Derivatives III*), No. 08-cv-2516 (S.D.N.Y. June 6, 2014), ECF No. 1903 | $38.3 million | $11.5 million | 30% |
| *In re Steel Antitrust Litig.* (*Steel II*), No. 08-cv-5214 (N.D. Ill. Feb. 16, 2017), ECF No. 680 | $30 million | $9.9 million | 33-1/3% |
| *In re Processed Egg Prods. Antitrust Litig.* (*Processed Egg II*), No. 08-md-2002 (E.D. Pa. Oct. | $28 million | $8.5 million | 30% |

---

[8]  In *Freight Forwarders I*, Judge Gleeson granted an interim fee award of 15% of the initial settlement fund, rejecting class counsel's request for 33-1/3% of that fund.  Class counsel later requested and received 25% of the subsequent settlement funds in *Freight Forwarders II* and *III*.

[9]  In *Air Cargo I*, the first settlement at issue was reached on September 11, 2006, a few months after the initial complaint was filed and before the motions to dismiss were briefed, and Judge Gleeson awarded class counsel $12.8 million in fees and $1.57 million in expenses out of that settlement.  *Air Cargo I*, 2009 WL 3077396, at *1-*2.  Judge Gleeson later granted class counsel's requests for 22% to 25% to be paid out of subsequent settlement funds.

[10]  Class counsel previously requested and received a combined award of $1.55 million for fees and expenses from an initial settlement for $6.5 million.  *See In re Municipal Derivatives Antitrust Litig.* (*Muni Derivatives I*), No. 08-cv-2516 (S.D.N.Y. Dec. Oct. 7, 2011), ECF No. 1597.

| 10, 2014), ECF No. 1079 | | | |
|---|---|---|---|
| *In re Processed Egg Prods. Antitrust Litig.* (*Processed Egg I*), 2012 WL 5471481 (E.D. Pa. Nov. 9, 2012) | $25 million | $7.5 million | 30% |

Moreover, the range of fee awards made from the proceeds of partial settlements shown in Table 1 is consistent with fee awards granted in single-defendant actions, where "fees that are 30 percent or greater" are "routine[]." *Velez v. Novartis Pharma. Corp.*, 2010 WL 4877852, at *21 (S.D.N.Y. Nov. 30, 2010); *see also* Initial Fee Br. at 8-9. Courts have approved interim fees from a partial settlement without prejudice to granting the remainder requested upon completion of the litigation. *See Auto Parts II*, 2017 WL 3525415, at *4 (granting in part request for 27.5% of net settlement fund by awarding 20% while "reserv[ing] ruling on [plaintiffs'] request for additional fees from these settlements"); Transcript of Hearing, *In re Automotive Parts Antitrust Litig.*, No. 12-cv-0103 (E.D. Mich. Apr. 19, 2017). As this Court noted at the fairness hearing, different considerations apply to settlements that occur early in a multi-defendant action as compared to "a settlement that closes the case." Tr. 10/23/17 Hrg. 60:14-17. Accordingly, OTC Plaintiffs request that the Court approve an interim fee award of $24 million, or 20% of the $120 million settlement fund, while reserving judgment on the remaining $7,811,500 requested by OTC Plaintiffs' until a later stage of the litigation.

**2.     Class Counsel's Efforts Support the Amended Fee Request**

Class Counsel have worked tirelessly on behalf of the OTC Plaintiffs for over six years on a fully contingent basis and has achieved very substantial recoveries for the class. The Barclays Settlement—which provides $120 million in cash and additional non-monetary discovery cooperation benefits—is, for the reasons stated in OTC Plaintiffs' submissions in support of final approval, a "very favorable result given the many inherent risks in litigation" and

enjoys resounding support from the OTC Class.   Dkt. 2276.   The primary measure of Class Counsel's success is the recovery they have achieved for the OTC Class.   Courts recognize that the percentage method, by tying the fee award to the result achieved for the class, "allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'" *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 330 (3d Cir. 2011).   This dynamic has particular application to successive fee awards made in multi-defendant actions, where class counsel's efforts in securing partial settlements with certain defendants protects the class against the risk that there might *never* be any recovery from other defendants.   And, in antitrust class actions, joint and several liability among defendants alleged to have participated in a price-fixing conspiracy means that (1) the *same* class benefits from class counsel's efforts with respect to all of the defendants, and (2) class counsel's efforts to develop evidence and establish liability on the part of any defendant applies to all defendants, as every defendant is alleged to be a member of a conspiracy and is thereby jointly and severally liable for all of the damages suffered by the class.   As discussed below, courts recognize this aspect of antitrust liability when awarding fees.

