SUSMAN GODFREY L.L.P.
A REGISTERED LIMITED LIABILITY PARTNERSHIP
32ND FLOOR
1301 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6022
(212) 336-8330
FAX (212) 336-8340
WWW.SUSMANGODFREY.COM
_____

SUITE 5100                              SUITE 950                                   SUITE 3800
1000 LOUISIANA STREET       1901 AVENUE OF THE STARS            1201 THIRD AVENUE
HOUSTON, TEXAS 77002-5096   LOS ANGELES, CALIFORNIA 90067-6029  SEATTLE, WASHINGTON 98101-3000
(713) 651-9366                   (310) 789-3100                         (206) 516-3880
_____                         _____                               _____

WILLIAM CHRISTOPHER CARMODY                                       E-MAIL BCarmody@susmangodfrey.com
DIRECT DIAL (212) 336-8334

February 23, 2018

VIA ECF AND HAND DELIVERY

The Honorable Naomi Reice Buchwald
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

Re:   *In re LIBOR-based Financial Instruments Antitrust Litigation*, Case No. 11-md-2262

Dear Judge Buchwald:

We write in response to the Defendants' letters to the Court last week. (Dkt. 2432, 2436). In the February 16 letter, the Defendants cite two new cases that both **support** certification here, because the fact-specific issues that drove the rulings in those cases are not present here, and both cases cast no doubt on the certification of breach of contract class cases such as this one. In the February 13 letter, the Defendants continue to ignore the key predominant issue that is common to every contract: the promise to pay LIBOR.

**First**, both cases cited in the February 16 letter involve RMBS claims where the plaintiffs obtained the certificates they were suing under from other holders, which created complicated individualized tracing issues to establish whether valid assignments had been made. This resulted in most plaintiffs having no out-of-pocket losses as required by the Trust Indenture Act and meant that a substantial number of claims were time barred. *See Blackrock Allocation Target Shares v. U.S. Bank N.A.*, No. 14-cv-9401 (S.D.N.Y. Jan 31, 2018), Def. Ex. A at 28; *Royal Park Invest, SA/NV v. HSBC Bank USA, N.A.*, No. 14-cv-8175 (S.D.N.Y. Feb. 1, 2018), Def. Ex. B at 6. In the *Blackrock Allocation* case, the plaintiffs conceded that they did not suffer out of pocket losses themselves from 21 of the 25 trusts at issue because they had purchased the certificates at a steep discount after the bottom dropped out of the housing market, which precluded standing under the

February 23, 2018
Page 2

Trust Indenture Act. Ex. A at 42-43. In the *Royal Park* decision, the court held that "the fact that a substantial number of class members' claims are time barred counsels against finding that common issues predominate." Ex. B at 12. The Court also noted that because there were only approximately 200 class members, there was no advantage to proceeding as a class action as opposed to using bellwether trials. *Id.* at 8-9. None of this applies to the OTC claims: the Defendants have never argued that assignment issues preclude standing or that a substantial number of putative OTC class members' claims are time-barred, and OTC Plaintiffs have never conceded that a large portion of their claims lack merit as in the cases cited by Defendants.

**Second**, the absence of these individualized issues confirms that certification is appropriate here. Neither case indicates that the mere fact that the claims were for breach of contract suggested the class should not be certified. Just the opposite. Both courts cited to authority that supports class certification of OTC Plaintiffs' breach of contract claims here, including citations to *Foodservice* and *NECA-IBEW*, which the Defendants continue to ignore.

**Third**, the Defendants' February 16 letter misstates the law and the facts. OTC Plaintiffs did not argue that all OTC contracts are "needed" for class certification, as Defendants wrongly contend. To the contrary, the Defendants must be held to their refusal to produce—as "not relevant"—the very documents they now attempt to fault OTC Plaintiffs for not having. ECF 2430-2 (Resp. to RFP No. 66).[1]

By definition of the OTC Class, *every* OTC contract contains a contractual right to receive LIBOR from the banks, which gives rise to the banks' implied duty not to manipulate LIBOR. *See LIBOR II*, 962 F. Supp. 2d 606, 633 (S.D.N.Y. 2013) ("[A] an implied duty not to manipulate LIBOR is 'in connection with' plaintiffs' explicit contractual right to receive a LIBOR-based rate. . . . Thus, plaintiffs plausibly allege that the duty of good faith and fair dealing implicit in their contracts with defendants included a promise by defendants not to manipulate LIBOR to their benefit and plaintiffs' detriment."). That predominating issue is *identical* in all contracts for the members of the putative OTC Class.

---

[1] The Defendants argue OTC Plaintiffs' request was "overbroad" because it called for "master agreements with all counterparties for all . . . borrowing and lending transactions." But the request also called for "master agreements with all counterparties for all **LIBOR-Based** Instruments." ECF 2430-2 (Resp. to RFP No. 66). If the Defendants believed part of OTC Plaintiffs' request was "overbroad," the Federal Rules are clear on Defendants' obligations: "An objection to part of a request must specify the part ***and permit inspection of the rest***." Fed. R. Civ. P. 26(b)(2)(C). The Defendants failed to do that, instead objecting to the whole as "not relevant" and refusing to produce any of the documents requested.

February 23, 2018
Page 3

Nor do the supposed variations in state law the Defendants allude to in their February 16 letter defeat predominance: every OTC contract in the record selects New York substantive law, the Defendants concede that the "default" ISDA contract selects New York or English substantive law, and the Defendants have not pointed to a single variation in the state law that governs any putative OTC class member's claim for unjust enrichment or breach of implied covenant that matters or precludes predominance. *See In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 127 (2d Cir. 2013) ("[T]he crucial inquiry is not whether the laws of multiple jurisdictions are implicated, but whether those laws differ in a material manner that precludes the predominance of common issues.").

The Defendants also try to distinguish *IRB-Brasil* on the ground that it applies only to contracts governed by New York General Obligations law but neglect to mention that the *Ministers* decision cited by OTC Plaintiffs rejects that exact distinction. *See Ministers & Missionaries Ben. Bd. v. Snow*, 26 N.Y.3d 466, 474, 45 N.E.3d 917 (2015) ("New York courts should not engage in any conflicts analysis where the parties include a choice-of-law provision in their contract, even if the contract is one that does not fall within General Obligations Law § 5-1401.").

We thank the Court for its continued consideration of and attention to this matter.

Respectfully submitted,


*/s/ William Christopher Carmody*
William Christopher Carmody