**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION | MDL No. 2262 (NRB) |
| THIS DOCUMENT RELATES TO: | |
| MAYOR AND CITY COUNCIL OF BALTIMORE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CREDIT SUISSE AG, et al., <br><br> Defendants. | No. 11-cv-5450 (NRB) |

**OTC PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION
FOR AN ORDER APPROVING JOINT NOTICE PROGRAM FOR THE LITIGATION
CLASS, SETTLEMENT WITH DEUTSCHE BANK AKTIENGESELLSCHAFT, AND
SETTLEMENT WITH HSBC BANK PLC AND PRELIMINARILY APPROVING PLAN
OF DISTRIBUTION IN CONNECTION WITH THE CLASS SETTLEMENTS WITH
<u>DEUTSCHE BANK AKTIENGESELLSCHAFT AND HSBC BANK PLC</u>**

## TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................... 1

II.   THE PROPOSED JOINT NOTICE PROGRAM WARRANTS APPROVAL ..................... 4

   A.    OTC Plaintiffs' Proposed Joint Notice Program—Which Provides Direct Notice to All
Reasonably Ascertainable Class Members and Publication Notice to the Remainder—Is
the Best Practicable Under the Circumstances .................................................................. 4

   B.    The Contents of the Joint Long Form Notice, Publication Notice, and Proof of Claim
Comply with Rule 23(c)(2)(B) and Comport with Due Process....................................... 8

III.  THE PLAN OF DISTRIBUTION SHOULD BE PRELIMINARILY APPROVED....... 12

IV.   CONCLUSION.......................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*E.g., Precision Assocs., Inc. v. Panalpina World Transport (Holding) Ltd.*,
  2015 WL 6964973 (E.D.N.Y. Nov. 10, 2015) ........................................................ 14

*Gortat v. Capala Bros.*,
  No. 07-3628, 2010 WL 1423018 (E.D.N.Y. Apr. 9, 2010) ............................... 1, 5, 6

*Hart v. RCI Hosp. Holdings, Inc.*,
  No. 09cv3043 (PAE), 2015 WL 5577713 (S.D.N.Y. Sept. 22, 2015) .................... 12

*In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.*,
  271 F. App'x 41 (2d Cir. 2008) ............................................................................. 5

*In re CertainTeed Corp. Roofing Shingle Prods. Liability Litig.*,
  269 F.R.D. 468 (E.D. Pa. 2010) ............................................................................ 12

*In re Credit Default Swaps Antitrust Litig.*,
  No. 13MD2476 (DLC), 2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016) ................... 13

*In re Del-Val Fin. Corp. Sec. Litig.*,
  162 F.R.D. 271 (S.D.N.Y. 1995) ........................................................................... 10

*In re Elec. Books Antitrust Litig.*,
  No. 11md2293 (DLC), 2014 WL 1282293 (S.D.N.Y. Mar. 28, 2014) ................... 13

*In re Enron*,
  MDL No. 1446, 2006 WL 1006611 (S.D. Tex. Apr. 12, 2006) ........................... 10

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
  No. 05 CIV 10240 CM, 2007 WL 2230177 (S.D.N.Y. 2007) .............................. 14

*In re Holocaust Victim Assets Litig.*,
  424 F.3d 132 (2d Cir. 2005) .................................................................................. 12

*In re MetLife Demutualization Litig.*,
  689 F. Supp. 2d 297 (E.D.N.Y. 2010) .................................................................. 5, 6

*In re PaineWebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y.) .................................................................................... 13

*In re Payment Interchange Fee & Merch. Discount Antitrust Litig.*,
  No. 05-MD-1720, 2008 WL 115104 (E.D.N.Y. Jan. 8, 2008) ............................ 9, 10

*In re Platinum & Palladium Commodities Litig.*,
  No. 10CV3617, 2014 WL 3500655 (S.D.N.Y. July 15, 2014) ............................... 8

*In re Vitamin C Antitrust Litig., No. 06-MD-1738 BMC JO*,
  2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) ...................................................... 8, 9

*In re WorldCom, Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005) ................................................................... 12

*J. Truett Payne Co., Inc. v. Chrysler Motors Corp.*,
  451 U.S. 557 (1981) .............................................................................................. 13

