**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION | MDL No. 2262<br>Master File No. 1:11-md-2262-NRB |
| THIS DOCUMENT RELATES TO: | **ORAL ARGUMENT REQUESTED** |
| MAYOR AND CITY COUNCIL OF BALTIMORE, et al.,<br><br>                    Plaintiffs,<br><br>          v.<br><br>CREDIT SUISSE GROUP AG, et al.,<br><br>                    Defendants. | No. 11-cv-5450 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR
<u>PARTIAL JUDGMENT ON THE PLEADINGS</u>**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................................1

STANDARD ..................................................................................................................................2

ARGUMENT .................................................................................................................................2

I.     Plaintiffs Are Not Efficient Enforcers as to Transactions Involving Only
Panel Bank Subsidiaries or Affiliates. ..............................................................................2

II.    OTC Plaintiffs Are Not Efficient Enforcers as to Instruments Where Only
Panel Bank Subsidiaries or Affiliates Paid LIBOR-Based Interest. ..................................4

III.   OTC Plaintiffs' Claims Based on LIBOR-Based Instruments Purchased
from a Panel Bank Affiliate or Subsidiary Are Barred by *Illinois Brick*. ...........................6

CONCLUSION ..............................................................................................................................9

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

Page(s)

*Bank of N.Y. v. First Millennium, Inc.*,
  607 F.3d 905 (2d Cir. 2010) ...................................................................................2

*Ill. Brick Co. v. Illinois*,
  431 U.S. 720 (1977) ...................................................................................2, 6, 8

*Laumann v. Nat'l Hockey League*,
  907 F. Supp. 2d 465 (S.D.N.Y. 2012) ....................................................... 6

*Leider v. Ralfe*,
  No. 01-CV-3137, 2003 WL 22339305 (S.D.N.Y. Oct. 10, 2003)...........................7

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  2015 WL 6243526 (S.D.N.Y. Oct. 20, 2015) ........................................ 4

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  2016 WL 1733463 (S.D.N.Y. Apr. 29, 2016) ........................................ 3

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  2016 WL 7378980 (S.D.N.Y. Dec. 20, 2016) ........................................... *passim*

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  2017 WL 532465 (S.D.N.Y. Feb. 2, 2017) ......................................... 1, 3

*Motorola Mobility LLC v. AU Optronics Corp.*,
  775 F.3d 816 (7th Cir. 2015) ......................................................... 8

*Simon v. KeySpan Corp.*,
  694 F.3d 196 (2d Cir. 2012) .........................................................6

*In re Vitamin C Antitrust Litig.*,
  279 F.R.D. 90 (E.D.N.Y. 2012) ................................................... 6, 7

<u>STATUTES & RULES</u>

12 C.F.R. § 223.2(a) ..........................................................................7

12 C.F.R. § 223.51 ..........................................................................7

12 C.F.R. § 223.52(a)(4) ....................................................................7

Fed. R. Civ. P. 12(b)(6)......................................................................2

Fed. R. Civ. P. 12(c) ......................................................................1, 2

<u>Oᴛʜᴇʀ Aᴜᴛʜᴏʀɪᴛɪᴇs</u>

Bank of America Corp., July 1, 2008 Form 8-K
      https://www.sec.gov/Archives/edgar/data/70858/000095014408005220/0000950144-08-
      005220-index.htm..................................................................................................................4

Bank of America Corp., Dec. 31, 2008 Form 8-K
      https://www.sec.gov/Archives/edgar/data/70858/000095012309000010/0000950123-09-
      000010-index.htm..................................................................................................................4

JPMorgan Chase & Co., June 2, 2008 Form 8-K
      https://www.sec.gov/Archives/edgar/data/19617/000089882208000592/0000898822-08-
      000592-index.htm..................................................................................................................4

Bank of America, N.A. and JPMorgan Chase Bank, N.A. ("Defendants") submit this memorandum of law in support of their motion for partial judgment on the pleadings under Federal Rule of Civil Procedure 12(c) to dismiss the OTC Plaintiffs' claims based on transactions with, or on which interest is paid by, subsidiaries or affiliates of a U.S. Dollar LIBOR panel bank ("Panel Bank").

