UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
In re:

LIBOR-Based Financial Instruments
Antitrust Litigation.

This Document Applies to:

  OTC Plaintiff Action

-----------------------------------------X

**MEMORANDUM AND ORDER**

11 MD 2262 (NRB)

11 Civ. 5450

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

## I.    INTRODUCTION

On August 1, 2018, we granted final approval to OTC plaintiffs' $120 million settlement with Barclays and their $130 million settlement with Citi, see Aug. 1, 2018 Order, 2018 WL 3677875 (S.D.N.Y. Aug. 1, 2018), ECF No. 2655, but reserved decision on OTC plaintiffs' motions (ECF Nos. 2278, 2386) for attorneys' fees, reimbursement of litigation expenses, and incentive awards for named plaintiffs. This memorandum and order addresses those motions, which are granted in part and denied in part. We consider, in order, the requests for litigation expenses, incentive awards, and attorneys' fees.

## II.    LITIGATION EXPENSES

"In a certified class action, the court may award reasonable . . . nontaxable costs that are authorized by law or by the parties' agreement," Fed. R. Civ. P. 23(h), and we have held that, generally, "[c]ounsel is entitled to reimbursement from the common

1

fund for reasonable litigation expenses," In re IMAX Sec. Litig., No. 06 Civ. 6128 (NRB), 2012 WL 3133476, at *6 (S.D.N.Y. Aug. 1, 2012) (alteration in original) (quoting In re Merrill Lynch Tyco Research Sec. Litig., 249 F.R.D. 124, 143 (S.D.N.Y. 2008)). "[C]ourts in the Second Circuit normally grant expense requests in common fund cases as a matter of course." Id. (quoting In re EVCI Career Colleges Holding Corp. Sec. Litig., No. 05 Civ. 10240 (CM), 2007 WL 2230177, at *18 (S.D.N.Y. July 27, 2007)). Above all, however, as Rule 23(h) requires, expense requests must be reasonable. See 5 William B. Rubenstein, Newberg on Class Actions § 16:10 (5th ed.) (Westlaw 2018).

Here, OTC plaintiffs request a total of $14,855,689.55 in reimbursement for litigation expenses, comprised of (1) $656,337.64 in reimbursements for costs and expenses incurred through November 11, 2015 (the date on which the Barclays settlement was reached) from the Barclays settlement fund, see ECF No. 2351, and (2) a further $14,199,351.91[1] in reimbursements for costs and expenses incurred between November 11, 2015 and July 27, 2017 (the date on which the Citi settlement was reached) from the Citi settlement fund, see ECF No. 2388. The sum of these figures represents 5.94% of the $250 million aggregate settlement amount.

---

[1] OTC plaintiffs represent that they have incurred a total of $14,855,689.55 in costs and expenses from the start of this action through July 27, 2017. Given that they have requested $656,337.64 in reimbursement from the Barclays settlement fund, the difference would be $14,199,351.9<u>1</u>, not $14,199,351.9<u>9</u> as presented in their papers.

2

"In a typical case, reimbursed expenses reflect a small percentage of the settlement amount." In re IMAX, 2012 WL 3133476, at *6 (collecting cases where expenses amounted to 2 to 3 percent of the settlement fund). However, given the complexities of this case and the necessity for extensive expert involvement (which account for the vast majority of expenses that OTC plaintiffs have incurred), we are persuaded that 5.94% is not so high as to be unreasonable. Further, attribution of these expenses to Barclays and Citi is appropriate -- even though some portion undoubtedly pertains to other defendants also -- given the joint and several nature of liability in this action. Accordingly, we will award $14,855,689.55 in costs and expenses, $656,337.64 payable from the Barclays settlement fund and $14,199,351.91 payable from the Citi settlement fund.

### III. INCENTIVE AWARDS

"At the conclusion of a class action, the class representatives are eligible for a special payment in recognition of their service to the class." 5 William B. Rubenstein, Newberg on Class Actions § 17:1 (5th ed.) (Westlaw 2018). "An incentive award is meant to compensate the named plaintiff for any personal risk incurred by the individual or any additional effort expended by the individual for the benefit of the lawsuit." Dornberger v. Metro. Life Ins. Co., 203 F.R.D. 118, 124 (S.D.N.Y. 2001). Accordingly, "[t]he 'guiding standard in determining an incentive

award is broadly stated as being the existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff . . . and, of course, the ultimate recovery." Dial Corp. v. News Corp., 317 F.R.D. 426, 439 (S.D.N.Y. 2016) (quoting Roberts v. Texaco, Inc., 979 F. Supp. 185, 200 (S.D.N.Y. 1997)).

