# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION | MDL No. 2262 |
| THIS DOCUMENT RELATES TO: | Master File No. 1:11-md-2262-NRB ECF Case |
| The OTC Action | Honorable Naomi R. Buchwald |

## MEMORANDUM OF LAW IN SUPPORT OF OTC PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS WITH DEUTSCHE BANK AKTIENGESELLSCHAFT AND HSBC BANK PLC

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................. 1

II.   BACKGROUND ............................................................................................... 2

   A.   PROCEDURAL HISTORY ............................................................................ 2

   B.   CLASS NOTICE ....................................................................................... 2

III.   ARGUMENT .................................................................................................... 4

   A.   THE SETTLEMENTS SHOULD BE FINALLY APPROVED. ........................... 4

      1.   *The Settlements are Presumptively Fair, Reasonable, and Adequate* ........................... 5

      2.   *The Grinnell Factors Support Final Approval of the Settlements* ................................. 6

         a.   The Complexity, Expense, and Likely Duration of the Litigation (Factor 1)............. 6

         b.   The Reaction of the Classes to the Settlements (Factor 2) ........................................ 8

         c.   The Stage of the Proceedings (Factor 3) ................................................................... 9

         d.   The Risks of Establishing Liability and Damages (Factors 4 and 5)........................ 9

         e.   The Risks of Maintaining the Class Action through Trial (Factor 6) ...................... 11

         f.   The Ability of Defendants to Withstand a Greater Judgment (Factor 7)................. 11

         g.   The Reasonableness of the Settlements in Light of the Best Possible Recovery and the Attendant Risks of Litigation (Factors 8 and 9)............................................. 12

   B.   THE COURT SHOULD CERTIFY THE SETTLEMENT CLASSES ............................... 13

   C.   THE COURT SHOULD APPOINT OTC PLAINTIFFS' COUNSEL AS COUNSEL FOR THE CLASSES ................................................................................................ 14

   D.   NOTICE TO THE CLASSES COMPORTED WITH RULE 23 AND DUE PROCESS........................ 14

      1.   *Notice Was the Best Practicable Under the Circumstances* ......................................... 15

      2.   *The Notice "Fairly Apprised" Potential Class Members of the Settlements and Their Options* ................................................................................................ 16

   E.   THE PLAN OF DISTRIBUTION SHOULD BE FINALLY APPROVED. ......................... 17

IV.   CONCLUSION............................................................................................... 20

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.*,
　271 F. App'x 41 (2d Cir. 2008) ...........................................................15

*In re "Agent Orange" Prod. Liab. Litig.*,
　597 F. Supp. 740 (E.D.N.Y. 1984) ......................................................12

*Allen v. Dairy Farmers of Am., Inc.*,
　No. 5:09-CV-230, 2011 WL 1706778 (D. Vt. May 4, 2011) ...................5

*In re Am. Bank Note Holographics, Inc.*,
　127 F. Supp. 2d 418 (S.D.N.Y. 2001) ..................................................19

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
　293 F.R.D. 459 (S.D.N.Y. 2013) ...........................................................4

*In re AOL Time Warner, Inc.*,
　No. 02 CIV. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ............................9, 13

*In re Austrian and German Bank Holocaust Litig.*,
　80 F. Supp. 2d 164 (S.D.N.Y. 2000).......................................................5

*In re Bear Stearns Companies, Inc. Secs., Derivative, and ERISA Litig.*,
　909 F. Supp. 2d 259 (S.D.N.Y. 2012)..................................................8, 12

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
　258 F. Supp. 2d 254 (S.D.N.Y. 2003).....................................................8

*Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.*,
　No. 85 CIV. 3048 (JMW), 1987 WL 7030 (S.D.N.Y. Feb. 13, 1987) ...................10

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
　MDL No. 1917, 2015 WL 9266493 (N.D. Cal. Dec. 17, 2015) .............13

*Charron v. Pinnacle Grp. N.Y. LLC*,
　874 F. Supp. 2d 179 (S.D.N.Y. 2012), *aff'd sub nom.*, *Charron v. Wiener*, 731
　F.3d 241 (2d Cir. 2013)........................................................................10

*In re Citigroup Inc. Sec. Litig.*,
　965 F. Supp. 2d 369 (S.D.N.Y. 2013)......................................................7

*City of Detroit v. Grinnell Corp.*,
　495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds, Goldberger v.
　Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ...............................6, 12

*In re Corrugated Container Antitrust Litig.*,
  659 F.2d 1322 (5th Cir. 1981) ..................................................................12

*In re Corrugated Container Antitrust Litig.*,
  No. MDL 310, 1981 WL 2093 (S.D. Tex. June 4, 1981) ........................13

*In re Credit Default Swaps Antitrust Litig.*,
  No. 13MD2476 (DLC), 2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016)............15, 18

*In re Currency Conversion Fee Antitrust Litig.*,
  263 F.R.D. 110 (S.D.N.Y. 2009) .................................................................9

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001)...........................................................................5

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974)....................................................................................14

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  No. 02-CV-3400 (CM) (PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)..........5

*Gelboim v. Bank of America Corp.*,
  823 F.3d 759 (2d Cir. 2016)..........................................................................9

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) .....................................................7, 10, 19

*In re IMAX Securities Litig.*,
  283 F.R.D. 178 (S.D.N.Y. June 20, 2012)...............................................6, 11

*In re Initial Pub. Offering Sec. Litig.*,
  226 F.R.D. 186 (S.D.N.Y. 2005) ................................................................13