At the hearing, the Court expressed concern about awarding fees to Class Counsel "who have had success in an eighth of the case that they brought," Tr. 10/23 Hrg. 65:8-11, and presented a hypothetical scenario where an intervening event, such as a Supreme Court decision, "blows this case out of the water," and sends OTC Plaintiffs' case against the remaining defendants "totally down the tubes," *id.* 65:15-23.   If, in that hypothetical, the end result of the OTC Action will be that the OTC Class "only" recovers $250 million from two defendants[11] and nothing from the remaining fourteen, Class Counsel's success would lie in achieving a quarter-

---

[11] OTC Plaintiffs' settlement with Citigroup Inc. and Citibank, N.A. for a $130 million cash fund and cooperation benefits has been preliminarily approved.   *See* Dkt. 2247.

billion dollar result for the Class despite the very real and realized risk that the Class could have received *nothing* from any of the defendants.

Judge Daniels's comments in making an initial fee award in *Laydon* and *Sonterra* of $14.5 million, or 25% of the initial settlement fund, are instructive here.  Judge Daniels noted that, "in the absence of a settlement, [the actions against the settling defendants] would have involved lengthy proceedings with uncertain resolution," and recognized that "[h]ad Plaintiffs' Counsel not achieved the Settlements, a risk would remain that Plaintiffs and the Settlement Class may have recovered less or nothing from [the settling defendants]." *Laydon*, slip op. ¶ 5(b)-(c).  Judge Daniels granted class counsel's request for an interim fee award of 25% of the $58 million settlement fund, *id.* ¶ 3, is a case where the court's words proved prescient, in that the *thirty* non-settling defendants in the *Sonterra* action were dismissed from the case less than six months later, *see Sonterra Capital Master Fund, Ltd. v. UBS AG*, 2017 WL 1091983, at *1 (S.D.N.Y. Mar. 10, 2017).[12]

A similar situation arose in the *Containerboard* antitrust class action.  There, class counsel achieved a $345 million settlement with three defendants that the court preliminarily approved days before issuing a summary judgment order fully disposing of the class's claims against the remaining two non-settling defendants. *See Kleen Prods. LLC v. Int'l Paper Co.*, No. 10-cv-5711 (N.D. Ill. Aug. 1, 2017), ECF No. 1301 (granting preliminary approval to settlements); *Kleen Prods. LLC v. Int'l Paper Co.*, 2017 WL 3310975 (N.D. Ill. Aug. 3, 2017) (granting motion for summary judgment).

At the fairness hearing for the settlement, Judge Leinenweber acknowledged class counsel's diligence in pursuing a difficult and ultimately partially unsuccessful case:

---

[12] Judge Daniels also dismissed three defendants from the *Laydon* action for lack of personal jurisdiction. *See Laydon v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*, 2017 WL 1113080, at *1 (S.D.N.Y. Mar. 10, 2017).

> THE COURT: All right. Well, it would be hard for me -- pressed to say that you haven't worked hard. And it was not an easy case, or I presume I wouldn't have granted summary judgment. So it appears to me that the settlement is very clearly favorable to the class.
>
> In addition, it seems to me that the amount of time and effort that the plaintiff's counsel has put in, it seems to me that it warrants a fee within the bracket that you're requesting, so I would approve that.