*Jermyn v. Best Buy Stores, L.P.*,
  No. 08 CIV. 00214 CM, 2010 WL 5187746 (S.D.N.Y. Dec. 6, 2010) ................. 5, 8

*Long v. HSBC USA Inc.*,
  No. 14 CIV. 6233 HBP, 2015 WL 5444651 (S.D.N.Y. Sept. 11, 2015) ................. 5

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) ..................................................................................... 9

*Weigner v. The City of New York*,
  852 F.2d 646 (2d Cir. 1988) ................................................................ 5
*Weinberger v. Kendrick*,
  698 F.2d 61 (2d Cir. 1982) ................................................................. 9
*Yang v. Focus Media Holding Ltd.*,
  No. 11 CIV. 9051 CM GWG, 2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) ......................... 14

**Rules**

Federal Rule of Civil Procedure 23 ................................................... passim

**Other Authorities**

Manual for Complex Litigation § 21.31 (4th ed. 2004) ............................................ 2, 6

## I.    INTRODUCTION

Plaintiffs Mayor and City Council of Baltimore, City of New Britain, Vistra Energy Corporation, Yale University, Jennie Stuart Medical Center, Inc., and Bucks County Water & Sewer Authority (collectively, the "OTC Plaintiffs"), respectfully move[1] this Court for an Order approving dissemination of a joint notice to settlement class and litigation class members and preliminarily approving a plan of distribution ("Plan of Distribution") of settlement funds in connection with the two class settlements reached between the OTC Plaintiffs and Deutsche Bank Aktiengesellschaft ("Deutsche Bank") and HSBC Bank plc ("HSBC") (the "Deutsche Bank and HSBC Settlements").[2]

As with the prior settlements, OTC Plaintiffs propose a thorough and comprehensive notice campaign—designed by esteemed notice experts Dr. Shannon Wheatman and Kathy Kinsella of Kinsella Media, LLC. OTC Plaintiffs also propose to combine notice of the Deutsche Bank and HSBC Settlements with the notice of the certified antitrust class against Bank of America Corporation and Bank of America, N.A. ("Bank of America") and JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. ("JPMorgan") (the "Litigation Class"), to avoid confusion, promote efficiency, and streamline costs (the "Joint Notice Program").  *E.g.*, *Gortat v. Capala Bros.*, No. 07-3628, 2010 WL 1423018, at *13 (E.D.N.Y. Apr. 9, 2010) (finding "confusion is likely if two separate notices are [simultaneously] sent concerning claims based on the same underlying facts"), *aff'd,* 568 F. App'x 78 (2d Cir. 2014); *see also e.g.*, *In re Polyurethane Foam Antitrust Litig.*, No. 10-md-2196 (N.D. Ohio Nov. 6, 2014), ECF No. 1391 (order approving notice plan that combined notice of class certification and settlement); *In re Vitamin C Antitrust*

---

[1] Bucks County Water & Sewer Authority only moves as to the settlement classes and not the litigation class.
[2] See Dkt. 2450-1 ("Deutsche Bank Settlement Agreement"); Dkt. 2474-1 ("HSBC Settlement Agreement").

*Litig.*, No. 06-md-1738 (E.D.N.Y. June 15, 2012), ECF No. 488 (order approving notice plan that combined notice of class certification and multiple settlements); *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-md-1775 (E.D.N.Y. Nov. 6, 2015), ECF No. 2370 (same); Manual for Complex Litigation § 21.31 (4th ed. 2004) ("A judge who simultaneously certifies a class action and preliminarily approves a class-wide settlement typically combines notice of certification with notice of settlement.").

Under the Joint Notice Program, direct notice will be sent to:

- A list of counterparties provided by Deutsche Bank and HSBC;

- A list of counterparties provided by Bank of America and JPMorgan;

- Counterparties of HSBC plc and Barclays Bank plc, which will provide direct notice to their own counterparties;

- Counterparties of Credit Suisse AG, which has agreed to provide direct notice to its U.S. counterparties; and

- Mailing lists containing approximately 24,000 institutional investors (including insurance companies, pension funds, hedge funds, and banks) and  67,000 state, city, and government offices that are likely to be potential class members.