## PRELIMINARY STATEMENT

OTC Plaintiffs seek to assert antitrust claims not just based on their LIBOR-based transactions with persons that allegedly conspired to suppress LIBOR, but also based on their transactions with third parties that, as this Court has already ruled, played no plausible role in that alleged conspiracy (and that, in most cases, OTC Plaintiffs never even alleged were co-conspirators). OTC Plaintiffs contend that they may do so merely because these third parties had corporate affiliations with defendant Panel Banks. That is not the law.

As this Court held in *LIBOR VI*, a plaintiff cannot assert antitrust claims based on transactions with persons that were not part of the alleged conspiracy because, as to those transactions, the "independent decision" by the plaintiff and a non-defendant to set pricing terms for the transaction "breaks the chain of causation between defendants' actions and a plaintiff's injury." *In re LIBOR-Based Fin. Instruments Antitrust Litig. ("LIBOR VI")*, 2016 WL 7378980, at *16 (S.D.N.Y. Dec. 20, 2016). The same rationale precludes OTC Plaintiffs' claims based on transactions that involved only non-defendant affiliates or subsidiaries of Panel Banks (or in which Panel Banks were mere sellers of the instruments but their affiliates or subsidiaries actually issued and paid interest on them). As this Court held following *LIBOR VI*, Panel Banks' affiliates or subsidiaries were not plausibly part of the alleged conspiracy. *In re Libor-Based Fin. Instruments Antitrust Litig.*, 2017 WL 532465, at *2 (S.D.N.Y. Feb. 2, 2017). Thus, like any other third parties, the decisions of affiliates and subsidiaries to incorporate LIBOR into their transactions were "independent" and "break[] the chain of causation between defendants' actions and a plaintiff's injury," *LIBOR VI*, 2016 WL 7378980, at *16.

Moreover, where OTC Plaintiffs purchased LIBOR-based instruments issued by a Panel Bank but sold by a Panel Bank's subsidiary or affiliate, OTC Plaintiffs' claims are barred by *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 736 (1977).  *Illinois Brick* limits antitrust standing to persons that directly purchased an allegedly price-fixed instrument from an alleged co-conspirator.  Where an OTC Plaintiff purchased from a Panel Bank's subsidiary or affiliate, rather than from the issuing Panel Bank itself, *Illinois Brick*'s rule is not satisfied and the claim must be dismissed.

## STANDARD

When deciding a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), the district court applies the same standard for deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010).  Accordingly, "[t]o survive a Rule 12(c) motion, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Id.* (internal quotation marks omitted).

## ARGUMENT

### I.    Plaintiffs Are Not Efficient Enforcers as to Transactions Involving Only Panel Bank Subsidiaries or Affiliates.

This Court's prior rulings compel the conclusion that OTC Plaintiffs are not efficient enforcers of the antitrust laws as to transactions that involved only Panel Bank subsidiaries or affiliates, rather than Panel Banks themselves (*e.g.*, a hypothetical bond issued by non-Panel Bank Citigroup Funding, Inc. and sold by non-Panel Bank Citigroup Global Markets, Inc.).

In *LIBOR VI*, this Court established a clear dividing line between plaintiffs that "transacted directly with defendants and those who did not."  *LIBOR VI*, 2016 WL 7378980, at *16.  Any plaintiff whose counterparty "is not a defendant bank . . . is not an efficient enforcer."  *Id.*  That is so, this Court explained, because "[a] plaintiff and a third party could, and did, easily incorporate LIBOR into a financial transaction without any action by defendants whatsoever."  *Id.*  Thus, a plaintiff and a third party's "independent decision" to incorporate LIBOR into their

financial transactions "breaks the chain of causation between defendants' actions and a plaintiff's injury," precluding antitrust claims based on the third-party transaction. *Id.*