"Awards on an individualized basis have generally ranged from $2,500 to $85,000," id. (citing Dornberger, 203 F.R.D. at 125), and empirical studies have shown that, in recent years, the median incentive award per plaintiff is approximately $5,000 and the mean incentive award is approximately $12,000, see 5 William B. Rubenstein, Newberg on Class Actions § 17:8 tbl.1 (5th ed.) (Westlaw 2018). In terms of the total incentive award across all named plaintiffs, the median is approximately $11,000 and the mean is approximately $33,000. Id. While considering the relationship between the incentive awards made and the total recovery is a useful means of assessing reasonableness, see, e.g., Sanz v. Johny Utah 51 LLC, No. 14 Civ. 4380 (JMF), 2015 WL 1808935, at *1 (S.D.N.Y. Apr. 20, 2015), expressly tying the granting of incentive awards to the amount of recovery or the prospect of future settlements is disfavored (as doing so may alter the incentives of

4

the named plaintiffs), see 5 William B. Rubenstein, Newberg on Class Actions § 17:14 (5th ed.) (Westlaw 2018).

Here, OTC plaintiffs have sought incentive awards of $25,000 each for five of the named plaintiffs: the Mayor and City Council of Baltimore, Maryland; the City of New Britain, Connecticut; Yale University; Vistra Energy Corp.; and Jennie Stuart Medical Center, Inc., to be paid solely from the Barclays settlement. See ECF No. 2276, ECF No. 2350. This request is premised on these plaintiffs' contributions to the case by "providing evidence to assist in the development of the OTC Plaintiffs' claims, collecting thousands of documents in response to discovery requests, responding to scores of questions from counsel about the documents and data produced, and preparing and sitting for lengthy 30(b)(6) depositions by the defendants." ECF No. 2279 at 22.

Given the complexity of the case, the length of the litigation, and the amount of recovery that these plaintiffs have obtained for the class, we find that incentive awards of $25,000 each are reasonable here. This amount is well within the range of incentive awards that have been previously granted. See Dornberger, 203 F.R.D. at 125. While $25,000 each for a total of $125,000 is greater than the incentive awards typically made, this case is far from a typical case. Further, each incentive award amounts to 0.01 percent of the recovery obtained through the Barclays and Citi settlements, or 0.05 percent of the total

5

recovery for all incentive awards combined. These low percentages confirm the conclusion that incentive awards of $25,000 each are appropriate.

However, we will make one modification: rather than the incentive awards being paid entirely from the Barclays settlement fund, they will be paid pro rata from the Barclays and Citi settlement funds: $12,000 each from the Barclays settlement fund, and $13,000 each from the Citi settlement fund.

## IV. ATTORNEYS' FEES

Rule 23(h) provides that "the court may award reasonable attorney's fees," Fed. R. Civ. P. 23(h), and "both the lodestar and the percentage of the fund methods are available to district judges in calculating attorneys' fees in common fund cases," Goldberger v. Integrated Res., Inc., 209 F.3d 43, 50 (2d Cir. 2000). Under the lodestar method, we "scrutinize[] the fee petition to ascertain the number of hours reasonably billed to the class and then multipl[y] that figure by an appropriate hourly rate." Id. at 47. "Once that initial computation has been made, the district court may, in its discretion, increase the lodestar by applying a multiplier based on 'other less objective factors,' such as the risk of the litigation and the performance of the attorneys." Id. (emphasis added). By contrast, under the percentage-of-fund method, we "set[] some percentage of the recovery as a fee." Id. "In determining what percentage to award,

courts have looked to the same 'less objective' factors that are used to determine the multiplier for the lodestar." Id.