*In re Ionosphere Clubs, Inc.*,
  156 B.R. 414 (S.D.N.Y. 1993).....................................................................12

*Jermyn v. Best Buy Stores, L.P.*,
  No. 08 CIV. 00214 CM, 2010 WL 5187746 (S.D.N.Y. Dec. 6, 2010) .............15

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ..................................................................6

*Massiah v. MetroPlus Health Plan, Inc.*,
  No 11 CV 05669, 2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012) ...........12

*In re NASDAQ Market-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) ................................................7, 8, 10, 11, 12

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D 104 (S.D.N.Y. 1997). ........................................................................5

*Park v. The Thomson Corp.*,
    No. 05 CIV. 2931 (WHP), 2008 WL 4684232 (S.D.N.Y. Oct. 22, 2008).............10

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    986 F. Supp. 2d 207 (E.D.N.Y. 2013), *rev'd and vacated on other grounds*,
    827 F.3d 223 (2d Cir. 2016)........................................................................7, 10

*In re Platinum and Palladium Commodities Litig.*,
    No. 10 CV 3617, 2014 WL 3500655, at *3 (S.D.N.Y. Jul. 15, 2014)....................19

*Precision Assocs. v. Panalpina World (Holding) Transp. Ltd.*,
    No. 08-CV-42 (JG) (VVP), 2013 WL 4525323 (E.D.N.Y. Aug. 27, 2013)..........13

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
    584 F. Supp. 2d 697 (M.D. Pa. 2008) ................................................................11

*Sykes v. Harris*,
    09 CIV. 8486 (DC), 2016 WL 3030156 (S.D.N.Y. May 24, 2016) .....................17

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008)..................................................................5

*In re Veeco Instruments Inc. Sec. Litig.*,
    No. 05 MDL 01695 (CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ..........6, 19

*Virgin Atl. Airways Ltd. v. British Airways PLC*,
    257 F.3d 256 (2d Cir. 2001)................................................................................7

*In re Vitamin C Antitrust Litig.*,
    No. 06-MD-1738 BMC JO, 2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) .................7, 15, 16

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)................................................................*passim*

*Weber v. Gov't Emps. Ins. Co.*,
    262 F.R.D. 431 (D.N.J. 2009)...........................................................................11

*Weseley v. Spear, Leeds & Kellogg*,
    711 F. Supp. 713 (E.D.N.Y. 1989) .....................................................................7

**Rules**

Fed. R. Civ. P. 23 ...............................................................................*passim*

Pursuant to Federal Rule of Civil Procedure 23(c), (e), and (g), OTC Plaintiffs, by and through their counsel, Susman Godfrey LLP and Hausfeld LLP (together, "Co-Lead Counsel"), respectfully submit this Memorandum of Law in Support of their Motion for Final Approval of Settlements with Deutsche Bank Aktiengesellschaft ("Deutsche Bank") and HSBC Bank plc ("HSBC"), requesting final approval of the Settlements, final approval of the joint plan of distribution, final approval of the joint notice disseminated to class members, certification of the Settlement Classes, and appointment of Hausfeld LLP and Susman Godfrey LLP as Co-Lead Counsel for the Settlement Classes.

## I.    INTRODUCTION

Subject to this Court's approval, OTC Plaintiffs, on behalf of the Settlement Classes, have agreed to settle all claims against Deutsche Bank and HSBC in exchange for cash payments of $240,000,000 and $100,000,000 respectively, and cooperation from both banks.

This is a very favorable result given the many inherent risks in litigation. Indeed, members of the Settlement Classes – sophisticated investors – have resoundingly supported the Settlements.[1] The Claims Administrator has not received a single objection, and only two class members have so far requested exclusion from the Settlement Classes. The money that will be distributed to members of the Settlement Classes making claims will be substantial, and because OTC Plaintiffs' and Settlement Class members' claims against the non-settling defendants remain intact, they will have the ability to recover more of their losses in future settlements.[2]

---

[1]     Unless otherwise defined herein, all capitalized terms have the meaning ascribed to them in the Settlement Agreement Between OTC Plaintiffs and Deutsche Bank Aktiengesellschaft, dated February 6, 2018 (the "Deutsche Bank Settlement"), and the Settlement Agreement Between OTC Plaintiffs and HSBC Bank plc, dated February 15, 2018 (the "HSBC Settlement," and together with the Deutsche Bank Settlement, the "Settlements").

[2]     Members of the Settlement Classes also had the ability to claim funds from the previously approved settlements with Barclays and Citi and would have the right to share in proceeds from any future settlements or any recoveries at trial.

For several reasons, and as demonstrated below, the relief requested in the motion is appropriate. <u>First</u>, the Settlements are an excellent result; are fair, reasonable and adequate under the governing standards in this Circuit; and warrant final approval. <u>Second</u>, joint notice to potential members of the Settlement Classes complied with Rule 23 and due process, such that it also warrants final approval. <u>Third</u>, the proposed Settlement Classes meet all of the requirements of Rule 23 such that the Court should certify them for purposes of these Settlements. <u>Fourth</u>, Co-Lead Counsel has diligently prosecuted this complex class action and should be appointed as Co-Lead Counsel for the Settlement Classes. <u>Finally</u>, the joint Plan of Distribution, which distributes funds on a pro rata basis, is a fair, reasonable, and rational method for distributing the Net Settlement Funds to the Settlement Classes and also warrants final approval.