Transcript of Hearing, *Kleen Prods. LLC v. Int'l Paper Co.*, No. 10-cv-5711 (N.D. Ill. Oct. 17, 2017) ("Tr. 10/17/17 *Containerboard* Hrg."). The court then granted class counsel's request for 30% of the $345 million settlement fund, equaling approximately $104 million. *See Kleen Prods. LLC v. Int'l Paper Co.*, 2017 WL 5247928, at *5 (N.D. Ill. Oct. 17, 2017). In *Containerboard*, the fact that class counsel's lodestar included time spent opposing the defendants' successful motion for summary judgment and preparing for a trial that never occurred was not seen as a factor that should reduce the fees to be awarded. *See* Joint Declaration ¶¶ 96-103, *Kleen Prods. LLC v. Int'l Paper Co.*, No. 10-cv-5711 (N.D. Ill. Aug. 28, 2017), ECF No. 1383-2.

Similarly, in the *Online DVD Rental* case, plaintiffs settled with one defendant for $27.25 million and then lost the entire case against the remaining defendant a few months later, when the court granted that defendant's motion for summary judgment. *See In re Online DVD Rental Antitrust Litig.*, No. 09-md-2029 (N.D. Cal. Sept. 2, 2011), ECF No. 492 (granting preliminary approval to settlement); *In re Online DVD Rental Antitrust Litig.*, 2011 WL 5883772, at *1 (N.D. Cal. Nov. 23, 2011) (granting motion for summary judgment). The court nevertheless granted class counsel's fee request for 25% of the settlement fund. *In re Online DVD Rental Antitrust Litig.*, No. 09-md-2029, slip op. ¶ 1 (N.D. Cal. Mar. 29, 2012), ECF No. 607, *aff'd*, 779 F.3d

934, 955 (9th Cir. 2015).[13]   Indeed, at fairness hearing, Judge Hamilton specifically cited her

summary judgment order as one reason to approve the fee request as reasonable:

> At this time, I'm prepared to find that the settlement is fair, reasonable, and
> adequate given the totality of the circumstances, ***particularly given the fact that
> half the case has been kind of wiped off the books for the plaintiffs***, I find that
> the settlement is fair, reasonable, and adequate, that something's better than
> nothing in this kind of case, and that ***the bench mark is a reasonable fee*** for this
> case. So I approve.

Transcript of Hearing, *In re Online DVD Rental Antitrust Litig.*, No. 09-md-2029 (N.D. Cal.

Mar. 14, 2012), ECF No. 602 (emphasis added).   In *Online DVD Rental*, as in *Containerboard*,

class counsel's diligence in pursuing what turned out to be an unsuccessful claim was a

compelling reason to *award* the requested fees.   Moreover, both courts found it appropriate to

award fees as a percentage of the recovery that class counsel *did* obtain for the class pursuant to

partial settlements with certain defendants despite class counsel's ultimately losing efforts as to

other defendants.[14]

OTC Plaintiffs' request for an interim award of 20% of the Barclays settlement fund

created through the efforts of Class Counsel—a lower percentage than those approved in *Laydon*

(25%), *Containerboard* (25%), and *Online DVD Rental* (30%)—is consistent with Class

Counsel's achievement in obtaining a highly favorable recovery in light of the substantial risks

of this litigation.   *See Air Cargo II*, 2011 WL 2909162, at *6 (noting the "obviously risky" nature

of the action "in light of the current economic climate as well as the scope and nature of the

litigation" in the course of approving fee request for 25% of the settlement fund).   The examples

---

[13] Class counsel also requested reimbursement of $1.7 million in expenses, which did not represent the sum total of class counsel's out-of-pocket expenditures, because the settlement agreement itself capped the allowable expense request.   *See* Pls.' Mot. for Award of Attorney's Fees at 14, *In re Online DVD Rental Antitrust Litig.*, No. 09-md-2029 (N.D. Cal. Jan. 30, 2012), ECF No. 564.   The court granted this request in full. *Online DVD Rental*, slip op. ¶ 1.

[14] The Ninth Circuit later affirmed Judge Hamilton's decision to grant summary judgment in favor of the non-settling defendant. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 914 (9th Cir. 2015).

cited here—all antitrust matters alleging "a conspiracy . . . [and] the same action against everybody," Tr. 10/23/17 Hrg. 66:22-24—recognize that in difficult cases where one or more defendants might ultimately escape liability, class counsel's efforts in nonetheless obtaining a "settlement [that] is very clearly favorable to the class" "warrants" a substantial fee award.