In addition, OTC Plaintiffs will implement a paid media program designed to reach additional class members who do not receive direct notice, which has been carefully tailored to reach potential class members through media outlets including, *inter alia*, *Barron's*, *Financial Times*, *The Wall Street Journal*, *Bloomberg Businessweek*, *The Economist*, and *Investment Advisor*. All told, fourteen newspapers, trade magazines, and business magazines will be used, with a combined estimated circulation of over 3 million.

In addition, the proposed Joint Notice Program will produce Internet advertisements that will provide information on the Deutsche Bank and HSBC Settlements, with a purchase of approximately 30,000,000 gross impressions across various websites. A global press release

distributed through Business Newswire will be translated into 9 languages, reaching audiences across the world. Finally, the Claims Administrator will establish a phone line and a website at www.USDollarLIBORSettlement.com to enable class members to get more complete information.

The proposed joint notices themselves explain, in clear and concise language, the key differences between the Litigation Class and the settlement classes preliminarily certified for purposes of the Deutsche Bank and HSBC Settlements (the "Settlement Classes"), and the legal options and monetary benefits available to members of each respective class.

The proposed Plan of Distribution for the Settlement Classes is materially identical to those preliminarily approved for the Barclays and Citi Settlements. It is simple and fair to all members of the Settlement Class members and was devised with the assistance of Kenneth Feinberg, the Settlement Administrator. OTC Plaintiffs do not seek final approval now of the proposed Plan of Distribution. As with the prior settlements, Plaintiffs only seek preliminary approval of that plan; the plan need only be sufficiently reasonable to be sent to members of the Settlement Classes, for their review and comment, prior to final approval. It is clearly reasonable, as this Court previously found. *See* Dkts. 1948, 2290.

OTC Plaintiffs propose a *pro rata* distribution to members of the Settlement Classes based on a simple calculation: the sum of the suppressed daily underpayments each claimant received on his or her LIBOR-based instruments. Each suppressed daily underpayment is calculated as: the dollar amount of the LIBOR-based payment that was due to the Claimant that day (using historical reported LIBOR rates and payment frequency) multiplied by the magnitude of suppression applicable for that day and then divided by the historical reported LIBOR rate for that day. The allocation is based on a but-for model created by Dr. B. Douglas Bernheim—the

3

Edward Ames Edmonds Professor of Economics and Chair of the Department of Economics at Stanford University—who created a model that estimates what U.S. dollar LIBOR ("LIBOR") would have been absent its suppression by the panel banks during the settlement class period ("Settlement Class Period").

In order to distribute funds fairly to class members claiming from the Deutsche Bank and HSBC Settlements, OTC Plaintiffs will use that model to calculate each claimant's *pro rata* share of the settlement funds, adjusted by expert consultants at Bates White to include tenors and time-periods not encompassed in Dr. Bernheim's model for the Litigation Class. Charts detailing the weekly average of suppression during the Settlement Class Period for each tenor—which will be used for the calculations—will be posted on the website created for these settlements. The Claims Administrator will then distribute funds to members of the Settlement Classes based on those calculations.

The proposed Joint Notice Program fully comports with due process and Federal Rule of Civil Procedure 23 and is the best notice practicable under the circumstances. Similarly, the proposed Plan of Distribution has a reasonable and rational basis. As such, approval of the proposed Joint Notice Program and preliminary approval of the proposed Plan of Distribution is warranted.

## II.     THE PROPOSED JOINT NOTICE PROGRAM WARRANTS APPROVAL

### A.     OTC Plaintiffs' Proposed Joint Notice Program—Which Provides Direct Notice to All Reasonably Ascertainable Class Members and Publication Notice to the Remainder—Is the Best Practicable Under the Circumstances

"For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Long v. HSBC USA Inc.*, No. 14 CIV. 6233

HBP, 2015 WL 5444651, at *10 (S.D.N.Y. Sept. 11, 2015). However, neither individual nor actual notice to each class member is required; rather, "class counsel [need only] act[] reasonably in selecting means likely to inform the persons affected." *Jermyn v. Best Buy Stores, L.P.*, No. 08 CIV. 00214 CM, 2010 WL 5187746, at *3 (S.D.N.Y. Dec. 6, 2010) (citing *Weigner v. The City of New York*, 852 F.2d 646, 649 (2d Cir. 1988)); *In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.*, 271 F. App'x 41, 44 (2d Cir. 2008) ("It is clear that for due process to be satisfied, not every class member need receive actual notice[.]"). In evaluating the reasonableness of a proposed notice program, the "Court has virtually complete discretion." *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 345 (E.D.N.Y. 2010). Here, OTC Plaintiffs—on the advice, recommendation, and counsel of their notice experts, Dr. Shannon Wheatman and Kathy Kinsella—propose a thorough, two-pronged Joint Notice Program that is amply capable of reaching the beneficiaries of the Class Settlements and apprising the members of the Litigation Class of their rights and options moving forward. *See* Wheatman Decl. ¶¶ 7-12.