This Court has already held that Panel Banks' subsidiaries and affiliates are third parties to the alleged conspiracy. In *LIBOR VI*, this Court held that plaintiffs "have not pleaded facts or submitted supporting material that suggests that any panel bank's United States-based affiliate played a role in that bank's alleged suppression of LIBOR." 2016 WL 7378980, at *10 (quoting *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2016 WL 1733463, at *3 (S.D.N.Y. Apr. 29, 2016)). And following *LIBOR VI*, this Court held that, "[f]or antitrust claims arising from the persistent suppression conspiracy, the proper defendant is the panel bank," and dismissed plaintiffs' claims against any Panel Bank subsidiaries or affiliates for failure to plausibly allege that they were participants in that alleged conspiracy. 2017 WL 532465, at *2.[1] As noted by the Court, the question whether a plaintiff is an efficient enforcer is distinct from whether a Panel Bank subsidiary or affiliate is a proper defendant. (ECF No. 2532.) However, this Court's holding that Panel Bank subsidiaries and affiliates were not plausibly part of the alleged conspiracy places them in the same category as any other non-defendant counterparty for purposes of the efficient enforcer analysis. Just as a plaintiff and a third party could, and did, incorporate LIBOR into a financial transaction "without any action by defendants whatsoever," the same is true where only a Panel Bank affiliate or subsidiary, and not a Panel Bank itself, was involved in a transaction with an OTC Plaintiff. *LIBOR VI*, 2016 WL 7378980, at *16. It follows that OTC Plaintiffs' claims based on transactions that involve only Panel Bank subsidiaries or affiliates should be dismissed on efficient enforcer grounds, just as this Court already dismissed such claims involving transactions with any other third party.

The OTC Complaint does not contain any factual allegations suggesting that decisions by affiliates or subsidiaries of a Panel Bank to incorporate LIBOR into their transactions were anything but independent decisions. In their pre-motion letter, OTC Plaintiffs make the

---

[1] Indeed, other than the now-dismissed parent holding companies of the Defendants and Citibank, N.A., OTC Plaintiffs have never even attempted to allege that any subsidiary or affiliate of a Panel Bank had any involvement in the alleged conspiracy. (OTC Corrected Third Am. Compl. ("OTC Complaint"), ECF No. 1857.)

conclusory assertion that "it is difficult to fathom that subsidiaries and affiliates of panel banks were completely independent in the decision to incorporate LIBOR into their transactions." (ECF No. 2531.)  Tellingly, however, OTC Plaintiffs do not (and cannot) point to a single allegation in their complaint to support that assertion.  OTC Plaintiffs do not allege that any Panel Bank adopted a policy or practice to require or encourage their subsidiaries or affiliates to incorporate LIBOR into any of their transactions, nor do OTC Plaintiffs allege that Panel Banks played any other role in incorporating LIBOR into their subsidiaries' or affiliates' transactions. If anything, it is "difficult to fathom" why a Panel Bank would have played any role in incorporating LIBOR into transactions as to which it was not a counterparty and on which it did not pay any interest.[2]  Indeed, this is *a fortiori* true in the case of non-subsidiary affiliates of Panel Banks, which by definition cannot be controlled by the Panel Bank.[3]  OTC Plaintiffs' speculation in a pre-motion letter does not sustain their claims.

## II.    OTC Plaintiffs Are Not Efficient Enforcers as to Instruments Where Only Panel Bank Subsidiaries or Affiliates Paid LIBOR-Based Interest.

For similar reasons, OTC Plaintiffs are not efficient enforcers as to instruments purchased from Panel Banks on which only Panel Bank affiliates and subsidiaries paid LIBOR-based interest (*e.g.*, a hypothetical bond issued by non-Panel Bank Citigroup Funding, Inc. and sold by Panel Bank Citibank, N.A.).  As this Court has previously emphasized, "the bare fact that a defendant transacted with a plaintiff does not open the door to liability."  *LIBOR IV*, 2015 WL 6243526, at *75 (S.D.N.Y. Oct. 20, 2015).  When dismissing certain plaintiffs' unjust

---

[2]  Moreover, and underscoring the independence of decisions by Panel Bank affiliates and subsidiaries to incorporate LIBOR into their transactions, this Court has repeatedly rejected as implausible any supposed "profit motive" for any alleged conspiracy.  *LIBOR VI*, 2016 WL 7378980, at *5 ("[P]laintiffs have only sufficiently alleged that the goal of the antitrust conspiracy was the projection of financial soundness.").