While we may award fees based on either method, "[i]t remains the case that adoption of the percentage method continues to be the trend of district courts in the Second Circuit but . . . an analysis of counsel's lodestar as a cross check on the reasonableness of the requested percentage remains common." In re IMAX, 2012 WL 3133476, at *5 (alterations incorporated) (internal quotation marks omitted); see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 123 (2d Cir. 2005) ("As a 'cross-check' to a percentage award, courts in this Circuit use the lodestar method."). And regardless of "[w]hatever method is used, the reasonableness of a common fund fee award is governed by the so-called Goldberger factors: (1) counsel's time and labor; (2) the litigation's complexities and magnitude; (3) the litigation risks; (4) quality of representation; (5) the relationship of the requested fee to the settlement; and (6) considerations of public policy." Masters v. Wilhelmina Model Agency, Inc., 473 F.3d 423, 436 (2d Cir. 2007) (citing Goldberger, 209 F.3d at 50).

Accordingly, we will begin by applying the percentage-of-fund method, but that starting point does not answer the (literal) million-dollar question. "Recognizing that economies of scale could cause windfalls in common fund cases, courts have traditionally awarded fees for common fund cases in the lower range

of what is reasonable." Wal-Mart Stores, 396 F.3d at 122. Consistent with this concern, "a 'sliding scale' approach -- awarding a smaller percentage for fees as the size of the settlement fund increases -- is appropriate and avoids a windfall to plaintiffs' counsel to the detriment of class members." In re Colgate-Palmolive Co. ERISA Litig., 36 F. Supp. 3d 344, 348 (S.D.N.Y. 2014); see also Wal-Mart Stores, 396 F.3d at 123 ("[T]he sheer size of the instant fund makes a smaller percentage appropriate.").

"Historical data of fees awarded in common fund cases" establishes that the percentage of fees awarded tends to decrease as the size of the fund increases, and "provides an unbiased and useful reference for comparing fees cases of similar magnitude as a starting point for the sliding scale." In re Colgate, 36 F. Supp. 3d at 349 (citing empirical analyses); see 4 William B. Rubenstein, Newberg on Class Actions § 15:81 (5th ed.) (Westlaw 2018) (same). In one study, for settlements where the class recovery exceeds $175.5 million (the top decile of recovery amounts), the mean fee percentage awarded is 12.0 percent and the median percentage is 10.2 percent, with great variability (a standard deviation of 7.9 percent). In re Colgate, 36. F. Supp. 3d at 350 n.1. In a second study, for settlements where the class recovery ranged between $72.5 million and $6.6 billion (the top decile of recovery amounts), the mean fee percentage awarded is

8

18.4 percent and the median is 19.0 percent, again with great variability (a standard deviation of 7.9 percent also). Id. at 350 n.2. In a third study, the average fee percentage was approximately 17 percent both for settlements between $100 million and $250 million and settlements between $250 million and $500 million. See 4 William B. Rubenstein, Newberg on Class Actions § 15:81 fig.2 (5th ed.) (Westlaw 2018).

OTC plaintiffs have requested $50 million in fees across the two settlements, which corresponds to exactly 20 percent of the gross aggregate settlement amounts prior to the reimbursement of expenses and granting of incentive awards. See ECF Nos. 2350, 2386. However, OTC plaintiffs had previously based their request on the net settlement fund after reimbursement of expenses. See ECF No. 2278. We agree that awarding fees as a percentage of net recovery is more consistent with notions of public policy in that doing so encourages class counsel's prudence and discretion in incurring expenses -- expenses that may not be as closely scrutinized given that there is no single client footing the bill.

We then return to the question of what percentage -- of the net settlement amount -- to award. Here, the net settlement amount is $235,019,310.45 after expenses reimbursements and incentive awards are deducted, and we are persuaded that 18.5 percent of this amount, or $43,478,572.43, is an appropriate amount of fees to award. Class counsel have unquestionably devoted a significant

9

number of hours to this action -- 46,744.30 through July 27, 2017 to be precise, and this action has undisputedly been complex and fraught with risk. While these factors may militate in favor of a larger award, the amount of recovery in this case is substantial, and a higher percentage would incur the risk of providing an unwarranted windfall to class counsel at the expense of the class. Indeed, this percentage is greater than the average percentages observed for settlements of this size, which appropriately reflects the quality of representation provided by Class Counsel here.