## II.  BACKGROUND

### A.  Procedural History

On April 5, 2018, the Court granted preliminary approval to the Settlements and granted OTC Plaintiffs' request to appoint Kenneth Feinberg as the Settlement Administrator, Rust Consulting, Inc. as the Claims Administrator, and Huntington National Bank as the Escrow Agent. ECF Nos. 2480, 2481. On June 21, 2018, the Court found that the proposed joint notice plan "constitute[d] the best notice practicable under the circumstances," and preliminarily approved the joint plan of distribution. ECF No. 2579. The Court subsequently approved two minor modifications to the joint notice plan. ECF No. 2597.

### B.  Class Notice

As described in greater detail below, notice was provided to potential members of the Settlement Classes in compliance with the approved joint notice plan and joint amended notice plan. This consists of notice in three ways: Direct Notice, Publication Notice, and Internet Notice.

**Direct Notice.** OTC Plaintiffs provided direct notice to every potential class member that could be identified through reasonable efforts. First, OTC Plaintiffs sent direct notice to 6,439 potential Deutsche Bank and HSBC counterparty addresses and 41,584 potential class members' addresses that were obtained from the business records of other Defendants.[3] Rabe Decl. ¶ 6 n. 1; Wheatman Decl. ¶ 17. Second, Credit Suisse AG agreed to give direct notice to their own counterparties. Rabe Decl. ¶ 7 n. 2; Wheatman Decl. ¶ 17.[4] Third, OTC Plaintiffs furnished direct notice to mailing lists comprising 24,123 institutional investors (including insurance companies, pension funds, hedge funds, and banks) and 66,946 state, city, and county government offices that are likely to be potential class members. Rabe Decl. ¶ 7 n. 1; Wheatman Decl. ¶ 17. Consistent with the Court's orders, direct notice was dispatched to potential members of the Settlement Classes on July 23, 2018. Rabe Decl. ¶ 11.

**Publication Notice.** Between August 13 and August 29, OTC Plaintiffs transmitted and will transmit Publication Notice in 4 national newspapers, 2 business magazines, and 6 trade magazines. Wheatman Decl. ¶¶ 20-25, Ex. 1. These publications include *The Economist*; *Bloomberg Businessweek*; *Pensions & Investments*; *Financial Times*; and *The Wall Street Journal*. *Id.* In addition, on July 30, 2018, OTC Plaintiffs disseminated notice through a global press release distributed through Business Wire to key financial and business media, with coverage of newspapers, television, radio, news agencies, analysts and business publications/editors throughout the world, using a variety of platforms and aggregators including AP Mobile, Yahoo!

---

[3]     Barclays; Citi; JPMorgan Chase; RBC; Bank of America; and UBS.
[4]     Every live Defendant in the OTC Action has cooperated with OTC Plaintiffs in sending notice to potential members of the Settlement Classes. As to the dismissed Defendants, on February 3, 2017, OTC Plaintiffs informed the Court that several defendants dismissed for lack of personal jurisdiction refused to produce their counterparty addresses. ECF No. 1764. Plaintiffs asked for an order compelling defendants to produce that data, should the Court deem that necessary for notice of the Barclays Settlement. No such order was issued.

Finance and Viigo. *Id.* ¶ 31.

**Internet Notice.** Internet Notice provided potential Class Members with additional notice opportunities. The Internet Notice was allocated to maximize gross impressions[5] through various targeted websites (*e.g.*, LinkedIn, Traders Magazine Online News, and CFA Institute Website). *Id.* ¶¶ 26-30, Ex. 3.

**Settlement Website.** On July 23, 2018, OTC Plaintiffs also established the Settlement Website[6] to enable members of the Settlement Classes to obtain all information about the Settlements and to file a claim electronically. Rabe Decl. ¶¶ 16-17[7] As of August 22, 2018, the Settlement Website has had 115,428 unique visitors, who have downloaded the notice 317 times and submitted 80 claims. *Id.* ¶ 17.

This complied with all aspects of the approved joint notice plan. Rabe Decl. ¶¶ 1-2, 6-21, Ex. A; Wheatman Decl. ¶¶ 1-3, 13-40, Exs. 1-4.

## III.   ARGUMENT

### A.   The Settlements Should Be Finally Approved.

Rule 23(e) provides that the Court should grant final approval to a class action settlement if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making this determination, the Court should consider both the procedural and substantive fairness of the settlement. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *In re Am. Int'l Grp., Inc. Sec. Litig.*, 293 F.R.D. 459, 464 (S.D.N.Y. 2013). Public policy favors the settlement of disputed claims

---

[5]     Gross impressions are the total number of times a media outlet containing the Notice is seen. This figure does not represent the total number of unique viewers of the Notice, as some viewers/readers will see the Notice in more than one media outlet. Wheatman Decl. ¶ 28 n. 8.

[6]     https://USDollarLiborSettlement.com/mainpage/DeutscheBankHSBC/Home.aspx.

[7]     All notices referred potential members of the Settlement Classes to that website so that they could obtain information about the Settlements and to make a claim electronically. Rabe Decl. Ex. A; Wheatman Decl. ¶ 37.

among private litigants, particularly in class actions. *See Wal-Mart*, 396 F.3d at 116-17; *Allen v. Dairy Farmers of Am., Inc.*, No. 5:09-CV-230, 2011 WL 1706778, at *2 (D. Vt. May 4, 2011).