This approach—valuing risk as an enhancing factor when awarding fees—is the third *Goldberger* factor, and courts ordinarily consider "risk of success as perhaps the foremost factor to be considered in determining a reasonable award of attorneys' fees." *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 147 (S.D.N.Y. 2010).  For example, in *Seijas v. Republic of Argentina*, the court held that a fee award equal to 30% of the settlement fund was justified because the defendant's "status as a foreign sovereign with limited attachable assets" made recovery outside of settlement "nearly impossible."  2017 WL 1511352, at *8, *13 (S.D.N.Y. Apr. 27, 2017).  In this case, as in this Court's previously described hypothetical scenario, *see* Tr. 10/23/17 Hrg. 65:15-23, intervening events such as the "enactment of laws designed to prevent payment to [class members]" helped create a "substantial improbability" that class counsel would have *ever* been successful in litigation. *Seijas*, 2017 WL 1511352, at *3, *8, *10.  The court, however, viewed these risks of failure as "weigh[ing] heavily in *favor* of an attorneys' fee award of 30%." *Id.* at *13 (emphasis added).

Similarly, Judge Moreno recently granted a 30% fee award from the $554 million fund established by an initial round of partial settlements with four car manufacturers in the *Takata Airbag* action, despite a significant intervening event—namely, airbag manufacturer Takata Corporation's bankruptcy filing—that iced the class's claims against the primary wrongdoer in the action. *See, e.g.*, *In re Takata Airbag Prods. Liab. Litig.*, No. 15-md-2599, slip op. (BMW)

¶¶ 19-24 (S.D. Fla. Nov. 1, 2017), ECF No. 2162.[15]  The court agreed with the risk analysis presented by class action scholar Professor Brian Fitzpatrick, *see Takata* Orders ¶ 22, which highlighted the near impossibility of any class recovery from Takata itself and the difficulty of "pin[ning] responsibility" on the car manufacturer defendants, who "hotly disputed" any knowledge of the defective product, Declaration of Brian T. Fitzpatrick ¶ 23, *In re Takata Airbag Prods. Liab. Litig.*, No. 15-md-2599 (S.D. Fla. Sept. 8, 2017), ECF No. 2033-3.  In *Takata Airbag*, as in *Seijas*, the impossibility of success against the primary defendant was not a reason to deny class counsel's request for fees; quite the opposite.

The more challenging the legal landscape and the great the risks inherent in the OTC Class's claims against the remaining non-settling defendants, is even a more compelling reason to recognize and fairly reward the success of Class Counsel thus far.  *See* Tr. 10/23/17 Hrg. 60:1-2 ("There also must be a relationship between fees and success."); *see also* Initial Fee Br. at 16-18 (discussing the *Goldberger* factor concerning the risk of establishing liability and damages). Here, as in *Laydon*, *Containerboard*, *Online DVD Rental*, *Seijas*, and *Takata Airbag*, the risks of continued litigation only provides further *support* for Class Counsel's amended request for an interim 20% fee award drawn from an existing, highly favorable settlement that will provide the OTC Class with a significant and certain benefits.

### 3.    The Amended Fee Request Is Reasonably Related to the Barclays Settlement

Class Counsel's request for an interim award of 20% of the $120 million Barclays settlement is amply supported by the Second Circuit's preference for the percentage-of-recovery

---

[15] *See also In re Takata Airbag Prods. Liab. Litig.*, No. 15-md-2599, slip  op. (Mazda) ¶¶ 19-24 (S.D. Fla. Nov. 1, 2017), ECF No. 2164; *In re Takata Airbag Prods. Liab. Litig.*, No. 15-md-2599, slip op. (Suburu) ¶¶ 19-24 (S.D. Fla. Nov. 1, 2017), ECF No. 2166; *In re Takata Airbag Prods. Liab. Litig.*, No. 15-md-2599, slip op. (Toyota) ¶¶ 19-24 (S.D. Fla. Nov. 1, 2017), ECF No. 2168.  These four orders for the four settlements are collectively referred to as the "*Takata* Orders."