As a threshold matter, combining notices of separate classes involving the same underlying operative facts, such as the Litigation Class and the Settlement Classes is an efficient, cost-saving method designed to avoid confusion. *E.g.*, *Gortat*, 2010 WL 1423018, at *13 (finding "confusion is likely if two separate notices are [simultaneously] sent concerning claims based on the same underlying facts"). Combining notice of class settlements with notice of the certification of a litigation class is thus common. *See e.g.*, *In re Polyurethane Foam Antitrust Litig.*, No. 10-md-2196 (N.D. Ohio Nov. 6, 2014), ECF No. 1391 (order approving notice plan that combined notice of class certification and settlement); *In re Vitamin C Antitrust Litig.*, No. 06-md-1738 (E.D.N.Y. June 15, 2012), ECF No. 488 (order approving notice plan that combined notice of class certification and multiple settlements); *In re Air Cargo Shipping Servs. Antitrust*

*Litig.*, No. 06-md-1775 (E.D.N.Y. Nov. 6, 2015), ECF No. 2370 (same); Manual for Complex Litigation § 21.31 (4th ed. 2004) ("A judge who simultaneously certifies a class action and preliminarily approves a class-wide settlement typically combines notice of certification with notice of settlement.").

Turning then to the scope of the Joint Notice Program, it is plainly robust. *First*, OTC Plaintiffs propose to provide direct notice to potential members of the Litigation Class and Settlement Classes whose names have been obtained from the business records of Citi, Barclays, Bank of America, JPMorgan, Royal Bank of Canada, Deutsche Bank, HSBC,[3] and UBS AG. Wheatman Decl. ¶ 14. Credit Suisse AG has agreed to provide notice directly to its U.S. counterparties. *Id.* ¶ 14(c). Barclays and Citi have agreed to provide notice directly to its foreign counterparties.

*Second*, OTC Plaintiffs propose to provide direct notice to mailing lists containing approximately 24,000 institutional investors (including insurance companies, pension funds, hedge funds, and banks) and 67,000 state, city, and county government offices that are likely to be potential class members. Wheatman Decl. ¶ 14(d)-(f).

*Third*, OTC Plaintiffs propose a rigorous publication notice program spanning four national newspapers, two business magazines, and eight trade magazines—with a combined estimated circulation of over 3 million, and multiple online media sources. Wheatman Decl. ¶¶ 18-27.

These publication outlets include, *inter alia*:

- *The Economist*, a business magazine written for top business decision-makers and opinion leaders who need a wide range of information and views on world events (circulation: 558,925);

---

[3] HSBC will also perform self-notice of certain counterparties that may be members of the Settlement Classes.

- *Bloomberg Businessweek*, a business magazine covering business issues around the world (circulation: 633,410);

- *Pensions & Investments*, a trade magazine targeted at the institutional investment community (circulation: 50,277);

- *Financial Times*, a newspaper considered to be one of the world's leading business publications, which provides essential news to the global business community (circulation: 183,904); and

- *The Wall Street Journal*, a newspaper with a rich heritage in business and financial news (circulation: 1,099,545).

*See* Wheatman Decl. ¶¶ 20-22 (list of proposed media outlets with descriptions of their subject matter, target audiences, and circulations). Further, Internet advertising will be used to provide potential members of the Litigation Class and Settlement Classes with additional notice opportunities. The Internet advertising will be allocated across approximately 30,000,000 gross impressions[4] across various targeted websites, such as business to business websites, LinkedIn, Traders Magazine Online News, and CFA Institute Financial Newsbrief. *See* Wheatman Decl. ¶¶ 23-27.

    *Fourth*, OTC Plaintiffs propose an earned media program that will include a global press release distributed through Business Wire to key financial and business media, with coverage of newspapers, television, radio, news agencies, analysts, and business publications/editors throughout the world, using a variety of platforms and aggregators including AP Mobile, Yahoo! Finance, and Viigo. *See* Wheatman Decl. ¶ 28.