[3]  *A fortiori*, OTC Plaintiffs cannot assert claims based on transactions with entities that were not subsidiaries or affiliates of the Panel Banks at the time of the alleged misconduct.  For example, Bank of America Corporation did not complete its acquisition of Countrywide and Merrill Lynch entities until July 1, 2008 and January 1, 2009, respectively, and JPMorgan Chase & Co. did not complete its acquisition of Bear Stearns entities until June 1, 2008.  *See* Bank of America Corp., July 1, 2008 Form 8-K, at 8.01, https://www.sec.gov/Archives/edgar/data/70858/000095014408005220/g14113ke8vk.htm; Bank of America Corp., Dec. 31, 2008 Form 8-K, at 2.01, https://www.sec.gov/Archives/edgar/data/70858/000095012309000010/y73597e8vk.htm; JPMorgan Chase & Co., June 2, 2008 Form 8-K, at 8.01, https://www.sec.gov/Archives/edgar/data/19617/000089882208000592/body8k.htm.

enrichment claims, this Court distinguished between entities that *issued* LIBOR-based securities (and thus paid the LIBOR-based interest on those securities) and entities, such as agents, brokers and underwriters, that were "merely involved in the sale of LIBOR-related securities" and "agreed to do nothing more than to sell or offer securities at a bargained-for price." *Id.* Because defendants acting as mere sellers "were not enriched by LIBOR manipulation," this Court held that plaintiffs could not bring breach of implied covenant of good faith and fair dealing or unjust enrichment claims against such defendants. *Id.* The same distinction applies in the efficient enforcer context as well. The OTC Complaint alleges nothing to suggest that, where a Panel Bank merely sells a LIBOR-based instrument but does not pay the LIBOR-based interest itself, the Panel Bank played any role in incorporating LIBOR as a term in the instrument. In such circumstances, it is only the Panel Bank affiliate or subsidiary, which is not an alleged co-conspirator, that would have been involved in incorporating LIBOR into the instrument, "without any action by defendants whatsoever." *LIBOR VI*, 2016 WL 7378980, at *16. That "independent decision" by the Panel Bank affiliate or subsidiary "breaks the chain of causation" and precludes antitrust liability. *Id.*

Indeed, OTC Plaintiffs acknowledge this distinction in their own class definition. OTC Plaintiffs explicitly exclude from their class any "instruments on which a Panel Bank (or a Panel Bank's subsidiaries or affiliates) does not pay interest, such as bonds/floating rate notes issued by entities other than Panel Banks (or Panel Banks' subsidiaries or affiliates)." (OTC Compl. ¶ 44.) Thus, the OTC Complaint itself recognizes that, even if a Panel Bank has some involvement in a transaction as a mere seller, there is no basis for antitrust liability on that transaction if a third party pays interest on the transaction. Given that, as discussed in Part I above, a Panel Bank's affiliates and subsidiaries are similarly situated to any other third party, it follows that there is no basis for antitrust liability based on instruments on which only a Panel Bank's subsidiaries or affiliates pay interest.[4]

---

[4] Moreover, there is no basis for liability where LIBOR-based interest was paid by entities that were not Panel Bank subsidiaries or affiliates at the time of the alleged misconduct. *See supra* note 3.

III.   **OTC Plaintiffs' Claims Based on LIBOR-Based Instruments Purchased from a Panel Bank Affiliate or Subsidiary Are Barred by *Illinois Brick*.**

Where a Panel Bank issued a LIBOR-based instrument (or otherwise paid LIBOR-based interest on the instrument), OTC Plaintiffs that purchased the instrument from a Panel Bank's affiliates or subsidiaries are barred from asserting an antitrust claim under the direct purchaser rule of *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 736 (1977).  This category of transactions includes LIBOR-based instruments issued by a Panel Bank and sold by that same Panel Bank's affiliate (*e.g.*, a hypothetical bond issued by Citibank, N.A. and sold by Citigroup Global Markets, Inc.), as well as LIBOR-based instruments issued by a Panel Bank and sold by a different Panel Bank's affiliate (*e.g.*, a hypothetical bond issued by Citibank, N.A. and sold by Credit Suisse Securities (USA) LLC).  In *Illinois Brick*, the Supreme Court held that, subject only to certain exceptions not applicable here, "only direct purchasers have standing to bring civil antitrust claims."  *Simon v. KeySpan Corp.*, 694 F.3d 196, 201-02 (2d Cir. 2012).  A "direct purchaser" is a plaintiff that purchased an allegedly price-fixed product directly from an alleged co-conspirator defendant.  *See, e.g.*, *Laumann v. Nat'l Hockey League*, 907 F. Supp. 2d 465, 482 (S.D.N.Y. 2012) ("*Illinois Brick* bans Clayton Act lawsuits by persons who are not direct purchasers *from the defendant antitrust violator[s]*." (internal quotation marks omitted)); *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 100-01 (E.D.N.Y. 2012) (holding that a plaintiff who purchased from "a subsidiary of defendant . . . rather than a defendant itself" was not a direct purchaser under *Illinois Brick*).  Because, as discussed in Part I above, Panel Bank affiliates and subsidiaries are not alleged co-conspirators, OTC Plaintiffs that purchased from Panel Bank affiliates or subsidiaries are not direct purchasers and their claims must be dismissed.  *Ill. Brick*, 431 U.S. at 736.