Given these amounts of expense reimbursements, incentive awards, and attorneys' fees, the class writ large will receive 76.62% of the aggregate settlement amounts (prior to other expenses, such as those incurred in providing notice to the classes) -- a percentage that we find comports with public policy notions of allowing the class, rather than class counsel, to receive a sufficiently significant share of the recovery. It is simply inconceivable that attorneys' fees of more than $43 million -- $930 per hour for <u>each</u> of the 46,744.3 hours Class Counsel reports to have spent[2] -- would somehow be insufficiently incentivizing for class counsel to vigorously pursue actions of this nature.

---

[2] In citing this figure, we do not hold that every single one of these hours was reasonable or that a reasonable client charged hourly would pay for each of these hours.

A $43.48 million fee award, which yields a lodestar multiplier of 1.65 given a lodestar of $26,320,144, see ECF No. 2388, also fits comfortably within the range of lodestar multipliers generally observed. The mean multiplier in this Circuit is approximately 1.55, with multipliers in antitrust and securities cases recently averaging 1.77 and 1.43, respectively. See 4 William B. Rubenstein, Newberg on Class Actions § 15:89 tbls.3, 4 (5th ed.) (Westlaw 2018). While a multiplier of 1.65 is somewhat lower than the average multipliers observed for settlements of this size (one study identifies an average multiplier of 3.18 for settlements above $175.5 million and a second study identifies an average multiplier of 2.39 for settlements above $44.6 million, id. § 15:89 tbl.2), the multiplier in this case is almost certain to increase if OTC plaintiffs' settlements with Deutsche Bank and HSBC are finally approved and any additional award of fees is made accordingly.

OTC plaintiffs' lodestar amount through July 27, 2017 is $26.32 million, having increased from $8.34 million as of November 11, 2015. The Deutsche Bank and HSBC settlements were reached in quick succession in February 2018, only slightly more than six months after the Citi settlement. Accordingly, while a comparable percentage fee award in the Deutsche Bank and HSBC settlements will substantially increase the numerator of the lodestar multiplier, the lodestar base -- the denominator of the lodestar

11

multiplier -- is unlikely to have increased to a similar extent between July 2017 and February 2018, thereby substantially increasing the lodestar multiplier itself.[3]

## V. CONCLUSION

OTC plaintiffs' motions for attorneys' fees, litigation expenses, and incentive awards as to the Barclays settlement (ECF No. 2278 and ECF No. 312 in Case 11 Civ. 5450) and as to the Citi settlement (ECF No. 2386 and ECF No. 353 in Case 11 Civ. 5450) are granted in part and denied in part. OTC plaintiffs are awarded $14,855,689.55 in reimbursement for litigation expenses incurred through July 27, 2017.[4] The Mayor and City Council of Baltimore, Maryland; the City of New Britain, Connecticut; Yale University; Vistra Energy Corp.; and Jennie Stuart Medical Center, Inc. are each awarded $25,000 as an incentive award for a total of $125,000 across those five plaintiffs.[5] OTC plaintiffs' counsel are awarded $43,478.572.43 in attorneys' fees,[6] representing 18.5 percent of

---

[3] Put differently, to the extent OTC plaintiffs include hours expended prior to July 27, 2017 in the lodestar base as part of a subsequent application for fees, the fees awarded by this order will also be taken into account in calculating the resulting lodestar multiplier.

[4] Of this amount, $656,337.64 will be paid from the Barclays settlement fund and $14,199,351.91 will be paid from the Citi settlement fund.

[5] Of each award, $12,000 will be paid from the Barclays settlement fund ($60,000 total), and $13,000 will be paid from the Citi settlement fund ($65,000 total).

[6] Of this amount, $22,067,477.53 will be paid from the Barclays settlement fund and $21,411,094.90 will be paid from the Citi settlement fund, a pro rata allocation of the attorneys' fee award across the settlement funds net of expense reimbursements and incentive awards. We do not prescribe how this amount is to be divided among the (surprisingly) numerous firms who have participated in the representation of OTC plaintiffs and the class.

the aggregate settlement fund across the two settlements net of expenses and incentive awards.

**SO ORDERED.**

Dated:   New York, New York
         August 14, 2018

                                             /s/ Naomi Reice Buchwald
                                             NAOMI REICE BUCHWALD
                                             UNITED STATES DISTRICT JUDGE