### 1. *The Settlements are Presumptively Fair, Reasonable, and Adequate*

Where a settlement is the "product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation," the settlement enjoys a "presumption of fairness." *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000); *see also Wal-Mart*, 396 F.3d at 116. Indeed, in such circumstances, "'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997); *see also In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008). That is precisely the case here. The Settlements were reached after extended, frank, and contentious negotiations over the course of more than eighteen months, including a mediation session and negotiations conducted under the guidance of the Honorable Layn R. Phillips.[8] The involvement of a mediator strengthens the presumption of fairness. *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM) (PED), 2010 WL 4537550, at *14 (S.D.N.Y. Nov. 8, 2010) (noting that the "presumption in favor of the negotiated settlement in this case is strengthened by the fact that settlement was reached in an extended mediation"); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[A] mediator's involvement . . . helps to ensure that the proceedings were free of collusion and undue pressure.").

Moreover, the named OTC Plaintiffs played an active role in the litigation and support the Settlements. These OTC Plaintiffs are highly sophisticated entities, such as Yale University and

---

[8]     For a more extended discussion of the procedural history of this case, including a summary of the claims, the settlement negotiations, and the terms of the Settlements, the OTC Plaintiffs hereby incorporate by reference the Declarations of Hilary K. Scherrer, filed with the motions for preliminary approval. ECF Nos. 2450, 2474.

Baltimore. OTC Plaintiffs' involvement further supports the presumption of fairness. *See In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007) (noting that a settlement reached "under the supervision and with the endorsement of a sophisticated institutional investor . . . is entitled to an even greater presumption of reasonableness.") (internal citation omitted).

### 2.   The Grinnell Factors Support Final Approval of the Settlements

The Settlements are also substantively fair, reasonable, and adequate. The Second Circuit has identified nine factors the courts should examine when considering whether to grant final approval to a proposed class settlement (the "*Grinnell* factors"):

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). As demonstrated below, the Settlements amply satisfy the *Grinnell* factors.[9]

### a.   The Complexity, Expense, and Likely Duration of the Litigation (Factor 1)

Courts in this Circuit have frequently remarked that antitrust cases readily meet the first

---

[9]   "[N]ot every factor must weigh in favor of settlement[;] rather [a] court should consider the totality of these factors in light of the particular circumstances." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. 2012) (internal citation and quotation omitted). And in reviewing a settlement, a court "should not attempt to approximate a litigated determination of the merits of the case lest the process of determining whether to approve a settlement simply substitute one complex, time consuming and expensive litigation for another." *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 138 (S.D.N.Y. 2010) (internal citation and quotation omitted).

*Grinnell* factor. *See In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 BMC JO, 2012 WL 5289514, at *4 (E.D.N.Y. Oct. 23, 2012) ("Federal antitrust cases are complicated, lengthy, and bitterly fought, as well as costly.") (internal citations and quotation omitted); *see also Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 263 (2d Cir. 2001); *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 719 (E.D.N.Y. 1989). This is because "the more complex, expensive, and time consuming the future litigation, the more beneficial settlement becomes as a matter of efficiency to the parties and to the Court." *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 381-82 (S.D.N.Y. 2013) (internal citation and quotation omitted).

This case fits comfortably in that rule. OTC Plaintiffs first brought this action more than seven years ago, and since then, they have persevered through multiple rounds of motion to dismiss briefing and a contentious appeal to the Supreme Court and back; reviewed more than 1.1 million documents produced in discovery and over 6,000 audio files; obtained an order certifying the OTC Plaintiffs' antitrust claims against the live Defendants; and have fully briefed a pending appeal in the Second Circuit. Although OTC Plaintiffs are resoundingly confident in their claims, there can be little doubt that, absent the Settlements, Deutsche Bank and HSBC would have mounted robust defenses in future stages of the litigation, including trial. At each stage, the losing party would have likely sought to appeal, resulting in further expense and delay. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 212 n.13 (E.D.N.Y. 2013), *rev'd and vacated on other grounds*, 827 F.3d 223 (2d Cir. 2016) ("*Interchange*") ("In the *Wal-Mart* case, twenty months elapsed between the order certifying the class and the Second Circuit's divided opinion affirming that decision."); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998) ("*NASDAQ III*") (estimating that trial could consume over a year); *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004) (citing the

same considerations and finally approving a partial settlement).

In short, "[t]here can be no doubt that this class action would be enormously expensive to continue, [and] extraordinarily complex to try," *NASDAQ III*, 187 F.R.D. at 477, and the $240 million and $100 million all-cash Settlements at this juncture result in an immediate and substantial recovery without the expense and delay of continued litigation, a trial, and likely appeals, as to Deutsche Bank and HSBC. *See Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[T]he passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery"). OTC Plaintiffs respectfully submit that the Court should find that this factor weighs in favor of the proposed Settlements.

### b. The Reaction of the Classes to the Settlements (Factor 2)

As described above, potential members of the Settlement Classes were provided direct, publication, and internet notice of the Settlements. Rabe Decl. ¶¶ 1-2, 6-21, Ex. A; Wheatman Decl. ¶¶ 1-3, 13-40, Exs. 1-4. The various forms of notice explain, in clear and concise language, the legal options and monetary benefits available to class members under the Settlements and were created with the help of a leading expert in the form and content of notice. Wheatman Decl. ¶¶ 4-6, 35-40. While the deadline set by the Court for members of the Settlement Classes to object to the Settlements or exclude themselves from the Settlement Classes has not yet passed, to date, no objections and only two requests for exclusion have been received. Rabe Decl. ¶¶ 20-21. This is a significant factor weighing in favor of final approval. *E.g.*, *In re Bear Stearns Cos., Inc. Sec., Derivative, and ERISA Litig.*, 909 F. Supp. 2d 259, 266-67 (S.D.N.Y. 2012); *Wal-Mart*, 396 F.3d at 118 ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.") (internal citation and quotation omitted).