method for calculating fee awards, and sits on the low end of the range of fees typically awarded in complex, multi-defendant antitrust class actions such as this. *See supra* Table 1. A lodestar multiplier crosscheck confirms that this fee request is reasonable: a $24 million award would actually exceed Class Counsel's current lodestar of $26 million and would result in a negative multiplier of 0.92.[16] *See Seijas*, 2017 WL 1511352, at *10 ("Where a percentage fee is on the higher end of the range of reasonable fees but still represents a negative multiplier to the total lodestar, there is 'no real danger of overcompensation.'"). Here, this negative multiplier corresponds to a percentage fee that is very much on the *lower* end of the range of fees awarded by many courts: there is certainly no windfall to Class Counsel. *See In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014) ("[T]he lodestar cross-check works best as a sanity check to ensure that an otherwise reasonable percentage fee would not lead to a windfall."); *In re NTL, Inc. Sec. Litig.*, 2007 WL 623808, at *8 (S.D.N.Y. Mar. 1, 2007) ("In the 'usual' case, the multiplier applied to the lodestar typically is positive, to account for the contingent nature of the engagement and the risk of such a case.").

To address the Court's concern that "the overwhelming percentage of the fees and expenses that have been incurred have absolutely nothing to do with [OTC Plaintiffs'] settlement with Barclays," Tr. 10/23/17 Hrg. 59:21-23, Class Counsel have calculated the total amount of the hourly rate lodestar of Class Counsel's time through November 11, 2015, the date of execution of the Barclays Settlement. Furthermore, Class Counsel have removed from this stub lodestar any time spent in tasks that were clearly irrelevant to the OTC Plaintiffs' litigation against Barclays. *See* Suppl. Joint Decl. ¶¶ 37-39. The fee requested corresponds to a multiplier of 2.88 of the reduced lodestar of $8.3 million, and further confirms the reasonableness of the

---

[16] This lodestar reflects Class Counsel's time only through June 30, 3017, with some minor exclusions. *See* Dkt. 2280 ¶¶ 8-13.

request.  *See In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 237 (S.D.N.Y. 2005) (citing a "survey of cases with megafunds over $100 million show[ing] that lodestar multipliers of 1.35 to 2.99 are common"); *see also* Initial Fee Br. at 10-11 (citing cases).[17]  Indeed, courts in this District regularly award fees resulting in much higher lodestar/multipliers.  *See In re Credit Default Swaps Antitrust Litig.*, 2016 WL 2731524, at *16 (S.D.N.Y. April 26, 2016) (approving fee award in complex antitrust action where lodestar was "just over 6"); *Beckman v. KeyBank N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013) (approving an award of 33% of the common fund, representing a multiplier of 6.3, and explaining that "[c]ourts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers.").  Additionally, in accordance with the Court's request for additional detail and backup, Tr. 10/23/17 Hrg. 60:10, Class Counsel have prepared a more detailed description of the work performed in this case up to the time of the Barclays Settlement, *see* Suppl. Joint Decl. ¶¶ 5-29.

It should be noted that the work performed by Class Counsel through November 11, 2015, contributed to Class Counsel's understanding of the strengths and weaknesses of the claims against Barclays and informed Class Counsel's ability to negotiate a favorable settlement.  As the Court recognized at the fairness hearing, OTC Plaintiffs have "alleged a conspiracy" and "the same action against everybody."  Tr. 10/23/17 Hrg. 66:23-24.  Because each co-conspirator is subject to joint and several liability for damages suffered as a result of the alleged violation of

---

[17] This reduced lodestar/multiplier of 2.88 also reflects Class Counsel's efficiency.  In the more than five years leading up to the Barclays Settlement, Class Counsel expended approximately 12,000 hours on this case.  In comparison, class counsel in *Laydon* worked approximately 69,000 hours over 5 years while obtaining less than half the amount that Class Counsel have recovered here for the OTC Class.  *See* Mem. of Law in Support of Class Counsel's Mot. for Award of Attorneys' Fees at 22, *Laydon v. Mizuho Bank, Ltd.*, No. 12-cv-3419 (S.D.N.Y. Sept. 27, 2016), ECF No. 686.  Class Counsel should not be penalized for its efficient use of time.  *See In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014) ("On the other hand, the lodestar method has fallen out of favor particularly because it encourages bill-padding and discourages early settlements.").

the antitrust laws, Class Counsel's efforts to strengthen the OTC Plaintiffs' litigation position as to all defendants increased the settlement pressure on each defendant, including Barclays.