    *Fifth*, OTC Plaintiffs propose to establish a toll-free phone number and a website at www.USdollarLiborSettlement.com to enable members of the Litigation Class and the Settlement Classes to ask clarifying questions and obtain more complete information and court

---

[4] Gross impressions are the total number of times a media outlet containing the notice is seen. This figure does not represent the total number of unique viewers of the notice, as some viewers/readers will see the notice in more than one media outlet.

filings concerning the ongoing litigation, the Deutsche Bank and HSBC Settlements, and instructions on how to opt out, object, and to file a claim. All notices will refer potential class members to that website. *See* Wheatman Decl. ¶ 29.

Courts routinely approve notice programs, like this one, that combine direct notice and publication notice. *See, e.g.*, *In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 BMC JO, 2012 WL 5289514, at *8 (E.D.N.Y. Oct. 23, 2012) ("The notice was also distributed widely, through the internet, print publications, and targeted mailings. The Court concludes that the distribution of the class notice was adequate."). It is well-settled that where providing direct notice to all class members would be unreasonably burdensome or impracticable, supplementation through publication notice satisfies Federal Rule of Civil Procedure 23 and due process. *Jermyn*, 2010 WL 5187746, at *3 ("If the names and addresses of class members cannot be determined by reasonable efforts, notice by publication is sufficient to satisfy the requirements of the due process clause and Rule 23."); Man. Complex Lit. § 30.211 at 223 (endorsing publication notice in lieu of direct notice, "[i]n all cases the Court should strike an appropriate balance between protecting class members and making Rule 23 workable"); *see also In re Platinum & Palladium Commodities Litig.*, No. 10CV3617, 2014 WL 3500655, at *14 (S.D.N.Y. July 15, 2014) ("Given the greater difficulties in contacting Physical Class members, the proposed publication notice is the best practicable notice plan under the circumstances."), *appeal dismissed* (2d Cir. Oct. 6, 2014). OTC Plaintiffs have obtained every potential class members' name and address that could be ascertained through reasonable efforts.

For these reasons, OTC Plaintiffs' proposed notice program is the best notice practicable under the circumstances and merits approval.

**B.     The Contents of the Joint Long Form Notice, Publication Notice, and Proof of Claim Comply with Rule 23(c)(2)(B) and Comport with Due Process**

The contents of a class action settlement notice must (1) "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings" and (2) be written as to "be understood by the average class member." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114-15 (2d Cir. 2005) (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982)). "There are no rigid rules to determine whether a settlement notice satisfies constitutional or Rule 23(e) requirements." *In re Vitamin C*, 2012 WL 5289514, at *8 (quotation omitted). Factors typically considered are:

- "whether there has been a succinct description of the substance of the action and the parties' positions";

- "whether the parties, class counsel, and class representatives have been identified";

- "whether the relief sought has been indicated";

- "whether the risks of being a class member, including the risk of being bound by the judgment have been explained";

- "whether the procedures and deadlines for opting out have been clearly explained"; and

- "whether class members have been informed of their right to appear in the action through counsel."

*Id.* (citing *In re Payment Interchange Fee & Merch. Discount Antitrust Litig.*, No. 05-MD-1720, 2008 WL 115104, at *15 (E.D.N.Y. Jan. 8, 2008)).

The contents of the two joint notices (long form and publication form) were prepared with the aid of Dr. Shannon Wheatman, a recognized expert in the form and content of class action notice. *See* Wheatman Decl. ¶¶ 1-4.[5] They explain clearly and concisely the rights and

---

[5] As described in prior briefing, while serving with the Federal Judicial Center, Dr. Wheatman played an integral role in the development of the illustrative, "model" forms of notice designed to satisfy the plain language requirement of Federal Rule of Civil Procedure 23(c)(2). That research formed the basis for her doctoral dissertation, *The Effects of Plain Language Drafting on Layperson's Comprehension of Class Action Notices* (2001) (Ph.D. dissertation, University of Georgia). And courts have admitted her expert testimony on the quantitative and qualitative evaluations of the effectiveness of notice programs. *See* Dkt. 1929.