Although *Illinois Brick* recognizes an exception where "the defendant owns or controls the intermediary that sold the goods to the indirect-purchaser plaintiff," *In re Vitamin C Antitrust Litig.*, 279 F.R.D. at 101, that exception does not apply here.  Courts in this district have "narrowly construed" this exception to apply only where the defendant-intermediary relationship

"involve[s] such functional economic or other unity that there effectively has been only one sale." *Leider v. Ralfe*, No. 01-CV-3137, 2003 WL 22339305, at *4 (S.D.N.Y. Oct. 10, 2003) (internal quotation marks omitted).  To avoid *Illinois Brick*'s bar on indirect purchaser claims, a plaintiff must allege specific facts demonstrating this "unity" and "may not rely simply on the existence of a parent-subsidiary relationship" to invoke the exception.  *In re Vitamin C Antitrust Litig.*, 279 F.R.D. at 101.  "Crucially," courts hold, "this exception is available only if the plaintiff shows that the defendant has such control over the subsidiary that the defendant can be said to have set prices along the chain of distribution."  *Id.* (internal quotation marks omitted).  The OTC Complaint is devoid of allegations plausibly showing that such unity is present with respect to OTC Plaintiffs' purchases from Panel Bank affiliates and subsidiaries (particularly where the purchase is an instrument issued by one Panel Bank and purchased from a *different* Panel Bank's affiliate or subsidiary).[5]  Accordingly, *Illinois Brick* bars these claims.

*In re Vitamin C Antitrust Litigation* is on point.  There, the court held that a plaintiff was an indirect purchaser, and thus barred from recovery against a parent company under *Illinois Brick*, because it purchased from "a subsidiary of defendant . . . rather than a defendant itself." 279 F.R.D. at 100.  Recognizing that "exceptions to the *Illinois Brick* rule" are "few and far between," the court held that it was not enough that the plaintiff purchased from a "wholly-owned subsidiary" of a defendant.  *Id.* at 101-02.  Rather, the court found that there was nothing to suggest that the defendant-parent "was responsible for any overcharge" that may have been imposed by the subsidiary on the plaintiff.  *Id.* at 102.  The same is true here—OTC Plaintiffs make no factual allegations suggesting that the Panel Bank Defendants were responsible for "set[ting] prices along the chain of distribution" with respect to transactions by non-defendant affiliates or subsidiaries with plaintiffs.  *Id.* at 101.  As discussed in Part I above, the OTC

---

[5] Indeed, no allegations of functional "unity" between a Panel Bank and its affiliates or subsidiaries would be plausible in light of financial regulatory requirements.  For example, Regulation W prohibits a bank from entering into a wide range of transactions with its affiliates—which include companies under common control as well as financial and depository subsidiaries, *see* 12 C.F.R. § 223.2(a)—unless those transactions are on "market terms," *id.* § 223.51.  Transactions on "market terms" specifically include when an affiliate acts as a "broker" or "receives a fee for its services to the member bank."  *Id.* § 223.52(a)(4).

Complaint contains no allegations whatsoever suggesting that Panel Banks were involved in decisions to incorporate LIBOR (or otherwise set pricing terms) in transactions between OTC Plaintiffs and Panel Banks' affiliates or subsidiaries.  *Illinois Brick* therefore applies.