### c.      The Stage of the Proceedings (Factor 3)

There can be little doubt that OTC Plaintiffs "have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006). First, the parties have been litigating this action for more than seven years and have received numerous lengthy rulings from the Court on the viability of their claims, *see* ECF Nos. 286, 389, 568, 1164, 1234; have briefed and argued the viability of the antitrust claim in the Second Circuit and are now in the midst of briefing personal jurisdiction issues in the Second Circuit; *see Gelboim v. Bank of Am. Corp.*, 823 F.3d 759 (2d Cir. 2016); *In Re Libor-Based Fin. Instruments Antitrust Litig.*, No. 17-1569 (2d Cir.); have briefed an amicus filing to the Supreme Court on appellate jurisdiction in *Gelboim*, *see* Brief amici curiae of Mayor and City Council of Baltimore, *Gelboim v. Bank of Am. Corp.*, Nos. 13-3565, 13-3566 (S. Ct. Sept. 5, 2014); and have obtained an order certifying OTC Plaintiffs' antitrust claims against the live Defendants*, see* ECF No. 2452. Second, as discussed above OTC Plaintiffs have reviewed over a million documents and thousands of audio files. Prior to the Settlements, Co-Lead Counsel reviewed and briefed facts stemming from numerous public filings by regulators revealing in detail wrongdoing by Deutsche Bank, HSBC, and other defendants. The information gained through litigation and discovery has provided Co-Lead Counsel with a comprehensive understanding of the relative strengths and weaknesses of OTC Plaintiffs' case and supports final approval of the Settlements. *See In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 122 (S.D.N.Y. 2009) (noting the "extensive" experience of counsel in granting final approval of settlement).

### d.      The Risks of Establishing Liability and Damages
### (Factors 4 and 5)

"In assessing the Settlement[s], the Court should balance the benefits afforded the

Class[es], including the *immediacy* and *certainty* of a recovery, against the continuing risks of litigation." *Interchange*, 986 F. Supp. 2d at 224 (emphasis in original) (internal citation and quotation omitted). In so doing, the Court need not "adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement[s]." *Global Crossing*, 225 F.R.D. at 459.

Co-Lead Counsel recognized that they faced obstacles to proving liability and establishing damages in this complex case. *See Park v. The Thomson Corp.*, No. 05 CIV. 2931 (WHP), 2008 WL 4684232, at *4 (S.D.N.Y. Oct. 22, 2008) ("The complexity of Plaintiff's claims *ipso facto* creates uncertainty."); *NASDAQ III*, 187 F.R.D. at 475 (settlement approval warranted "especially in a case of this complexity and magnitude"). Deutsche Bank and HSBC have denied, and continue to deny, any wrongdoing, and "[e]stablishing otherwise [would] require considerable additional pre-trial effort and a lengthy trial." *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 199 (S.D.N.Y. 2012), *aff'd sub nom.*, *Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013); *see also Park*, 2008 WL 4684232, at *4 ("Liability is never automatic.").

And even though OTC Plaintiffs believe they would be able to establish Deutsche Bank's and HSBC's liability at trial, all antitrust cases involve risk. *See NASDAQ III*, 187 F.R.D. at 476 ("[T]he history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal."); *Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.*, No. 85 CIV. 3048 (JMW), 1987 WL 7030, at *3 (S.D.N.Y. Feb. 13, 1987) ("There is a substantial risk that the plaintiff might not be able to establish liability at all and, even assuming a favorable jury verdict, if the matter is fully litigated and appealed, any recovery would be years away."). When compared to the certainty of the significant recovery achieved by the Settlements, these considerations militate against further

litigation and support final approval of the Settlements.

### e.    The Risks of Maintaining the Class Action through Trial (Factor 6)

Although the Court certified a litigation class with respect to OTC Plaintiffs' antitrust claims, the Defendants against which the class was certified have filed an appeal pursuant to Rule 23(f). Assuming certification is upheld by the Second Circuit, the Court could nonetheless review and modify the grant of certification at any point prior to trial, such that the risk of maintaining the class through trial would never be 100% certain. *See Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 CIV 2207 JGK, 2010 WL 3119374, at *4 (S.D.N.Y. Aug. 6, 2010) ("There is no assurance of obtaining class certification through trial, because a court can re-evaluate the appropriateness of certification at anytime during the proceedings."); *see also IMAX*, 283 F.R.D. at 191 (noting that "'if insurmountable management problems were to develop at any point, class certification can be revisited at any time'" (quoting *NASDAQ III*, 187 F.R.D. at 476)). This being the case, the sixth *Grinnell* factor weighs in favor of final approval.

### f.    The Ability of Defendants to Withstand a Greater Judgment (Factor 7)

While large financial institutions ordinarily can "withstand a greater judgment,"[10] given the cooperation being provided by Deutsche Bank and HSBC, and the fact that the Settlement amounts represent a significant cash payment by the two banks, this factor also supports final approval here. *See In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008) ("[T]he benefit of obtaining the cooperation . . . tends to offset the fact that they would be able to withstand a larger judgment.").