Furthermore, by cutting off all time after November 11, 2015 from the lodestar multiplier calculation, the lodestar submitted by Class Counsel underestimates the work done related to the Barclays Settlement. For instance, work done to develop a reliable model of LIBOR suppression which was used in designing the plan of distribution for the Barclays settlement fund, and which will be taken into account to claimants according to the magnitude of harm suffered for each suppressed LIBOR-based payment received during the class period, provides a benefit to the class. Much of that work was done in 2016 and early 2017. And, by excluding all time after November 11, 2015, the lodestar does not include any of the work done in connection with seeking preliminary and final approval of the Barclays settlement. The partial lodestar/multiplier of 2.88 would thus be even lower if all Barclays settlement-related time were included in the analysis.

Moreover, all of the work performed by Class Counsel until the present was undertaken in order to benefit the OTC Class. In *Auto Parts II*, Judge Battani recognized this reality of antitrust class actions in rejecting an objector's argument that the lodestar used for cross-checking a second interim fee award should exclude time reported when the court granted the first interim fee award:

> [I]it would be impractical to compartmentalize and isolate the work that [class counsel] did in any particular case at any particular time because all of their work assisted in achieving all of the settlements and has provided and will continue to provide a significant benefit to all of the . . . classes.

*Auto Parts II*, slip op. at 6 n.2. Here, it would certainly not be unreasonable for the Court to consider Class Counsel's total lodestar when performing the lodestar multiplier crosscheck, as even time expended after November 11, 2015, after the Barclays Settlement was nonetheless

17

incurred in rendering services on behalf of the same OTC Class and "has provided and will continue to provide a significant benefit." *Id.* It is not uncommon for courts to consider, when performing the lodestar multiplier crosscheck, lodestars to consider all of class counsel's time from the beginning of an action to the date of the filing of the fee request. In *Laydon*, for instance, the $36.5 million lodestar reported by class counsel in support of its successful request for a fee award from the initial round of settlements included the entire 69,022 hours spent on the case through the month preceding the filing of the request. *See* Mem. of Law in Support of Class Counsel's Mot. for Award of Attorneys' Fees at 22, *Laydon v. Mizuho Bank, Ltd.*, No. 12-cv-3419 (S.D.N.Y. Sept. 27, 2016), ECF No. 686 [hereinafter *Laydon* Br.]. And in *Containerboard*, the court considered all of class counsel's time from the start of the case, including time spent preparing for a trial against the non-settling defendants that never happened because their summary judgment motion was granted. *See Kleen*, 2017 WL 5247928, at *4 (employing a 1.1 lodestar/multiplier based on total incurred with respect to all of the defendants). Whether the Court considers Class Counsel's total or partial lodestar, however, the lodestar crosscheck confirms that the amended fee request of $24 million, or 20% of the settlement fund, is reasonable.

**B.**     **Class Counsel's Amended Expense Reimbursement Request Is Fair and Reasonable**

At the fairness hearing, the Court also raised questions about the reimbursement of litigation expenses incurred after the Barclays Settlement. *See* Tr. 10/23/17 Hrg. 59:21-25, 60:10-13. In multi-defendant antitrust cases, when initial settlements are reached with some, but not all defendants, courts regularly reimburse from the initial settlement funds all of the litigation expenses incurred through the motion for final approval of those initial settlements. For instance, in the Yen LIBOR and Euroyen TIBOR cases, Judge Daniels granted class counsel's

request for $1 million from the initial $58 million settlement fund to reimburse expenses incurred through August 31, 2016—although the initial settlements were signed in December 2014, August 2015, and May 2016. *See Laydon v. Mizuho Bank, Ltd.*, No. 12-cv-3419, slip op. ¶ 3 (S.D.N.Y. Nov. 10, 2016), ECF No. 724 (granting expense reimbursement request); *Laydon* Br., *supra*, at 23 (describing expenses incurred); *Laydon v. Mizuho Bank, Ltd.*, No. 12-cv-3419, slip op. at 1 (S.D.N.Y. June 22, 2016), ECF No. 659 (describing dates of initial settlements).