benefits available to members of both the Litigation Class and the Settlement Classes,[6] including the key differences between the memberships and legal rights available to each group, such as, *inter alia*, the shortened class period applicable to the Litigation Class, the availability of monetary benefits presently available to the Settlement Classes, and the possibility of future monetary benefits from future settlements or trial for those that elect to remain in the Litigation Class (while plainly explaining that those that opt out of the Litigation Class cannot participate in future *class* settlements with these defendants and can only recover by filing their own *individual* action).[7]

The long form notice will be mailed directly to class members and a publication notice will be published in the various media outlets detailed in section II.A, *supra*. Dr. Wheatman concludes that the publication and long form notices "effectively communicate information about the Settlement." Wheatman Decl. ¶ 22. The publication notice "is designed to capture the Class Member's attention with clear, concise, plain language," and contains plain language text providing "important information regarding the subject of the litigation, the Class definition, and the legal rights available to Class Members," without omitting any "important or required information." Wheatman Decl. ¶ 35. The publication notice also directs members of the Litigation Class and Settlement Classes to the Claims Administrator's website, where the long form notice and other settlement- and litigation-related documents are available—such as the

---

[6] *See* Fed. R. Civ. P. 23(c)(2)(B) (requiring that the notice state in clear and concise language: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c).")

[7] *See, e.g.*, *In re Del-Val Fin. Corp. Sec. Litig.*, 162 F.R.D. 271, 275 (S.D.N.Y. 1995) (holding that Rule 23 did not entitle class members to opt-out of some part of the litigation and not others); *In re Enron,* MDL No. 1446, 2006 WL 1006611, at *1 (S.D. Tex. Apr. 12, 2006) (stating "a class member that opts out of the litigation does so for all purposes").

Deutsche Bank and HSBC Settlements, the operative OTC Class Action Complaint, and certain Orders of the Court such as the Order certifying the class and the Orders preliminarily approving the Deutsche Bank and HSBC Settlements—affording class members further detailed, but still clear and concise, information about their rights. *See* Wheatman Decl. ¶ 29; Ex. 2.

The long form notice contains similar, but more comprehensive, information about the Litigation Class and Settlement Classes. *See* Wheatman Decl. ¶ 36. The long form notice states in plain, easily understood language: (i) the nature of the action; (ii) the claims pleaded and the defenses thereto; (iii) the scope of the releases; (iv) the definition of the Litigation Class; (v) the definition of the Settlement Classes; (vi) the monetary benefits available to the members of the Settlement Classes, including the Plan of Distribution and Co-Lead Class Counsel's intention to move for an award of fees, expenses, and incentive awards and the maximum size of those awards (and the timing of that motion); (vi) the deadline and procedure for submitting a claim (and the necessity to submit a claim to receive benefits under the settlement); (vii) the deadlines and procedures for excluding oneself from the Settlement Classes, objecting to the settlement, and attending the fairness hearing; (viii) the deadlines and procedures for excluding oneself from the Litigation Class, and the legal implications of doing so; (ix) that members of the Settlement Class may, but need not, appear through their own counsel at the fairness hearing; (x) the binding effect of the class judgment under Rule 23(c); and (xii) the identity of Co-Lead Class Counsel. *See* Wheatman Decl. ¶ 36; Ex. 1. That more than satisfies Federal Rule of Civil Procedure 23(c)(2)(B). *See* Wheatman Decl. ¶¶ 37-38.

The Proof of Claim for the Settlements is simple to understand and submit—which will increase claims rates—while eliciting sufficient information for the Claims Administrator, in conjunction with the Settlement Administrator and Co-Lead Class Counsel, to assess members of

the Settlement Class' claims and evaluate any potentially fraudulent or errant submissions. *See* Wheatman Decl. Ex. 3. The Proof of Claim has been designed, in conjunction with Bates White, to elicit sufficient information to assess the claims of holders of all financial instruments at issue in the Deutsche Bank and HSBC Settlements, e.g., asset swaps, collateralized debt obligations, credit default swaps, forward rate agreements, inflation swaps, interest rate swaps, total return swaps, options, and bonds/floating rate notes. *See* Wheatman Decl. Ex. 3; Ard Decl. ¶ 5. And it can be submitted online or in paper, at members of the Settlement Class' election. *See* Wheatman Decl. Ex. 3. This is sufficient. *See, e.g.*, *In re CertainTeed Corp. Roofing Shingle Prods. Liability Litig.*, 269 F.R.D. 468, 482-84 (E.D. Pa. 2010).