The Seventh Circuit's decision in *Motorola Mobility LLC v. AU Optronics Corp.* is also instructive.  775 F.3d 816 (7th Cir. 2015).  In *Motorola*, Motorola Mobility LLC ("Motorola") sued foreign manufacturers of liquid-crystal display ("LCD") panels for allegedly conspiring to set the prices that the manufacturers would charge.  *Id.* at 817.  The appeal focused on whether Motorola could bring an antitrust claim on the basis of LCD panels that were purchased by Motorola's foreign subsidiaries.  *Id.*  The court held that Motorola's claims based on LCD panels purchased by its subsidiaries failed under *Illinois Brick* because "[t]he victims of the price fixing of LCD panels" were the foreign subsidiaries and Motorola was "at most [a] derivative victim[]." *Id.* at 818, *see also id.* at 821 ("Motorola's subsidiaries were the direct purchasers of the price-fixed LCD panels, Motorola and its customers indirect purchasers of the panels.").  The court also rejected Motorola's argument that Motorola controlled its subsidiaries so that "Motorola was the real buyer of the panels":  "Motorola can't just ignore its corporate structure whenever it's in its interests to do so."  *Id.* at 822.

Although *Motorola* addressed whether corporate affiliates of the plaintiff were direct purchasers for the purposes of *Illinois Brick*, the same respect for corporate formalities applies when a plaintiff sues based on transactions with a Panel Bank subsidiary or affiliate that is not alleged to have played a role in the alleged conspiracy.  Just as *Motorola* took account of corporate separateness in determining which entity was the direct purchaser under *Illinois Brick*, the same should be true here.  OTC Plaintiffs thus are impermissible indirect purchasers of LIBOR-based instruments originally issued by the Panel Banks but sold to OTC Plaintiffs by Panel Bank affiliates or subsidiaries.  *Id.* at 818.[6]

---

[6] This is *a fortiori* true where a LIBOR-based instrument is issued by one Panel Bank and then sold to an OTC Plaintiff by a *different* Panel Bank's subsidiary or affiliate.  In that case, "the direct purchaser" cannot be controlled by the Panel Bank issuer, as they are not even part of the same corporate family.  *Ill. Brick*, 431 U.S. at 736 n.16. Furthermore, for those entities that were neither subsidiaries nor affiliates at the time of the alleged misconduct,

Accordingly, OTC Plaintiffs' claims based on these transactions fail under *Illinois Brick*.

## CONCLUSION

For all of these reasons, the Court should dismiss OTC Plaintiffs' antitrust claims based on instruments purchased by class members from a Panel Bank's subsidiaries or affiliates or purchased by class members from a Panel Bank but pursuant to which a subsidiary or affiliate paid interest to the class member.

Dated:     New York, New York
           July 13, 2018

                                        Respectfully submitted,

/s/ *Arthur J. Burke*                    /s/ *Paul C. Gluckow*
Arthur J. Burke                          Mary Beth Forshaw
Paul S. Mishkin                          Paul C. Gluckow
Adam G. Mehes                            Alan C. Turner
DAVIS POLK & WARDWELL LLP                Sarah E. Phillips
450 Lexington Avenue                     SIMPSON THACHER & BARTLETT LLP
New York, New York 10017                 425 Lexington Avenue
Telephone: (212) 450-4000                New York, New York 10017
Fax: (212) 701-5800                      Telephone: (212) 455-2000
arthur.burke@davispolk.com               Fax: (212) 455-2502
paul.mishkin@davispolk.com               mforshaw@stblaw.com pgluckow@stblaw.com
adam.mehes@davispolk.com                 aturner@stblaw.com
                                         sarah.phillips@stblaw.com
*Attorneys for Defendant Bank of*
*America, N.A.*                          Abram J. Ellis
                                         900 G Street NW
                                         Washington, D.C. 20001
                                         Telephone: (202) 636-5500
                                         Fax: (202) 636-5502
                                         aellis@stblaw.com

                                         *Attorneys for Defendant JPMorgan Chase*
                                         *Bank, N.A.*

---

there is no support for an assertion that the Panel Bank issuers controlled these entities, as they had not yet been acquired. *See supra* note 3.