---

[10]    "[I]n any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the instant settlement[s]." *Weber v. Gov't Emps. Ins. Co.*, 262 F.R.D. 431, 447 (D.N.J. 2009).

**g.    The Reasonableness of the Settlements in Light of the Best Possible Recovery and the Attendant Risks of Litigation (Factors 8 and 9)**

The last two *Grinnell* factors "recognize[] the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart*, 396 F.3d at 119 (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)); *see also In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984); *NASDAQ III*, 187 F.R.D. at 478. This is not a "mathematical equation yielding a particularized sum." *Massiah v. MetroPlus Health Plan, Inc.*, No 11 CV 05669 (BMC), 2012 WL 5874655, at *5 (E.D.N.Y. Nov. 20, 2012) (internal citation and quotation omitted); *see also In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 431 (S.D.N.Y. 1993). As noted in one prominent antitrust case, the "essence of a settlement is compromise. A just result is often no more than an arbitrary point between competing notions of reasonableness." *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322, 1325 (5th Cir. 1981); *see also Grinnell*, 495 F.2d at 455 n.2 ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.").

Continuing this litigation against Deutsche Bank and HSBC would necessitate the expenditure of countless hours and dollars over several more years with no guarantee that OTC Plaintiffs would ever be able to establish liability and prove damages; all of which would be required for OTC Plaintiffs to recover anything at trial. These risks are arguably dispositive for these *Grinnell* factors. *See Bear Stearns*, 909 F. Supp. 2d at 270 ("[T]he propriety of a given settlement amount is a function of both (1) the size of the amount relative to the best possible recovery; and (2) the likelihood of non-recovery (or reduced recovery).").

The Settlements' combined $340 million in compensation is an excellent result for members of the Settlement Classes. Not only will the cash amounts provide immediate monetary

benefits to Class Members, but the Settlements also preserve their right to recover the entire amount of damages against the Non-Settling Defendants based on joint and several liability (after an offset post-trebling for the settlement amounts). *See In re Corrugated Container Antitrust Litig.*, No. MDL 310, 1981 WL 2093, at *17 (S.D. Tex. June 4, 1981) (noting that partial settlements preserved plaintiffs' ability to seek the entire amount of damages from non-settling defendants weighed in favor of granting approval). That OTC Plaintiffs and the members of the Settlement Classes will receive compensation now rather than years from now, if at all, weighs strongly in favor of final approval. *See AOL Time Warner*, 2006 WL 903236, at *13 ("[T]he benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery.").

Finally, Deutsche Bank's and HSBC's obligations to provide information pursuant to the Settlement Agreements are likewise valuable to OTC Plaintiffs and the Settlement Classes even if financially unquantifiable. As the court in *In re Cathode Ray Tube (CRT) Antitrust Litigation*, MDL No. 1917, 2015 WL 9266493 (N.D. Cal. Dec. 17, 2015), recently held, the "'provision of such assistance is a substantial benefit to the classes and strongly militates toward approval of the Settlement Agreement.'" *Id.* at *6 (quoting *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003)); *see also Precision Assocs. v. Panalpina World (Holding) Transp. Ltd.*, No. 08-CV-42 (JG) (VVP), 2013 WL 4525323, at *9 (E.D.N.Y. Aug. 27, 2013); *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 197 (S.D.N.Y. 2005).

## B.      The Court Should Certify the Settlement Classes

In accordance with the Settlements, OTC Plaintiffs respectfully request that the Court certify the Settlement Classes for settlement purposes. The Deutsche Bank and HSBC Settlements both include the following settlement class definition:

> All persons or entities (other than Defendants and their employees, affiliates, parents, and subsidiaries) that purchased in the United States, directly from a

Defendant (or a Defendant's subsidiaries or affiliates), a U.S. Dollar LIBOR-Based Instrument and that owned the U.S. Dollar LIBOR-Based Instrument any time during the period August 2007 through May 2010 (the "Class Period").

Deutsche Bank Settlement ¶ 3(a); HSBC Settlement ¶ 3(a).[11] The Court recently certified a litigation class with respect to OTC Plaintiffs' antitrust claims. ECF. No. 2452. For the reasons set forth in the Court's certification opinion, *id.*, and those set forth in OTC Plaintiffs' prior motions for approval of the Settlement Classes, ECF Nos. 2448, 2472, the proposed Settlement Classes more than satisfy the requirements for certification of a settlement class.

### C. The Court Should Appoint OTC Plaintiffs' Counsel as Counsel for the Classes

Under Rule 23(g), a court that certifies a class must appoint class counsel, who is charged with fairly and adequately representing the interests of the class. *See* Fed. R. Civ. P. 23(g)(1). In determining class counsel, the Court must consider (1) the work undertaken by counsel in identifying or investigating the potential claims; (2) counsel's experience in handling class actions, other complex litigation, and similar claims; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. *See* Fed. R. Civ. P. 23(g)(1)(A).

OTC Plaintiffs' Co-Lead Counsel readily meet these requirements and should be appointed as counsel for the Settlement Classes, for the reasons set forth in the prior briefing on this issue.