Similar awards were made in many of the other multi-defendant antitrust class actions discussed already in this supplemental brief.  *See, e.g.*, *Auto Parts I*, slip op. at 2 (granting request for reimbursement of expenses); End-Payor Pls.' Mot. for an Award of Attorneys' Fees at 22-24, *In re Auto. Parts Antitrust Litig.*, No. 12-cv-0103 (E.D. Mich. Mar. 10, 2016), ECF No. 433 [hereinafter *Auto Parts I* Br.] (describing request for reimbursement of $7.2 million in expenses incurred through February 29, 2016, the last full month before the fee and expense petition was filed); *Muni Derivatives I*, slip op. at 1 (granting request for reimbursement of $1.48 million in expenses); Pls.' Mem. of Law in Support of Mot. for an Award of Attorneys' Fees, *In re Municipal Derivatives Antitrust Litig.*, No. 08-cv-2516 (S.D.N.Y. Sept. 27, 2011), ECF No. 1592 (requesting "reimbursement of *all* litigation costs and expenses incurred during this litigation" (excluding only mediation costs related to a non-settling defendant) from $6.5 million initial settlement fund, though settlement was reached a year earlier).  This is routinely done because in antitrust cases, where there is joint and several liability, the *same* class that benefits from the initial settlement also benefits from the continued prosecution of the case on their behalf after the date of that settlement.

Taking this logic one step further, courts routinely grant requests by class counsel to set aside portions of an early settlement in a multi-defendant antitrust class action for *future*

litigation expenses, recognizing that a "war chest" for future expenses will benefit the same class. *See, e.g.*, *Laydon*, slip op. ¶ 3 (setting aside $500,000 for future litigation expenses in addition to $1 million reimbursement awarded outright); *Auto Parts I*, slip op. at 2 (granting request for establishment of a $11.25 million fund to pay for future litigation expenses); *Auto Parts I* Br., *supra*, at 24; *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-1827, slip op. ¶¶ 3, 16 (N.D. Cal. Feb. 18, 2011), ECF No. 2474 (setting aside $3 million from $17 million settlement fund for future litigation expenses).

Notwithstanding this authority, in deference to the Court's concerns, OTC Plaintiffs hereby modify their request to seek reimbursement of only those expenses incurred up through November 11, 2015, the date of the Barclays Settlement.  These expenses total $656,337.64.  *See* Suppl. Joint Decl. ¶ 40.   These expenses—which primarily relate to the charges of expert witnesses, filing fees, travel, and legal research—were incurred on behalf of the OTC Class, were necessary for the prosecution of the case, and should be reimbursed.  *See In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) (approving request for reimbursement of $2.9 million in expenses incurred—"which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review"—because such expenses "are the type for which 'the paying, arms' length market' reimburses attorneys"); *see also Anwar v. Fairfield Greenwich Ltd.*, 2012 WL 1981505, at *3 (S.D.N.Y. June 1, 2012) ("Courts routinely note that counsel is entitled to reimbursement from the common fund for reasonable litigation expenses." (citing *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir. 1987))); *In re Arakis Energy Corp. Sec. Litig.*, 2001 WL 1590512, at *17 (E.D.N.Y. Oct. 31, 2001) ("Courts in the Second Circuit normally grant expense requests in common fund cases as a matter of course.").   OTC Plaintiffs also

submit additional details about the expert work performed to date in this action, *see* Tr. 10/23/17 Hrg. 60:10-13, although they do not request reimbursement for the charges for the bulk of this work at this time.