## III.    THE PLAN OF DISTRIBUTION SHOULD BE PRELIMINARILY APPROVED

The relevant standards for ***final*** approval of a plan of distribution were set forth recently by Judge Cote:

> A district court "has broad supervisory powers with respect to the ... allocation of settlement funds." *In re Holocaust Victim Assets Litig.,* 424 F.3d 132, 146 (2d Cir. 2005) (citation omitted). The plan of allocation must "meet the standards by which the settlement [is] scrutinized—namely, it must be fair and adequate." *Hart v. RCI Hosp. Holdings, Inc.,* No. 09cv3043 (PAE), 2015 WL 5577713, at *12 (S.D.N.Y. Sept. 22, 2015) (quoting *In re WorldCom, Inc. Sec. Litig.,* 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005)). A plan "need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Id.* (quoting *In re WorldCom, Inc.,* 388 F. Supp. 2d at 344). A principal goal of a plan of distribution must be the equitable and timely distribution of a settlement fund without burdening the process in a way that will unduly waste the fund.

> "[I]n the case of a large class action the apportionment of a settlement can never be tailored to the rights of each plaintiff with mathematical precision." *In re PaineWebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 133 (S.D.N.Y.), *aff'd In re PaineWebber Inc. Ltd. P'ships Litig.,* 117 F.3d 721 (2d Cir. 1997). The challenge of precisely apportioning damages to victims is often magnified in antitrust cases, as "damage issues in [antitrust] cases are rarely susceptible of the kind of concrete, detailed proof of injury which is available in other contexts." *J. Truett Payne Co., Inc. v. Chrysler Motors Corp.,* 451 U.S. 557, 565 (1981) (citation omitted); *see also In re Elec. Books Antitrust Litig.,* No. 11md2293 (DLC), 2014 WL 1282293, at *16 (S.D.N.Y. Mar. 28, 2014).

*In re Credit Default Swaps Antitrust Litig.*, No. 13MD2476 (DLC), 2016 WL 2731524, at *9 (S.D.N.Y. Apr. 26, 2016). Here, the issue is not whether the proposed Plan of Distribution should be finally approved. Rather, on this motion for preliminary approval of the Plan of Distribution, the only question is whether the proposed Plan of Distribution is sufficiently reasonable to be *sent* to members of the Settlement Classes, for their review and comment, prior to final approval.

OTC Plaintiffs have retained Dr. Bernheim and Bates White to create a model of the but-for world, that is, an estimate of what LIBOR would have been, in each tenor, and for each period during the class period, absent its suppression by the US Dollar LIBOR Panel Banks. Dr. Bernheim's report was served in support of OTC Plaintiffs' successful motion for class certification of their antitrust claims.

The Plan of Distribution for Deutsche Bank and HSBC Settlements is materially identical to the Amended Plan of Distribution for the Barclays Settlement, Dkt. 2239-1, which this Court preliminarily approved on August 28, 2017, Dkt. 2243, and to the Plan of Distribution for the Citi Settlement, Dkt. 2253-1, which this Court preliminarily approved on September 26, 2017, Dkt. 2290. For each qualifying LIBOR instrument(s), the Plan of Distribution calculates the claimant's "overall notional stake" as the sum of the "suppressed daily underpayments" for the instrument. The suppressed daily underpayments for each instrument are calculated as follows:

> For each day during the Class Period when the Authorized Claimant had the right to be paid or to receive interest based upon the U.S. Dollar LIBOR rate, the suppressed daily underpayment equals: the dollar amount of the LIBOR-based payment that was due to the Authorized Claimant that day (using historical reported LIBOR rates and payment frequency) multiplied by the magnitude of suppression applicable for that day and then divided by the historical reported LIBOR rate for that day.

Ard Decl. ¶ 5; Ex. 1.  There is a clear rational basis for this proposal. *E.g.*, *Precision Assocs., Inc. v. Panalpina World Transport (Holding) Ltd.*, 2015 WL 6964973, at *7 (E.D.N.Y. Nov. 10, 2015); *see also* Hr'g Tr. 5:13-20, Feb. 5, 2015 (the Court, referencing Barclays' settlement with the Exchange-Based Plaintiffs, stating that "an allocation based on persistent suppression, coupled with trading volume or a calculation based on the federal reserve Eurodollar deposit rate . . . would be sufficient for this initial settlement").