### D. Notice to the Classes Comported with Rule 23 and Due Process

A notice program must satisfy both Rule 23(c)(2)(B) and Rule 23(e)(1). Rule 23(c)(2)(B) requires the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974). However, neither individual nor actual notice to every class member

---

[11]   This is the same settlement class definition as used in the Barclays and Citi settlements, which have been finally approved by the Court. ECF No. 2655.

is required; instead, "class counsel [need only] act[] reasonably in selecting means likely to inform the persons affected." *Jermyn v. Best Buy Stores, L.P.*, No. 08 CIV. 00214 CM, 2010 WL 5187746, at *3 (S.D.N.Y. Dec. 6, 2010) (citing *Weigner v. The City of New York*, 852 F.2d 646, 649 (2d Cir. 1988)); *see also In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.*, 271 F. App'x 41, 44 (2d Cir. 2008). As for Rule 23(e)(1), it requires that notice of a settlement be "reasonable" – *i.e.*, it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceeding." *Wal-Mart*, 396 F.3d at 114 (internal citation and quotation omitted). As explained below, the approved joint notice program satisfies both of these requirements and should be finally approved.

This Court approved the joint notice plan and joint amended notice plan. ECF Nos. 2579, 2597. The notice sent to potential claimants complied in all respects with the plans this Court already approved. Rabe Decl. ¶¶ 1-2, 6-21, Ex. A; Wheatman Decl. ¶¶ 1-3, 13-40, Exs. 1-4.

### 1.    *Notice Was the Best Practicable Under the Circumstances*

As described above, notice was provided to potential members of the Settlement Classes in three ways: Direct Notice, Publication Notice, and Internet Notice. Courts routinely approve notice programs that combine multiple means of notice, such as this one. *See, e.g.*, *In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *8 ("The notice was also distributed widely, through the internet, print publications, and targeted mailings. The Court concludes that the distribution of the class notice was adequate."); *In re Credit Default Swaps Antitrust Litig.*, No. 13MD2476 (DLC), 2016 WL 2731524, at *5 (S.D.N.Y. Apr. 26, 2016) ("Class Counsel mailed notice packets to each of 13,923 identified Class members. . . . The Summary Notice was also published on January 11 in several important business publications. . . . The [claims administrator] launched a website for the Settlement which posted the Settlement agreements, notices, court documents, and other

information relevant to the Settlement."); *see also* MANUAL FOR COMPLEX LITIGATION § 30.211, at 223. The Court should similarly conclude here.

### 2.   *The Notice "Fairly Apprised" Potential Class Members of the Settlements and Their Options*

The contents of a class action settlement notice must (1) "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings" and (2) be written as to "be understood by the average class member." *Wal-Mart*, 396 F.3d at 114-15 (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982), NEWBERG ON CLASS ACTIONS § 11:53, at 167 (4th ed. 2002)). "There are no rigid rules to determine whether a settlement notice satisfies constitutional or Rule 23(e) requirements . . . ." *In re Vitamin C*, 2012 WL 5289514, at *8 (internal quotation omitted); however, courts typically consider (a) "whether there has been a succinct description of the substance of the action and the parties' positions"; (b) "whether the parties, class counsel, and class representatives have been identified"; (c) "whether the relief sought has been indicated"; (d) "whether the risks of being a class member, including the risk of being bound by the judgment have been explained"; (e) "whether the procedures and deadlines for opting out have been clearly explained"; and (f) "whether class members have been informed of their right to appear in the action through counsel." *Id.* (citing *In re Payment Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720, 2008 WL 115104, at *15 (E.D.N.Y. Jan. 8, 2008)).

Dr. Wheatman, who assisted in the preparation of the notice and is a nationally recognized expert in the form and content of class notice, has concluded that (a) the Direct Notice "effectively communicate[s] information about the Settlements," and (b) the Publication Notice is "designed to capture the Class Member's attention with clear, concise, plain language," and contains plain language text providing "important information regarding the subject of the litigation, the

16

definition of the Settlement Classes . . . , and the legal rights available to Class Members," without omitting any "important or required information." Wheatman Decl. ¶¶ 4-6, 35-40. Thus, the contents of the various forms of notice "provided sufficient information for Class Members to understand the Settlement[s] and their options." *Sykes v. Harris*, 09 CIV. 8486 (DC), 2016 WL 3030156, at *10 (S.D.N.Y. May 24, 2016).

More specifically, both the Direct Notice's substance and method of dissemination to potential members of the Settlement Classes assure conveyance of the information required by Rule 23(c)(2)(B), including a plain language explanation of (a) the nature of the case, the claims and defenses, the class definition, the background of the Settlements, and how the settlement funds will be allocated upon final approval; (b) the right to opt out of the Settlement Classes, to object to the Settlements, and to appear at the Final Approval Hearing − and the processes and deadlines for doing so; and (c) the binding effect of judgment on those who do not exclude themselves from the Settlement Classes. Wheatman Decl. ¶¶ 4-6, 35-40; Rabe Decl. Ex A.

In addition, the Direct Notice contains other information, such as Co-Lead Counsel's intent to request attorneys' fees, expense reimbursement, and service awards. The direct notice also prominently features contact information for the Claims Administrator and Co-Lead Counsel, which Class Members can utilize to obtain further information, if desired. The Direct Notice also provides recipients with information on how to submit a Claim Form in order to be potentially eligible to receive a distribution from the settlement funds. Wheatman Decl. ¶¶ 4-6, 35-40; Rabe Decl. Ex A.