The $656,337.64 requested by OTC Plaintiffs at this juncture for reimbursement of expenses represents merely 0.55% of the $120 million settlement fund and, if granted by the Court, compensates Class Counsel for only 4.7% of the expenses it has advanced on behalf of the OTC Class over the last six plus years.[18]   In comparison, the initial expense awards described above in *Laydon*, *Auto Parts I*, and *Muni Derivatives I* accounted for 1.7%, 3.2%, and 23% of those initial settlement funds, respectively (and in the case of *Laydon* and *Auto Parts I*, the initial expense awards plus advancements of future litigation expenses totaled 2.6% and 8.2% of the initial settlement funds, respectively).   OTC Plaintiffs' amended expense request is reasonable under "the common practice in this circuit of granting expense requests," and should be approved.   *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 525 (E.D.N.Y. 2003), *aff'd sub nom. Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) (granting request for reimbursement of $18.7 million in expenses, of which the "lion's share . . . reflects the costs of experts and consultants, litigation and trial support services, document imaging and copying, deposition costs, online legal research, and travel expenses").[19]

## IV.   CONCLUSION

For the reasons set forth herein, Class Counsel respectfully requests that this Court award interim attorneys' fees in the amount of $24 million, representing 20% of the $120 million fund

---

[18] This percentage corresponds to Class Counsel's expenses incurred as of June 30, 2017, *see* Dkt. 2280 ¶ 14, and is continually reduced  in light of Class Counsel's continued advancement of expenses on behalf of the OTC Class.

[19] With respect to the Court's inquiry at the hearing regarding consolidating distributions from the Barclays Settlement with the distributions from the settlement with Citibank, *see* Tr. 10/23/17 Hrg. 60:25-61:3, 61:15-62:3, Class Counsel has investigated the matter and agrees that, should both settlements be approved by the Court, a single distribution from both settlements would be an efficient approach.

21

obtained by Class Counsel as result of the Barclays Settlement, expenses in the amount of $656,337.64, and service awards for the named plaintiffs in the amounts previously requested.

Dated: November 15, 2017

By:     /s/ Michael D. Hausfeld                    /s/ William Christopher Carmody

Michael D. Hausfeld                                William Christopher Carmody (WC8478)
Hilary Scherrer                                    Arun Subramanian (AS2096)
Nathaniel C. Giddings                              Seth Ard (SA1817)
HAUSFELD LLP                                       Geng Chen (GC2733)
1700 St. NW, Suite 650                            SUSMAN GODFREY L.L.P.
Washington, D.C. 20006                            1301 Avenue of the Americas, 32nd Fl.
Telephone: (202) 540-7200                         New York, New York 10019
Facsimile: (202) 540-7201                         Telephone: 212-336-3330
mhausfeld@hausfeldllp.com                         Facsimile: 212-336-8340
hscherrer@hausfeldllp.com                         bcarmody@susmangodfrey.com
ngiddings@hausfeldllp.com                         asubramanian@susmangodfrey.com
                                                   sard@susmangodfrey.com
Gary I. Smith                                      gchen@susmangodfrey.com
HAUSFELD LLP
325 Chestnut Street                               Marc M. Seltzer
Suite 900                                         Glenn C.  Bridgman
Philadelphia, PA 19106                            SUSMAN GODFREY L.L.P.
267-702-2318 Direct                               1901 Avenue of the Stars
215-985-3270 Main                                 Los Angeles, California  90067-6029
215-985-3271  Fax                                 Telephone: (310) 789-3100
gsmith@hausfeld.com                               mseltzer@susmangodfrey.com
                                                   gbridgman@susmangodfrey.com
*Interim Co-Lead Counsel for the Proposed*
*OTC Plaintiff Class*                             Matthew Berry
                                                   Drew D. Hansen
                                                   SUSMAN GODFREY LLP
                                                   1201 Third Avenue, Suite 3800
                                                   Seattle, WA 98101
                                                   Telephone: (206) 516-3880
                                                   Facsimile: (206) 516-3883
                                                   mberry@susmangodfrey.com
                                                   dhansen@susmangodfrey.com

                                                   Barry C. Barnett (BB1984)
                                                   Karen Oshman
                                                   Michael Kelso
                                                   SUSMAN GODFREY L.L.P.
                                                   1000 Louisiana Street

Suite 5100
Houston, TX 77002-5096
Telephone: (713) 651-9366
bbamett@susmangodfrey.com
koshman@susmangodfrey.com
mkelso@susmangodfrey.com

*Interim Co-Lead Counsel for the Proposed
OTC Plaintiff Class*

5448855v1/012751

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2017, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List. I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

 */s/ Geng Chen*
Geng Chen