OTC Plaintiffs propose to distribute the Net Settlement Funds to the settlement class members *pro rata*, in proportion to their notional stakes for each Settlement. Ard Decl. ¶ 5; Ex. 1. Courts routinely approve *pro rata* distributions of this sort. *Yang v. Focus Media Holding Ltd.*, No. 11 CIV 9051 CM GWG, 2014 WL 4401280, at *10 (S.D.N.Y. Sept. 4, 2014) ("Pro-rata distribution of settlement funds based on investment loss is clearly a reasonable approach." (citation omitted)).

Under the terms of the Deutsche Bank and HSBC Settlements, the Plan of Distribution was "devised" and will be "implemented with the assistance of the Settlement Administrator," Kenneth Feinberg. Deutsche Bank Settlement ¶ 2(ff); HSBC Settlement ¶ 2(ff). Co-Lead Class Counsel recommends the proposed Plan of Distribution as being in the best interests of the Class. *See In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 CIV 10240 CM, 2007 WL 2230177, at *11 (S.D.N.Y. 2007) ("In determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel."); Ard Decl. ¶ 5.

This proposal has more than a rational basis. If any member of the Settlement Classes disagrees, she will have a chance to explain why in advance of the Final Approval hearing, when the fairness and adequacy of the Plan of Distribution will be evaluated.[8]

## IV.   CONCLUSION

For the foregoing reasons, the OTC Plaintiffs' motion should be granted.


Dated: May 15, 2018

By:   /s/ Michael D. Hausfeld                    /s/ William Christopher Carmody

Michael D. Hausfeld                              William Christopher Carmody (WC8478)
Hilary Scherrer                                  Arun Subramanian (AS2096)
Nathaniel C. Giddings                            Seth Ard (SA1817)
HAUSFELD LLP                                     Geng Chen (GC2733)
1700 St. NW, Suite 650                           SUSMAN GODFREY L.L.P.
Washington, D.C. 20006                           1301 Avenue of the Americas, 32nd Fl.
Telephone: (202) 540-7200                        New York, NY 10019-6023
Facsimile: (202) 540-7201                        Telephone: (212) 336-3330
mhausfeld@hausfeldllp.com                        Facsimile: (212) 336-8340
hscherrer@hausfeldllp.com                        bcarmody@susmangodfrey.com
ngiddings@hausfeldllp.com                        asubramanian@susmangodfrey.com
                                                 sard@susmangodfrey.com
Gary I. Smith, Jr.                               gchen@susmangodfrey.com
HAUSFELD LLP
325 Chestnut Street, Suite 900                   Marc M. Seltzer
Philadelphia, PA 19106                           Glenn C.  Bridgman
Telephone: (267) 702-2318                        SUSMAN GODFREY L.L.P.
Facsimile: (215) 985-3271                        1900 Avenue of the Stars, Suite 1400
gsmith@hausfeld.com                              Los Angeles, CA 90067-6029
                                                 Telephone: (310) 789-3100
                                                 Facsimile: (310) 789-3150
                                                 mseltzer@susmangodfrey.com
                                                 gbridgman@susmangodfrey.com

                                                 Matthew Berry
                                                 Drew D. Hansen

---

[8] The Deutsche Bank and HSBC Settlements provide that the Court's determination as to the "Plan of Distribution, or any determination on appeal from any such order, shall not provide grounds for the termination of this Agreement or settlement." Deutsche Bank Settlement ¶ 13(b); HSBC Settlement ¶ 13(b).

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
mberry@susmangodfrey.com
dhansen@susmangodfrey.com

Barry C. Barnett (BB1984)
Karen Oshman
Michael Kelso
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002-5096
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
bbamett@susmangodfrey.com
koshman@susmangodfrey.com
mkelso@susmangodfrey.com

*Co-Lead Class Counsel for the OTC Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 15, 2018, I caused the aforementioned document to be served via the Electronic Case Filing (ECF) system in the United States District Court for the Southern District of New York, on all parties registered for CM/ECF in the above-captioned matters.

Dated: May 15, 2018

*/s/ Geng Chen*
Geng Chen