### E.   The Plan of Distribution Should be Finally Approved.

The relevant standards for final approval of a plan of distribution were summarized recently by Judge Cote:

> A district court has broad supervisory powers with respect to the allocation of settlement funds. The plan of allocation must meet the standards by which the settlement is scrutinized — namely, it must be fair and adequate. A plan need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel. A principal goal of a plan of distribution must be the equitable and timely distribution of a settlement fund without burdening the process in a way that will unduly waste the fund. In the case of a large class action the apportionment of a settlement can never be tailored to the rights of each plaintiff with mathematical precision. The challenge of precisely apportioning damages to victims is often magnified in antitrust cases, as damage issues in antitrust cases are rarely susceptible of the kind of concrete, detailed proof of injury which is available in other contexts.

*In re Credit Default Swaps*, 2016 WL 2731524, at *9 (internal citations and quotations omitted). The joint Plan of Distribution, which is materially identical to the plans of distribution approved by the Court for the Barclays and Citi settlements, ECF No. 2655, satisfies these requirements.

The joint Plan of Distribution was preliminarily approved by the Court on June 21, 2018, ECF No. 2579, and calculates, for each Class Member's instrument(s), the claimant's "overall notional stake" as the sum of the "suppressed daily underpayments."[12] The suppressed daily underpayments for each instrument are calculated as follows:

> For each day during the class period when the Claimant had the right to be paid or to receive interest based upon the U.S. Dollar LIBOR rate, the suppressed daily underpayment equals: the dollar amount of the LIBOR-based payment that was due to the Claimant that day (using historical reported LIBOR rates and payment frequency) multiplied by the magnitude of suppression applicable for that day and then divided by the historical reported LIBOR rate for that day.

Hausfeld Decl. ¶ 14. The Plan of Distribution proposes a pro rata distribution that is similar in structure to the plans of distribution that have been approved to apportion settlement proceeds in other financial instrument contexts. *See*, *e.g.*, *In re Credit Default Swaps*, 2016 WL 2731524, at *4 ("The Plan determines the amount to be paid on each Class member's claim through three main steps: (1) identifying qualifying Covered Transactions; (2) estimating the amount of bid/ask spread

---

[12]    Plaintiffs retained Dr. Bernheim to create a model that estimates the "suppressed daily underpayments" for each day and each tenor during the class period.

inflation resulting from the Dealer Defendants' alleged conduct with respect to each Covered Transaction; and (3) calculating each claimant's recovery based on its *pro rata* share of the available Settlement Funds in relation to the recoveries to which all claimants who have submitted a valid claim are entitled."); *Veeco*, 2007 WL 4115809, at *14 ("Each valid claim will then be calculated so that each authorized claimant will receive, on a proportionate basis, the share of the net settlement fund that the claimant's recognized loss bears to the total recognized loss of all authorized claimants."); *Global Crossing*, 225 F.R.D. at 462 ("Pro-rata distribution of settlement funds based on investment loss is clearly a reasonable approach."); *In re Platinum and Palladium Commodities Litig.*, No. 10 CV 3617, 2014 WL 3500655, at *3 (S.D.N.Y. Jul. 15, 2014) (allocations based on artificiality on each trading day).

In addition, Co-Lead Counsel believe that the Plan of Distribution provides a fair and reasonable method to equitably allocate the Net Settlement Funds among members of the Settlement Classes who suffered losses as a result of the conduct alleged in this litigation, and their opinion is entitled to "considerable weight" by the Court. *See In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 430 (S.D.N.Y. 2001) ("As with other aspects of the settlement, the opinion of experienced and informed counsel is entitled to considerable weight.").

Additionally, although unnecessary, Co-Lead Counsel engaged independent allocation counsel, which met at arm's length and endorsed pro rata distribution of the settlement funds. Hausfeld Decl. ¶ 15.

Because the joint Plan of Distribution represents a fair and equitable method for allocating the settlement funds among Settlement Class Members who submit valid claims, it merits final approval from the Court.

## IV.     CONCLUSION

For the foregoing reasons, OTC Plaintiffs respectfully request the Court grant final approval to the Deutsche Bank and HSBC Settlements, certify the Settlement Classes; grant final approval to the joint Plan of Distribution; find that joint notice to the Settlement Classes comports with due process; and appoint Susman Godfrey and Hausfeld as counsel for the Settlement Classes.

Dated: August 24, 2018

/s/ Michael D. Hausfeld

Michael D. Hausfeld
Hilary Scherrer
Nathaniel C. Giddings
HAUSFELD LLP
1700 Street NW, Suite 650
Washington, DC 20006
Telephone: 202-540-7200
Email: mhausfeld@hausfeldllp.com
Email: hscherrer@hausfeldllp.com
Email: ngiddings@hausfeldllp.com

Scott Martin
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Telephone: 646-357-1100
Email: smartin@hausfeldllp.com

Gary I. Smith, Jr.
HAUSFELD LLP
325 Chestnut Street, Suite 900
Philadelphia, PA 19106
Telephone: 215-985-3270
gsmith@hausfeld.com

/s/ William Christopher Carmody

William Christopher Carmody
Arun Subramanian
Seth Ard
Geng Chen
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019
Telephone: 212-336-3330
Email: bcarmody@susmangodfrey.com
Email: asubramanian@susmangodfrey.com
Email: sard@susmangodfrey.com
Email: gchen@susmangodfrey.com

Marc M. Seltzer
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars
Los Angeles, California 90067-6029
Telephone: 310-789-3100
Email: mseltzer@susmangodfrey.com
Email: gbridgman@susmangodfrey.com

Barry Barnett
Michael C. Kelso
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone: 713-651-9366
Email: bbarnett@susmangodfrey.com
Email: mkelso@susmangodfrey.com

*Co-Lead Counsel for the Over-the-Counter Class*