**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION | MDL No. 11-md-2262 (NRB) |
| THIS DOCUMENT RELATES TO: | |
| The OTC Action | No. 11-cv-5450 |

**MEMORANDUM IN SUPPORT OF OTC PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

BACKGROUND ...................................................................................................................2

ARGUMENT .........................................................................................................................3

I.    Class Counsel's Fee Request Is Fair and Reasonable...........................................3

      A.    Class Counsel Are Entitled to Fees from the Common Fund................................3

      B.    The Requested Fee Is Fair and Reasonable Under the Percentage
            Method ...................................................................................................................4

      C.    The Requested Fee Is Reasonable Under Lodestar "Crosscheck"........................9

      D.    The Goldberger Factors Support the Requested Fee Award ...............................13

            1.    Time & Labor Expended by Counsel (Goldberger Factor 1) ...................14

            2.    Magnitude & Complexity of the Litigation (Goldberger Factor
                  2) ..............................................................................................................16

            3.    Risk of the Litigation (Goldberger Factor 3) ...........................................17

                  a.    Contingency Risk........................................................................17

                  b.    Liability Risk ..............................................................................19

                  c.    Damages Risk ..............................................................................20

            4.    Quality of the Representation (Goldberger Factor 4) ...............................21

            5.    Requested Fee in Relation to the Settlement (Goldberger
                  Factor 5)....................................................................................................22

            6.    Public Policy Considerations (Goldberger Factor 6)................................22

II.   Class Counsel's Request for Reimbursement of Litigation Expenses Is
      Reasonable ...........................................................................................................23

CONCLUSION.....................................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anwar v. Fairfield Greenwich Ltd.*,
2012 WL 1981505 (S.D.N.Y. June 1, 2012) .........................................................22

*Athale v. Sinotech Energy Ltd.*,
2013 WL 11310686 (S.D.N.Y. Sept. 4, 2013)......................................................20

*Beckman v. KeyBank N.A.*,
293 F.R.D. 467 (S.D.N.Y. 2013) ..........................................................................11

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)..................................................................................................4

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)..............................................................................17, 18

*City of Providence v. Aeropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014) .........................................................19

*Fleisher v. Phoenix Life Ins. Co.*,
2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015)................................................ *passim*

*Gierlinger v. Gleason*,
160 F.3d 858 (2d Cir. 1998)...................................................................................10

*Goldberger v. Integrated Resources, Inc.*,
209 F.3d 43 (2d Cir. 2000)...................................................................... *passim*

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)................................................................................................21

*Hicks v. Stanley*,
2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ......................................................22

*Hyun v. Ippudo USA Holdings*,
2016 WL 1222347 (S.D.N.Y. Mar. 24, 2016) ........................................................7

*In re Air Cargo Shipping Servs. Antitrust Litig.* (*Air Cargo I*),
2009 WL 3077396 (E.D.N.Y. Sept. 25, 2009) .......................................................6

*In re Air Cargo Shipping Servs. Antitrust Litig.* (*Air Cargo II*),
2011 WL 2909162 (E.D.N.Y. July 15, 2011).........................................................5

*In re Air Cargo Shipping Servs. Antitrust Litig.* (*Air Cargo III*),
2012 WL 3138596 (E.D.N.Y. Aug. 2, 2012) .................................................5

*In re Air Cargo Shipping Servs. Antitrust Litig.* (*Air Cargo IV*),
2015 WL 5918273 (E.D.N.Y. Oct. 9, 2015) ...........................................5, 22

*In re Air Cargo Shipping Servs. Antitrust Litig.* (*Air Cargo V*),
No. 06-md-1775 (E.D.N.Y. Oct. 25, 2016) ...............................................5

*In re Automotive Parts Antitrust Litig.* (*Auto Parts I*),
No. 12-cv-0103 (E.D. Mich. Dec. 5, 2016) ..............................................5

*In re Automotive Parts Antitrust Litig.* (*Auto Parts II*),
2017 WL 3525415 (E.D. Mich. July 10, 2017) ......................................5, 13

*In re Bank of Am. Corp. Secs., Derivatives & ERISA Litig.*,
2013 WL 12091355 (S.D.N.Y. Apr. 8, 2013) ...........................................23

*In re Beacon Assocs. Litig.*,
2013 WL 2450960 (S.D.N.Y. May 9, 2013) ............................................18

*In re Citigroup Inc. Bond Litig.*,
988 F. Supp. 2d 371 (S.D.N.Y. 2013) ....................................................23

*In re Colgate-Palmolive Co. ERISA Litig.*,
36 F. Supp. 3d 344 (S.D.N.Y. 2014) ....................................7, 8, 11, 13

*In re Continental Ill. Secs. Litig.*,
962 F.2d 566 (7th Cir. 1992) .................................................................9

*In re Credit Default Swaps Antitrust Litig.*,
2016 WL 2731524 (S.D.N.Y. April 26, 2016) ....................................11, 23

*In re CRT Antitrust Litig.* (*CRT I*),
2016 WL 183285 (N.D. Cal. Jan. 14, 2016) ...........................................5

*In re CRT Antitrust Litig.* (*CRT II*),
No. 07-cv-5944 (N.D. Cal. June 8, 2017) ...............................................6

*In re Deutsche Telekom AG Secs. Litig.*,
2005 WL 7984326 (S.D.N.Y. June 14, 2005) ...........................................7

*In re Domestic Drywall Antitrust Litig.*,
No. 13-md-2437 (E.D. Pa. July 17, 2018) ...............................................5

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
2010 WL 4537550 (S.D.N.Y. 2010) .......................................................20

*In re Glob. Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................10

*In re High-Crush Ptrs. L.P. Secs. Litig.*,
   2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ......................................................17

*In re IMAX Sec. Litig.*,
   No. 06-cv-6128, 2012 WL 3133476 (S.D.N.Y. Aug. 1, 2012)................................2

*In re Initial Public Offering Secs. Litig.*,
   671 F. Supp. 2d 467 (S.D.N.Y. 2009)................................................................7, 23

*In re Lithium Ion Batteries Antitrust Litig.*,
   No. 13-md-2420 (N.D. Cal.) ..................................................................................5

*In re Lloyd's Am. Trust Fund Litig.*,
   2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ....................................................11

*In re Municipal Derivatives Antitrust Litig.* (*Muni Derivatives I*),
   No. 08-cv-2516 (S.D.N.Y. Dec. Oct. 7, 2011) ......................................................6

*In re Municipal Derivatives Antitrust Litig.* (*Muni Derivatives II*),
   No. 08-cv-2516 (S.D.N.Y. Dec. 14, 2012) ............................................................6

*In re Municipal Derivatives Antitrust Litig.* (*Muni Derivatives III*),
   No. 08-cv-2516 (S.D.N.Y. June 6, 2014) ..............................................................6

*In re Municipal Derivatives Antitrust Litig.* (*Muni Derivatives IV*),
   No. 08-cv-2516 (S.D.N.Y. July 8, 2016) ..............................................................6

*In re NASDAQ Market-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) ........................................................................21

*In re Online DVD Rental Antitrust Litig.*,
   2011 WL 5883772 (N.D. Cal. Nov. 23, 2011) ....................................................18

*In re Online DVD Rental Antitrust Litig.*,
   No. 09-md-2029 (N.D. Cal. Sept. 2, 2011)......................................................18, 19

*In re Priceline.com, Inc. Secs. Litig.*,
   2007 WL 2115592 (D. Conn. July 20, 2007) ........................................................7

*In re Processed Egg Prods. Antitrust Litig.* (*Processed Egg I*),
   2012 WL 5471481 (E.D. Pa. Nov. 9, 2012)..........................................................7

*In re Processed Egg Prods. Antitrust Litig.* (*Processed Egg II*),
   No. 08-md-2002 (E.D. Pa. Oct. 10, 2014) ............................................................7

*In re Solodyn Antitrust Litig.*,
No. 14-md-2503 (D. Mass. July 18, 2018) ...............................................6

*In re Steel Antitrust Litig.* (*Steel I*),
No. 08-cv-5214 (N.D. Ill. Oct. 22, 2014) ...............................................5

*In re Steel Antitrust Litig.* (*Steel II*),
No. 08-cv-5214 (N.D. Ill. Feb. 16, 2017) ...............................................6

*In re Sumitomo Copper Litig.*,
74 F. Supp. 2d 393 (S.D.N.Y. 1999)...............................................7, 23

*In re Urethane Antitrust Litig.* (*Urethane I*),
No. 04-md-1616 (D. Kan. July 22, 2009) ...............................................6

*In re Urethane Antitrust Litig.* (*Urethane II*),
No. 04-md-1616 (D. Kan. Dec. 13, 2011) ...............................................6

*In re Urethane Antitrust Litig.* (*Urethane III*),
No. 04-md-1616 (D. Kan. July 29, 2016) ...............................................5

*In re Vitamin C Antitrust Litig.*,
No. 06-MD-2012, WL 5289514 (E.D.N.Y. Oct. 23, 2012)...................4, 14, 16, 17

*In re WorldCom, Inc. Sec. Litig.*,
388 F. Supp. 2d 319 (S.D.N.Y. 2005)...............................................11, 22

*Johnson v. Brennan*,
2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011)...............................................11

*Johnson v. City of New York*,
*2010 WL 5818290* (E.D.N.Y. Dec. 13, 2010) ...............................................9

*Kurzweil v. Philip Morris Companies, Inc.*,
1999 WL 1076105 (S.D.N.Y. Nov. 30, 1999) ...............................................7

*Laydon v. Mizuho Bank, Ltd.* (*Laydon I*),
No. 12-cv-3419 (S.D.N.Y. Nov. 10, 2016)...............................................6, 8

*Laydon v. Mizuho Bank, Ltd.* (*Laydon II*),
No. 12-cv-3419 (S.D.N.Y. Dec. 7, 2017) ...............................................5, 6, 10, 11

*Luciano v. Olsten Corp.*,
109 F.3d 111 (2d Cir. 1997)...............................................13

*Maley v. Del Glob. Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002)...............................................18

*Mayor & City Council of Baltimore v. Bank of Am.*,
No. 11-cv-5450 (S.D.N.Y. Aug. 5, 2011) ............................................................2

*Missouri v. Jenkins*,
491 U.S. 274 (1989) .......................................................................................10

*Park v. The Thomson Corp.*,
2008 WL 4684232 (S.D.N.Y. Oct. 22, 2008) ....................................................19

*Precision Assocs., Inc. v. Panalpina World Transport (Holding) Ltd.* (*Freight Forwarders I*),
No. 08-cv-0042 (E.D.N.Y. Dec. 27, 2013) .........................................................6

*Precision Assocs., Inc. v. Panalpina World Transport (Holding) Ltd.* (*Freight Forwarders II*),
2015 WL 6964973 (E.D.N.Y. Nov. 10, 2015) ..................................................5, 6

*Precision Assocs., Inc. v. Panalpina World Transport (Holding) Ltd.* (*Freight Forwarders III*),
No. 08-cv-0042 (E.D.N.Y. Nov. 07, 2016) ..........................................................5

*Sewell v. Bovis Lend Lease, Inc.*,
2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) ....................................................11

*Sonterra Capital Master Fund Ltd. v. UBS AG*,
No. 15-cv-5844 (S.D.N.Y. July 12, 2018) ...........................................................6

*Sullivan v. Barclays Bank, plc*,
No. 13-cv-2811 (S.D.N.Y. May 18, 2018) ...........................................................5

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273 (3d Cir. 2011) ...............................................................................8

*Sykes v. Harris*,
2016 WL 3030156 (S.D.N.Y. May 24, 2016) ....................................................20

*Taft v. Ackermans*,
2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) ......................................................21

*Velez v. Novartis Pharma. Corp.*,
2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ......................................................7

*Virgin Atl. Airways Ltd. v. British Airways PLC*,
257 F.3d 256 (2d Cir. 2011) .............................................................................16

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005) .....................................................................4, 13, 16

*West Virginia v. Chas. Pfizer & Co.*,
    314 F. Supp. 710 (S.D.N.Y. 1970)........................................................20

**Other Authorities**

31 No. 7 Futures & Derivatives L. Rep. 1 .............................................19

Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their*
    *Fee Awards,* 7 J. Empirical Legal Stud. 811 (2010)...................................7

Sara Randazzo & Jacqueline Palank, *Legal Fees Cross New Mark: $1,500 an*
    *Hour*, The Wall Street Journal, Feb. 16, 2016 ......................................13

Theodore Eisenberg & Geoffrey Miller, *Attorneys' Fees in Class Actions: 2009–*
    *2013*, 92 N.Y.U. L. Rev. 937 (2017) ..............................................8, 12

Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class*
    *Action Settlements: 1993–2008,* 7 J. Empirical Legal Stud. 248 (2010) ................8

4 William B. Rubenstein, *Newberg on Class Actions* (5th ed.)..........................7, 11, 12

# INTRODUCTION

Court-appointed co-lead class counsel Susman Godfrey L.L.P. and Hausfeld LLP ("Class Counsel") respectfully submit this memorandum in support of the OTC Plaintiffs' application for an award of attorneys' fees and expenses in connection with the settlement between defendants Deutsche Bank Aktiengesellschaft ("Deutsche Bank") and OTC Plaintiffs (the "Deutsche Bank Settlement") and the settlement between HSBC Bank PLC ("HSBC") and OTC Plaintiffs (the "HSBC Settlement" and, together with the Deutsche Bank Settlement, the "Settlements").

To date, OTC Plaintiffs have achieved settlements in this case totaling $590 million— $120 million from Barclays, $130 million from Citibank, $100 million from HSBC, and $240 million from Deutsche Bank. All of the settlements to date have also included substantial cooperation agreements from the settling banks in the continued prosecution of the OTC Action. OTC Plaintiffs now request an interim award of attorneys' fees from the Deutsche Bank and HSBC Settlements of $62,788,212, or 18.5% of the net settlement fund for the Deutsche Bank Settlement and the HSBC Settlement after the deduction of litigation expenses.[1]

OTC Plaintiffs' application for an interim award of 18.5% of the net settlement fund is in line with this Court's fee award for the Barclays and Citibank Settlements, ECF 2683, and is well within the range of awards found to be reasonable under the Second Circuit's prior orders and precedents, aligned with awards regularly approved in comparable multi-defendant antitrust class actions, and will reward Class Counsel for the outstanding result they have obtained for the OTC Class, a result that was achieved only after years of hard-fought litigation undertaken entirely on a contingency fee basis with Class Counsel advancing expenses.

---

[1] As with OTC Plaintiffs' attorneys' fee application from the Barclays Settlement and the Citibank Settlement, OTC Plaintiffs respectfully ask that the Court reserve judgment on a request for the difference between the fee sought now and a final award of 30% of the net Deutsche Bank Settlement and HSBC Settlement (after deducting expenses) until a later stage of this litigation. *See* ECF 2350 at 6, 13; ECF 2387 at 1.

Granting 18.5% of the net settlement fund here would (combined with the Court's attorneys' fees, expense reimbursement, and incentive award grant for the Barclays and Citibank Settlements) result in the class receiving 79.34% of the aggregate settlement amounts for all settlements to date, an increased percentage from the time of the Barclays and Citi Settlements. ECF 2683, at 10 ("Given these amounts of expense reimbursements, incentive awards, and attorneys' fees, the class writ large will receive 76.62% of the aggregate settlement amounts (prior to other expenses, such as those incurred in providing notice to the classes) – a percentage that we find comports with public policy notions of allowing the class, rather than class counsel, to receive a sufficiently significant share of the recovery.").

OTC Plaintiffs additionally seek reimbursement of $604,256.89 in unreimbursed expenses incurred by Class Counsel on behalf of the OTC Class between July 27, 2017 (the date of the Citibank Settlement) and February 15, 2018, the date of the HSBC Bank Settlement (the latter of the two settlements). "[C]ourts in the Second Circuit normally grant expense requests in common fund cases as a matter of course." ECF 2683, at 2 (alteration in original) (quoting *In re IMAX Sec. Litig.*, No. 06-cv-6128, 2012 WL 3133476, at *6 (S.D.N.Y. Aug. 1, 2012).

## BACKGROUND

On February 6, 2018, more than six years into this hotly contested litigation,[2] Class Counsel entered into a settlement agreement with Deutsche Bank, the third settlement in the OTC Action. The Deutsche Bank Settlement provides a cash payment of $240 million. Shortly after the Deutsche Bank Settlement, Class Counsel entered into a settlement agreement with HSBC. The HSBC Settlement provides a cash payment of $100 million. Both settlement agreements also provide for additional valuable non-monetary relief in the form of cooperation

---

[2] OTC Plaintiffs' initial complaint was filed on August 5, 2011. *See* Class Action Complaint for Violation of the Federal Antitrust Laws, *Mayor & City Council of Baltimore v. Bank of Am.*, No. 11-cv-5450 (S.D.N.Y. Aug. 5, 2011), ECF 1.

by Deutsche Bank and HSBC, which will assist OTC Plaintiffs in their continued litigation against the non-settling defendants.

The Court preliminarily approved the Deutsche Bank Settlement and the HSBC Settlement on April 5, 2018, *see* ECF 2480; ECF 2481, and approved the joint notice program and preliminarily approved the plan of distribution on June 21, 2018, *see* ECF 2579.

The Deutsche Bank and HSBC Settlements follow OTC Plaintiffs' first two settlements in this action with Barclays and Citibank, which were executed on November 11, 2015 and July 27, 2017, respectively. *See* ECF 1338; ECF 2226-1. The Court granted final approval of those settlements on August 1, 2018, ECF 2655, and awarded Class Counsel attorneys' fees and reimbursement of litigation expenses on August 14, 2018, ECF 2683. The Court awarded $43,478,572.43 in attorneys' fees, representing 18.5% of the aggregate settlement fund across the Barclays and Citi Settlements net of expenses and incentive awards. *Id.* at 12–13. The Court further granted reimbursement for litigation expenses incurred through July 27, 2017, in the amount of $14,855,689.55. *Id.* at 12.

Both the Deutsche Bank and HSBC Settlements are excellent results for the OTC Class, which has now recovered more than half a billion dollars in total settlements and the right to substantial cooperation from Deutsche Bank and HSBC as the litigation proceeds against the remaining non-settling defendants. This outstanding recovery, achieved by Class Counsel working entirely on a contingent basis, and incurring substantial expenses on behalf of the OTC Class, undoubtedly merits the attorneys' fee award and expense reimbursement requested here.

## ARGUMENT

## I.      Class Counsel's Fee Request Is Fair and Reasonable

### A.      <u>Class Counsel Are Entitled to Fees from the Common Fund</u>

"[A] lawyer who recovers a common fund for the benefit of persons other than himself or

his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). This principle applies to class action settlements, including interim settlements. *See In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *9 (E.D.N.Y. Oct. 23, 2012) ("Where a class action settlement creates a common fund the plaintiffs' attorneys are entitled to a reasonable fee—set by the court—to be taken from the fund. Fees can be awarded based on an interim settlement fund.").

### B.     The Requested Fee Is Fair and Reasonable Under the Percentage Method

The Second Circuit's preferred method for calculating a fair and reasonable attorneys' fee is to award "some percentage of the recovery." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). "The trend in this Circuit is toward the percentage method" because it "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.'" *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005). This principle and preference hold equally true for interim fee awards drawn from partial settlements with one or more defendants in a multi-defendant action. *See In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *9 (noting that "[f]ees can be awarded based on an interim settlement" and recounting the Second Circuit's "trend" of "utiliz[ing] the percentage method" with the lodestar/multiplier method as a cross-check).

Class Counsel's request for 18.5% of the net settlement fund created by the Deutsche Bank and HSBC Settlements is exactly in line with this Court's prior award of attorneys' fees for the Barclays and HSBC Settlements. ECF 2683, at 9–10 ("[W]e are persuaded that 18.5 percent of this amount . . . is an appropriate amount of fees to award.").

Courts regularly make successive interim fee awards over the life of a multi-defendant antitrust class action at percentages significantly higher than the 18.5% requested by Class Counsel here. Table 1 below describes fee awards made in a number of recent antitrust class

actions—all cases where these awards were made from partial settlements—in descending order

by size of the settlement fund. OTC Plaintiffs' current application for 18.5% of a $340 million

common fund would be the second-lowest percentage awarded.

**Table 1**

| Case | Settlement Fund | Fee Awarded | Fee Percentage |
|---|---|---|---|
| *In re Urethane Antitrust Litig.* (*Urethane III*), No. 04-md-1616 (D. Kan. July 29, 2016), ECF 3276 | $835 million | $278 million | 33-1/3% |
| *In re Air Cargo Shipping Servs. Antitrust Litig.* (*Air Cargo V*), No. 06-md-1775 (E.D.N.Y. Oct. 25, 2016), ECF 2484 | $388 million | $97 million | 25% |
| *In re Automotive Parts Antitrust Litig.* (*Auto Parts II*), 2017 WL 3525415 (E.D. Mich. July 10, 2017) | $379 million | $75.7 million | 20% |
| *In re Air Cargo Shipping Servs. Antitrust Litig.* (*Air Cargo IV*), 2015 WL 5918273 (E.D.N.Y. Oct. 9, 2015) | $333 million | $73.2 million | 22% |
| *Sullivan v. Barclays Bank plc*, No. 13-cv-2811 (S.D.N.Y. May 18, 2018), ECF 425 | $309 million | $68.71 million | 22.24% |
| *In re Automotive Parts Antitrust Litig.* (*Auto Parts I*), No. 12-cv-0103 (E.D. Mich. Dec. 5, 2016), ECF 545 | $225 million | $44.9 million | 20% |
| *In re Air Cargo Shipping Servs. Antitrust Litig.* (*Air Cargo III*), 2012 WL 3138596 (E.D.N.Y. Aug. 2, 2012) | $222 million | $54.4 million | 24% |
| *In re Domestic Drywall Antitrust Litig.*, No. 13-md-2437 (E.D. Pa. July 17, 2018), ECF 767, 768 | $190 million | $63.53 million | 33-1/3% |
| *Precision Assocs., Inc. v. Panalpina World Transport (Holding) Ltd.* (*Freight Forwarders II*), 2015 WL 6964973 (E.D.N.Y. Nov. 10, 2015) | $169 million | $42.2 million | 25% |
| *In re Steel Antitrust Litig.* (*Steel I*), No. 08-cv-5214 (N.D. Ill. Oct. 22, 2014), ECF 539 | $164 million | $54.1 million | 33% |
| *In re Air Cargo Shipping Servs. Antitrust Litig.* (*Air Cargo II*), 2011 WL 2909162 (E.D.N.Y. July 15, 2011) | $154 million | $38.5 million | 25% |
| *Laydon v. Mizuho Bank, Ltd.* (*Laydon II*), No. 12-cv-3419 (S.D.N.Y. Dec. 7, 2017), ECF 837 | $148 million | $34.9 million | 23.6% |
| *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-2420 (N.D. Cal.), ECF 2322 | $139.3 million | $41.79 million | 30% |
| *In re CRT Antitrust Litig.* (*CRT I*), 2016 WL 183285 (N.D. Cal. Jan. 14, 2016) | $127.5 million | $38.2 million | 30% |
| *Precision Assocs., Inc. v. Panalpina World Transport (Holding) Ltd.* (*Freight Forwarders III*), | $118 million | $29.7 million | 25% |

| | | | |
|---|---|---|---|
| No. 08-cv-0042 (E.D.N.Y. Nov. 07, 2016), ECF 1396 | | | |
| *Precision Assocs., Inc. v. Panalpina World Transport (Holding) Ltd.* (*Freight Forwarders I*), No. 08-cv-0042 (E.D.N.Y. Dec. 27, 2013), ECF 984 | $112 million | $16.9 million | 15%[3] |
| *In re Municipal Derivatives Antitrust Litig.* (*Muni Derivatives IV*), No. 08-cv-2516 (S.D.N.Y. July 8, 2016), ECF 2029 | $101 million | $33 million | 33-1/3% |
| *In re Air Cargo Shipping Servs. Antitrust Litig.* (*Air Cargo I*), 2009 WL 3077396 (E.D.N.Y. Sept. 25, 2009) | $85 million | $12.8 million | 15%[4] |
| *In re CRT Antitrust Litig.* (*CRT II*), No. 07-cv-5944 (N.D. Cal. June 8, 2017), ECF 5169 | $84.8 million | $25.4 million | 30% |
| *In re Urethane Antitrust Litig.* (*Urethane II*), No. 04-md-1616 (D. Kan. Dec. 13, 2011), ECF 2210 | $84 million | $28 million | 33-1/3% |
| *In re Municipal Derivatives Antitrust Litig.* (*Muni Derivatives II*), No. 08-cv-2516 (S.D.N.Y. Dec. 14, 2012), ECF 1744 | $81.6 million | $23.3 million | 29%[5] |
| *In re Solodyn Antitrust Litig.*, No. 14-md-2503 (D. Mass. July 18, 2018), ECF 1180 | $72.5 million | 24.17 million | 33-1/3% |
| *In re Urethane Antitrust Litig.* (*Urethane I*), No. 04-md-1616 (D. Kan. July 22, 2009), ECF 995 | $58.9 million | $19.6 million | 33-1/3% |
| *Laydon v. Mizuho Bank, Ltd.* (*Laydon I*), No. 12-cv-3419 (S.D.N.Y. Nov. 10, 2016), ECF 723 | $58 million | $14.5 million | 25% |
| *In re Municipal Derivatives Antitrust Litig.* (*Muni Derivatives III*), No. 08-cv-2516 (S.D.N.Y. June 6, 2014), ECF 1903 | $38.3 million | $11.5 million | 30% |
| *In re Steel Antitrust Litig.* (*Steel II*), No. 08-cv-5214 (N.D. Ill. Feb. 16, 2017), ECF 680 | $30 million | $9.9 million | 33-1/3% |
| *Laydon v. Mizuho Bank, Ltd.*, No. 12-cv-3419 (S.D.N.Y. July 12, 2018); *Sonterra Capital Master Fund Ltd. v. UBS AG*, No. 15-cv-5844 (S.D.N.Y. July 12, 2018), ECF 889 | $30 million | $6.9 million | 23%[6] |

[3] In *Freight Forwarders I*, Judge Gleeson granted an interim fee award of 15% of the initial settlement fund, rejecting class counsel's request for 33-1/3% of that fund. Class counsel later requested and received 25% of the subsequent settlement funds in *Freight Forwarders II* and *III*.

[4] In *Air Cargo I*, the first settlement at issue was reached on September 11, 2006, a few months after the initial complaint was filed and before the motions to dismiss were briefed, and Judge Gleeson awarded class counsel $12.8 million in fees and $1.57 million in expenses out of that settlement. *Air Cargo I*, 2009 WL 3077396, at *1-2. Judge Gleeson later granted class counsel's requests for 22% to 25% to be paid out of subsequent settlement funds.

[5] Class counsel previously requested and received a combined award of $1.55 million for fees and expenses from an initial settlement for $6.5 million. *See In re Municipal Derivatives Antitrust Litig.* (*Muni Derivatives I*), No. 08-cv-2516 (S.D.N.Y. Dec. Oct. 7, 2011), ECF 1597.

[6] This award was the maximum amount that class counsel could have sought pursuant to class counsel's agreement with one of the class plaintiffs. ECF 2632, at 2 n.1.

| *In re Processed Egg Prods. Antitrust Litig.* (*Processed Egg II*), No. 08-md-2002 (E.D. Pa. Oct. 10, 2014), ECF 1079 | $28 million | $8.5 million | 30% |
|---|---|---|---|
| *In re Processed Egg Prods. Antitrust Litig.* (*Processed Egg I*), 2012 WL 5471481 (E.D. Pa. Nov. 9, 2012) | $25 million | $7.5 million | 30% |

Fee awards reaching up to one-third of the proceeds of partial settlements, as shown in Table 1, are consistent with fee awards granted in class actions generally, where "fees that are 30 percent or greater" are "routine[]." *Velez v. Novartis Pharma. Corp.*, 2010 WL 4877852, at *21 (S.D.N.Y. Nov. 30, 2010).[7]

The awards in these cases are consistent with the results of empirical studies of attorneys' fee awards. In one study previously cited by the Court, "for settlements where the class recovery ranged between $72.5 million and $6.6 billion (the top decile of recovery amounts), the mean fee percentage awarded is 18.4 percent and the median is 19.0 percent, again with great variability (a standard deviation of 7.9 percent also)." ECF 2683 at 8–9 (citing *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 350 n.1 (S.D.N.Y. 2014)). Another set of studies previously cited by the Court found an average fee percentage for settlements between $250 million and $500 million of between 17% and 17.8%. *See* ECF 2683 at 9 (citing 4 William B. Rubenstein, *Newberg on Class Actions* § 15:81 fig.2 (5th ed.)).[8] And while the Court previously cited a third

---

[7] See also *Hyun v. Ippudo USA Holdings*, 2016 WL 1222347, at *3 (S.D.N.Y. Mar. 24, 2016) ("Fee awards representing one third of the total recovery are common in this District."). This benchmark furthermore holds true for settlements with large common funds like this one. *See In re Initial Public Offering Secs. Litig.*, 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009) (awarding plaintiffs' counsel one-third of the net settlement fund of $170 million); *In re Priceline.com, Inc. Secs. Litig.*, 2007 WL 2115592, at *4 (D. Conn. July 20, 2007) (awarding 30% of an $80 million settlement); *In re Deutsche Telekom AG Secs. Litig.*, 2005 WL 7984326, at *4 (S.D.N.Y. June 14, 2005) (Buchwald, J.) (awarding attorneys' fees of 28% of a $120 million settlement); *Kurzweil v. Philip Morris Companies, Inc.*, 1999 WL 1076105, at *3 (S.D.N.Y. Nov. 30, 1999) (awarding class counsel 30% of a $123 million settlement); *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 394 (S.D.N.Y. 1999) (awarding plaintiffs' counsel attorneys' fees of 27.5% of a $116.6 million settlement).

[8] The cited figure incorporates data from two studies. The first is a draft study on file with the author, which includes the figure appearing to be approximately 17–17.5%. *See* 4 William B. Rubenstein, *Newberg on Class Actions* § 15:81 fig.2 (5th ed.) (citing William B. Rubenstein & Rajat Krishna, *Class Action Fee Awards: A Comprehensive Empirical Study* (draft on file with author)). The second is Brian T. Fitzpatrick, *An Empirical Study of Class Action*

study finding a "mean fee percentage awarded is 12.0 percent and the median percentage is 10.2 percent" "for settlements where the class recovery exceeds $175.5 million," ECF 2683 at 8 (citing *Colgate*, 36 F. Supp. 3d at 350 n.1),[9] a more recent study from just last year by the same authors as the previously-cited study found an average percentile of 22.3% in the highest decile of settlements studied (those greater than $67.5 million). *See* Theodore Eisenberg & Geoffrey Miller, *Attorneys' Fees in Class Actions: 2009–2013*, 92 N.Y.U. L. Rev. 937, 948 (2017).

The percentage method, by tying the fee award to the result achieved for the class, "allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure,'" *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 330 (3d Cir. 2011); thus, Class Counsel's request also corresponds neatly to the settlement from which it arises. The Deutsche Bank and HSBC Settlements—which provide a total of $340 million in cash and additional non-monetary cooperation benefits—are by any measure a substantially favorable result for the OTC Class. As the primary measure of Class Counsel's success is the recovery they have achieved for the OTC Class, granting Class Counsel's application for 18.5% of that favorable result provides a proportionate and appropriate reward for Class Counsel's efforts.[10]

Indeed, the 18.5% fee requested here is significantly less than Class Counsel could obtain on the open market. For example, Susman Godfrey L.L.P. regularly takes high-stakes non-class commercial cases on a contingent fee basis, and it typically negotiates contingent fee arrangements with individual non-class plaintiff clients for engagements where the firm

---

*Settlements and Their Fee Awards*, 7 J. Empirical Legal Stud. 811, 839 tbl.10, 11 (2010), which provides the figure of 17.8%.

[9] *Colgate* cited Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class Action Settlements: 1993–2008*, 7 J. Empirical Legal Stud. 248, 263–64 (2010).

[10] *See Laydon I*, slip op. ¶ 5(b)-(c), (f) (awarding "fair, reasonable, appropriate" fee of 25% of partial settlement fund, noting that "in the absence of a settlement, [the actions against the settling defendants] would have involved lengthy proceedings with uncertain resolution," and recognizing that "[h]ad Plaintiffs' Counsel not achieved the Settlements, a risk would remain that Plaintiffs and the Settlement Class may have recovered less or nothing from [the settling defendants]").

advances expenses equal to 40% of the gross sum recovered, with percentage increases based on the milestones reached at the time of settlement. *See* ECF 2280. "This fact is highly relevant to determining the appropriateness of the award because the Court's ultimate task is to 'approximate the reasonable fee that a competitive market would bear.'" *Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814, at *17 (S.D.N.Y. Sept. 9, 2015) (quoting *Johnson v. City of New York, 2010 WL 5818290*, at *4 (E.D.N.Y. Dec. 13, 2010)); *accord In re Continental Ill. Secs. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) ("The class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client.").

What's more, granting the requested fee would (along with the Court's grant of attorneys' fees, expense reimbursement, and incentive award for the Barclays and Citibank Settlements) result in the class receiving 79.34% of the aggregate settlement amounts for all settlements to date. ECF 465 at 10 (holding "a percentage [of 76.62%] comports with public policy notions of allowing the class, rather than class counsel, to receive a sufficiently significant share of the recovery.").

## C.    The Requested Fee Is Reasonable Under Lodestar "Crosscheck"

Class Counsel's fee request is amply supported by the Second Circuit's preference for the percentage-of-recovery method for calculating fee awards, and sits on the low end of the range of fees typically awarded in complex, multi-defendant antitrust class actions such as this. *See supra* Table 1. The reasonableness of Class Counsel's requested fee is confirmed by the lodestar "crosscheck," which tests the reasonableness of a percentage method–based fee. *See Goldberger*, 209 F.3d at 50. The "lodestar" is calculated by multiplying the number of hours expended on the

litigation by each particular attorney or firm professional by their current hourly rate,[11] and totaling the amounts for all timekeepers. When using this lodestar to crosscheck class counsel's requested award, courts look for a multiplier on the award that "represents the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) (citing *Goldberger*, 209 F.3d at 47).

Class Counsel have spent over 52,000 hours, representing a lodestar of $32,922,777, from the inception of this matter through February 15, 2018.[12] *See* Joint Decl. ¶ 42.[13] That time represents Class Counsel's tireless efforts in investigating and prosecuting the OTC Plaintiffs' claims over an more than six-year period. By way of comparison, in the Yen LIBOR cases, class counsel recently reported a total lodestar of $54,532,316.55, corresponding to 105,775.61 hours worked, *before* any briefing on class certification. *See Laydon II* Br. at 29. Class Counsel's significantly lower lodestar is presumptively reasonable when considering the substantial additional progress made by Class Counsel in this action.

When combined with Class Counsel's fee award for the Barclays and Citibank Settlements, Class Counsel's fee request of 18.5% of the net settlement fund would correspond to a multiplier of 3.23 over Class Counsel's total lodestar, if the Court grants the requested

---

[11] The lodestar is calculated at current hourly rates. *See, e.g.*, *Missouri v. Jenkins*, 491 U.S. 274, 283–84 (1989) (endorsing "an appropriate adjustment for delay in payment" by applying "current" rates); *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998) (stating that rates "should be 'current rather than historic'").

[12] In addition to Class Counsel, six other firms have assisted in this litigation. Joint Decl. ¶¶ 27, 41. Four firms performed work for the benefit of the OTC Class by helping in evaluation of the plan of distribution. *See* Joint Decl. ¶ 27. Two other firms representing class representatives have also performed work related to those representations as well as other work at the direction of Class Counsel. *See* Joint Decl. ¶ 41. These two firms' time is not included in the lodestar reported in this application, and, if it were included, the reported lodestar would be higher (and the resulting multiplier lower). OTC Plaintiffs request that the Court grant Class Counsel authority to allocate and distribute any attorneys' fees and expenses awarded from the settlement funds among counsel who performed work on behalf of OTC Plaintiffs as is customary in class action litigation.

[13] The Joint Declaration of William C. Carmody & Michael D. Hausfeld in Support of OTC Plaintiffs' Motion for Attorneys' Fees & Expenses is filed concurrently herewith.

expense reimbursements.[14]

This multiplier falls within the range considered reasonable by courts in the Second Circuit. *See In re Credit Default Swaps Antitrust Litig.*, 2016 WL 2731524, at *16 (S.D.N.Y. April 26, 2016) (approving fee award in complex antitrust action where lodestar was "just over 6"); *Colgate*, 36 F. Supp. 3d at 353 (holding a multiplier of 5 was "on the high end" but "not unreasonable"); *Beckman v. KeyBank N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013) (approving an award of 33% of the common fund, representing a multiplier of 6.3, and explaining that "[c]ourts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers"); *Sewell v. Bovis Lend Lease, Inc.*, 2012 WL 1320124, at *13 (S.D.N.Y. Apr. 16, 2012) ("Courts commonly award lodestar multipliers between two and six.").[15] In cases like this, where the settlement fund reaches into nine figures and counsel are efficient, it is to be expected (as the Court has previously noted) that multipliers will increase—and courts commonly award fees corresponding to multipliers higher than what Class Counsel requests here. *See* 4 William B. Rubenstein, *Newberg on Class Actions* § 15:89 ("[M]ultipliers increase as fund size increases.").

Once again the awards in the above cases are consistent with the results of empirical studies. This Court previously noted that "one study identifies an average multiplier of 3.18 for

---

[14] When evaluating successive applications for interim awards of attorneys' fees, the relevant multiplier for courts to consider when performing the lodestar crosscheck is the *cumulative* multiplier that compares class counsel's *total* fee award to class counsel's *total* lodestar. *See, e.g., In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 359 (S.D.N.Y. 2005) (approving a second fee award that when combined with a prior award "in its aggregate gives Lead Counsel $336.1 million in fees based on a *total* lodestar of approximately $83.2 million" (emphasis added)). This is the approach utilized by class counsel in the Yen LIBOR cases, without objection from Judge Daniels, who approved class counsel's first and second fee applications in full. *See Laydon II* Br. at 29 (presenting cumulative multiplier of 0.91, which compared class counsel's total lodestar of $54,532,316.55 from the initiation of the action to class counsel's second fee request for $34.88 million aggregated with their prior $14.5 million award).

[15] *See also Johnson v. Brennan*, 2011 WL 4357376, at *13 (S.D.N.Y. Sept. 16, 2011) ("Courts routinely award counsel two to three times lodestar in class action settlements."); *In re Lloyd's Am. Trust Fund Litig.*, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) ("Here, the resulting multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit.").

settlements above $175.5 million and a second study identifies an average multiplier of 2.39 for settlements above $44.6 million." ECF 2683 at 11 (citing 4 William B. Rubenstein, *Newberg on Class Actions* § 15:89 tbl. 2). And a recent empirical study published last year by Professor Eisenberg found an average multiplier of 2.72 for cases with a settlement fund of greater than $75 million. *See* Theodore Eisenberg & Geoffrey Miller, *Attorneys' Fees in Class Actions: 2009–2013*, 92 N.Y.U. L. Rev. 937, 967 tbl.13 (2017). Like Professor Rubenstein's work, Professor Eisenberg's study also confirms that multipliers increase as fund size increases. *Id.* ("As we found previously, higher multipliers are associated with higher recoveries." (footnote omitted)).

It should further be noted that all of the work performed by Class Counsel through February 15, 2017, contributed to Class Counsel's understanding of the strengths and weaknesses of the claims against Deutsche Bank and HSBC and informed Class Counsel's ability to negotiate a favorable settlement. As the Court recognized at the fairness hearing for the settlement with Barclays, OTC Plaintiffs have "alleged a conspiracy" and "the same action against everybody." ECF 2352-1, Tr. 66:23-24. Class Counsel's efforts to strengthen the OTC Plaintiffs' litigation position as to all defendants thus increased the settlement pressure on each defendant, including Deutsche Bank and HSBC. These efforts—which included motion practice, discovery efforts, and document review—generally involved all of the defendants or had case-wide implications. Moreover, all of the work performed by Class Counsel was undertaken to benefit the same OTC Class. *See* ECF 2863 at 3 ("Further, attribution of these expenses to Barclays and Citi is appropriate – even though some portion undoubtedly pertains to other defendants also – given the joint and several liability in this action."). Thus, it is not uncommon for courts to consider cumulatively, when performing the lodestar crosscheck, all of class

counsel's time from the beginning of an action. *See supra* note 14.[16]

Finally, Class Counsel's hourly rates are also reasonable. The rates for Class Counsel who billed meaningful time to this case are Class Counsel's standard hourly rates and are regularly charged to hourly clients (and paid by those clients). Joint Decl. ¶¶ 36-37; *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997) ("The 'lodestar' figure should be in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."). Class Counsel's hourly rates are market rates for plaintiff- and defense-side law firms of similar quality litigating matters of similar magnitude in New York City.[17] Thus, OTC Plaintiffs' request for an award of 18.5% of the net settlement fund is fair and reasonable under the lodestar crosscheck method often employed by courts as a "sanity check" regarding the percentage award. *Colgate*, 36 F. Supp. 3d at 353.

### D. The *Goldberger* Factors Support the Requested Fee Award

Under either the percentage method or the lodestar multiplier approach, the "'*Goldberger* factors' ultimately determine the reasonableness of a common fund fee," *Wal-Mart Stores*, 396 F.3d at 121. The *Goldberger* factors, which the Court weighs in its discretion, are:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50 (citation omitted). Courts regularly apply the *Goldberger* factors

---

[16] *See also Auto Parts II*, 2017 WL 3525415, at *4 n.2 ("The Court rejects the argument . . . that time included with the Round 1 Settlement fee request should not be included in the lodestar cross-check for the Round 2 Settlements. In calculating the lodestar for purposes of the cross-check, it would be impractical to compartmentalize and isolate the work that EPPs' counsel did in any particular case at any particular time because all of their work assisted in achieving all of the settlements and has provided and will continue to provide a significant benefit to all of the EPPs classes.").

[17] *See* Sara Randazzo & Jacqueline Palank, *Legal Fees Cross New Mark: $1,500 an Hour*, The Wall Street Journal, Feb. 16, 2016 (finding that "[f]or lawyers at the very top of th[e] fields [of antitrust and high-stakes litigation and appeals], hourly rates can hit $1,800 or even $1,950" and citing a 2011 article and observing that the increases in hourly rates "mak[e] the $1,000-an-hour legal fees that once seemed so steep look quaint by comparison"), *available at* https://www.wsj.com/articles/legal-fees-reach-new-pinnacle-1-500-an-hour-1454960708.

when considering applications for interim awards. *See, e.g.*, *In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *9-10. Each of these factors confirms the requested fee is reasonable.

### 1. Time & Labor Expended by Counsel (Goldberger Factor 1)

The first *Goldberger* factor—the "time and labor expended by counsel"—strongly supports approval of the requested fee. Class Counsel have spent over 52,000 hours prosecuting this case and, as discussed above, the lodestar multiplier is within the range approved by courts in this Circuit. The substantial time devoted to this litigation over more than six years reflects the immense effort Class Counsel have exerted in prosecuting this case and is reasonable, particularly given the complex nature of this action. Class Counsel have, among other things:

- Conducted an initial investigation of this case to develop the facts and legal theories that formed the basis of the allegations in the complaint and drafted and filed the complaint, amended complaint, second amended complaint, proposed third amended complaint, and third amended complaint (collectively, the "Complaint").

- Defended the Complaint from five Rule 12(b) motions to dismiss filed by the defendants and from the defendants' opposition to the OTC Plaintiffs' motions for leave to amend the complaint.

- Written scores of letters to the Court, *inter alia*, providing supplemental authority, addressing discovery disputes, and presenting scheduling issues.

- Appealed the dismissal of the OTC Plaintiffs' antitrust claims to the Second Circuit, and successfully filed an amicus brief to the Supreme Court on an issue of appellate jurisdiction.

- Attended three full-day, in-person mediation sessions conducted by highly experienced mediators, preceded by mediation briefing, to achieve the first settlement in this action, with Barclays. The terms of the Barclays Settlement were also negotiated in extensive in-person meetings, telephone calls, and email discussions over the course of almost two years.

- Successfully briefed a motion for preliminary approval of the Barclays Settlement and worked with experts to develop a comprehensive notice program and plan of distribution.

- Reviewed more than 1.5 million documents produced by the defendants and third parties, as well as trial transcripts and evidence from civil and criminal trials in

the United States and the United Kingdom relating to LIBOR manipulation.

- Listened to more than 30,000 audio files produced by the defendants.

- Drafted discovery requests to the defendants for trading, cash-flow, and borrowing data on the defendants' financial instruments and participated in scores of meet and confers to obtain the production of that data.

- Diligently pursued discovery from four third-party brokers that formed an important component of the OTC Plaintiffs' expert witness analysis.

- Defended six 30(b)(6) depositions of the named plaintiffs; defended three depositions of OTC Plaintiffs' experts; conducted two depositions of the defendants' experts.

- Worked with the OTC Plaintiffs' expert witnesses to draft extensive 30(b)(6) notices setting out questions essential to understanding the trade, cash-flow, and borrowing data produced by the defendants.

- Assisted the OTC Plaintiffs' expert witnesses in analyzing 686 gigabytes of data and developing two expert witness reports totaling more than 300 pages.

- Prepared more than sixty pages of briefing, more than sixty pages of attorney declarations, and 149 exhibits in support of the OTC Plaintiffs' motion for class certification and vigorously defended against a *Daubert* challenge by the defendants.

- Attended a full-day, in-person mediation session conducted by the Honorable Layn Phillips, preceded by mediation briefing, and followed by extensive telephonic discussions and negotiations, to achieve the Citibank Settlement.

- Leveraged experience from the Barclays Settlement to successfully brief a motion for preliminary approval of the Citibank Settlement and adapt previously successful notice program for this second settlement.

- Attended a full-day, in-person mediation session conducted by the Honorable Layn Phillips, preceded by mediation briefing, and followed by extensive telephonic discussions and negotiations, to achieve the Deutsche Bank Settlement.

- Attended a full-day, in-person mediation session conducted by the Honorable Layn Phillips, preceded by mediation briefing, and followed by extensive telephonic discussions and negotiations, to achieve the HSBC Settlement.

- Successfully briefed motions for preliminary approval of both the Deutsche Bank and HSBC Settlements and designed a joint notice program for those two settlements as well as for the litigation class that saved substantial expense to the class.

- Collected, reviewed, and produced to the defendants thousands of pages of documents from the named plaintiffs, and prepared supplemental class certification briefing regarding one named plaintiff's adequacy as a class representative.

- Appealed the dismissal of the OTC Plaintiffs' antitrust claims on personal jurisdiction grounds to the Second Circuit, including supplemental briefing on the Second Circuit's decision in *Schwab*.

In sum, Class Counsel devoted substantial time and financial resources in prosecuting this case on behalf of the OTC Class.

### 2.    Magnitude & Complexity of the Litigation (Goldberger Factor 2)

The second *Goldberger* factor—"the magnitude and complexities of the litigation"—also strongly supports approval of the requested fee. No other case better embodies the challenges faced by plaintiffs in antitrust litigation than this one. *See Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 263 (2d Cir. 2011) (noting the "factual complexities of antitrust cases"); *Wal-Mart Stores*, 396 F.3d at 118 ("Federal antitrust cases are complicated, lengthy, and bitterly fought."); *In re Vitamin C Antitrust Litig.*, No. 06-MD-2012 WL 5289514, at *4 (E.D.N.Y. Oct. 23, 2012) ("Federal antitrust cases are complicated lengthy, and bitterly fought, as well as costly."). This action was initially filed over six years ago and has undergone multiple rounds of briefing on four motions to dismiss as well as an opposition to leave to amend that functioned as the equivalent to a motion to dismiss.

Meanwhile, the briefing on the OTC Plaintiffs' successful motion for class certification has been extensive, and the defendants are pursuing a Rule 23(f) petition. After class certification, the OTC Plaintiffs face the monumental task of completing merits discovery, including additional expert discovery, summary judgment briefing, and then a trial lasting weeks (if not months) from which the losing party will almost certainly appeal. *See, e.g.*, *In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *4 ("This litigation has been pending since 2005 and

has involved the production of thousands of documents, at least 17 fact witness depositions, expert discovery, and extensive motion practice. The Certified Classes are scheduled for a trial against the non-settling defendants that is expected to take at least three weeks."). In spite of the significant resources already expended preparing this case for trial, "[t]here can be no doubt that this class action would be enormously expensive to continue, extraordinarily complex to try, and ultimately uncertain of result." *Id.*

### 3. Risk of the Litigation (Goldberger Factor 3)

The third *Goldberger* factor—the "risk of the litigation"—also strongly supports approval of the requested fee. The Second Circuit has identified "the risk of success as perhaps the foremost factor to be considered in determining [a reasonable fee award]." *Goldberger*, 209 F.3d at 54. Class Counsel have taken on and overcome significant risks in this litigation.

#### a. Contingency Risk

"No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success." *Fleisher*, 2015 WL 10847814, at *21 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974)). Here, OTC Counsel have invested more than 52,000 hours of time with a lodestar value of more than $32 million without *any* guarantee they would be compensated for their efforts or reimbursed for any of the millions of dollars in litigation expenses they have incurred. *See In re High-Crush Ptrs. L.P. Secs. Litig.*, 2014 WL 7323417, at *16 (S.D.N.Y. Dec. 19, 2014) ("Lead Counsel undertook the representation of Lead Plaintiffs and the Class in this Action on a wholly contingent basis, investing substantial time and funds to prosecute this Action, without any guarantee of compensation or of recovering out-of-pocket expenses."); *Fleisher*, 2015 WL 10847814, at *21 ("[T]he firm would not have been compensated for its time or expenses at all had it been unsuccessful in this litigation.").

Moreover, Class Counsel would not have been compensated for its time or expenses at all had they been unsuccessful in this litigation. *See Grinnell*, 495 F.2d at 471 ("[D]espite the most vigorous and competent of efforts, success is never guaranteed."); *In re Beacon Assocs. Litig.*, 2013 WL 2450960, at *13 (S.D.N.Y. May 9, 2013) ("And all of these matters were taken on contingency, so in view of the novelty of the issues there was some possibility that counsel would recover nothing at all."); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 366 (S.D.N.Y. 2002) ("The enormous risks of litigation are why settlement is frequently preferred. Settling avoids delay as well as uncertain outcome . . . ."). The risk of no recovery in complex class actions is real and supports Class Counsel's request.

Contingency risk takes on an additional layer in multi-defendant actions such as this one, where class counsel's efforts in securing partial settlements with certain defendants protect against the risk that there might *never* be any recovery from other defendants. Courts recognize this dynamic when awarding fees—and cite it as a reason to *reward* class counsel for the risk they take. For instance, in the *Online DVD Rental* case, plaintiffs settled with one defendant for $27.25 million and then lost the entire case against the remaining defendant a few months later, when the court granted that defendant's motion for summary judgment. *See In re Online DVD Rental Antitrust Litig.*, No. 09-md-2029 (N.D. Cal. Sept. 2, 2011), ECF 492 (granting preliminary approval to settlement); *In re Online DVD Rental Antitrust Litig.*, 2011 WL 5883772, at *1 (N.D. Cal. Nov. 23, 2011) (granting motion for summary judgment). The court not only granted class counsel's fee request for 25% of the settlement fund, *see In re Online DVD Rental Antitrust Litig.*, No. 09-md-2029, slip op. ¶ 1 (N.D. Cal. Mar. 29, 2012), ECF 607, *aff'd*, 779 F.3d 934, 955 (9th Cir. 2015), but in fact, specifically cited the summary judgment order as one reason to approve the fee request as reasonable:

At this time, I'm prepared to find that the settlement is fair, reasonable, and adequate given the totality of the circumstances, ***particularly given the fact that half the case has been kind of wiped off the books for the plaintiffs***, I find that the settlement is fair, reasonable, and adequate, that something's better than nothing in this kind of case, and that **the bench mark is a reasonable fee** for this case. So I approve.

Transcript of Hearing, *In re Online DVD Rental Antitrust Litig.*, No. 09-md-2029 (N.D. Cal. Mar. 14, 2012), ECF 602 (emphasis added). In that case, class counsel's diligence in pursuing what turned out to be an unsuccessful claim was a compelling reason to *reward* class counsel for the contingency risk it took on and *award* the requested fees from the recovery that class counsel *did* achieve. Although Class Counsel is confident in the merits of the OTC Class's claims against the non-settling defendants, there still remains significant contingency risk associated with those claims, which counsels in favor of granting an interim fee award from the substantial and concrete recovery Class Counsel has obtained to date.

b.      *Liability Risk*

"Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *14 (S.D.N.Y. May 9, 2014). The OTC Plaintiffs face significant risks in continuing to litigate, amplified by the complexity of the market for LIBOR-linked financial instruments and the fact that Deutsche Bank and HSBC are global financial institutions with virtually unlimited litigation resources. Indeed, this case presents the Court, the parties, and eventually a jury with the task of understanding complex derivative instruments in an opaque, unregulated market, during a period of extraordinary economic upheaval. "The complexity of Plaintiff's claims *ipso facto* creates uncertainty . . . . A trial on these issues would likely be confusing to a jury." *Park v. The Thomson Corp.*, 2008 WL 4684232, at *4 (S.D.N.Y. Oct. 22, 2008); *see* 31 No. 7 Futures & Derivatives L. Rep. 1 ("Derivative instruments, in most cases, are highly complex and difficult to

understand for even highly sophisticated and intelligent investors.").

Although the OTC Plaintiffs believe fervently in the merit of their case, at the time the Deutsche Bank and HSBC Settlements were reached, the antitrust claims against both defendants had been dismissed on personal jurisdiction grounds and it was not known how the Second Circuit would resolve the appeal of that dismissal or how this Court would resolve the OTC Plaintiffs' then-pending motion for class certification. *See Athale v. Sinotech Energy Ltd.*, 2013 WL 11310686, at *6 (S.D.N.Y. Sept. 4, 2013) ("Absent settlement, there is no assurance that Lead Plaintiff's motion for class certification would be granted or that Class status, if granted, would be maintained throughout trial."). Nor is it clear how a jury would respond to the OTC Plaintiffs' claims or Deutsche Bank and HSBC's defenses at trial. *See Sykes v. Harris*, 2016 WL 3030156, at *18 (S.D.N.Y. May 24, 2016) ("Defendants asserted numerous novel defenses to Lead Plaintiffs' claims which put recovery for Class Members and Class Counsel at risk."); *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("[N]o matter how confident one may be of the outcome of litigation, such confidence is often misplaced."). That trial, moreover, would have required extensive fact and expert testimony, and regardless of outcome, the parties would be expected to pursue appeals from any result at trial.

### c. Damages Risk

Equally as significant as the risks in establishing liability in this case were the OTC Plaintiffs' risks in establishing damages. The damages estimates in this case are heavily expert-driven, and, although the OTC Plaintiffs are confident in our ability to prove damages, the then-pending expert battle at class certification and the anticipated expert battle at class certification ultimately at trial adds substantial risk to the OTC Plaintiffs' claims. *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *18 (S.D.N.Y. 2010) (noting that the burden in proving the extent of the class's damages weighed in favor of approving fee request, and that

"[t]he jury's verdict . . . would . . . depend on its reaction to the complex testimony of experts, a reaction that is inherently uncertain and unpredictable"); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 476 (S.D.N.Y. 1998) (observing that "[d]amages at trial would inevitably involve a battle of the experts" and noting that it is "difficult to predict with any certainty which testimony would be credited").

*    *    *

The only certainties from the outset of this litigation were that there would be no attorneys' fees or reimbursement of expenses without a successful result, and that a successful result, if any, could be achieved only after lengthy, difficult, and expensive effort.

### 4.    Quality of the Representation (Goldberger Factor 4)

The fourth *Goldberger* factor, "the quality of representation," also supports approval of the requested fee. Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award and in assessing the quality of the representation. *See, e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). Class Counsel respectfully submits that the $340 million settlement amount is strong evidence of the quality of Class Counsel's representation. That is particularly true because neither Deutsche Bank nor HSBC were the subject of regulatory orders relating to persistent suppression of LIBOR during the financial crisis—the subject of OTC Plaintiffs' claims.

"To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007). "Susman Godfrey has significant experience with . . . class actions, including settlements thereof . . . [and] [t]he lawyers working for the Class have substantial experience prosecuting large-scale class actions." *Fleisher*, 2015 WL 10847814, at *22; *see also* Joint Decl. Ex. A. Hausfeld LLP's attorneys "are highly

experienced practitioners in complex litigation generally and antitrust litigation specifically." *Air Cargo IV*, 2015 WL 5918273, at *7; *see also* Joint Decl. Ex. B.

"The quality of opposing counsel is also important in evaluating the quality of Lead Counsel's work." *Fleisher*, 2015 WL 10847814, at *22. Courts recognize that the caliber of the opposition faced by plaintiffs' counsel aids assessment of the quality of the plaintiffs' counsel's performance. *See Anwar v. Fairfield Greenwich Ltd.*, 2012 WL 1981505, at *2 (S.D.N.Y. June 1, 2012) (considering "the quality and vigor of opposing counsel"). Both Deutsche Bank and HSBC are represented by skilled and highly regarded counsel from Paul Weiss Rifkind Wharton & Garrison LLP and Locke Lorde LLP, respectively—both prestigious firms with well-deserved reputations for vigorous advocacy in the defense of complex civil cases, and the same is true of the other defendants in this action. *See In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d at 357–58 ("Lead Counsel obtained remarkable settlements for the Class while facing formidable opposing counsel from some of the best defense firms in the country.").

### 5. Requested Fee in Relation to the Settlement (Goldberger Factor 5)

The fifth *Goldberger* factor—"the requested fee in relation to the settlement"—also supports approval of the requested fee, as discussed *supra* at Section I.B.

### 6. Public Policy Considerations (Goldberger Factor 6)

Finally, the sixth *Goldberger* factor—public policy considerations—weighs heavily in favor of the requested fee. *Goldberger*, 209 F.3d at 50. Public policy considerations strongly favor incentivizing skilled private attorneys to undertake class action litigation both to vindicate the rights of class members and the law enforcement function of private action litigation. *See In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d at 359 ("[T]o attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives."); *Hicks v. Stanley*, 2005 WL

2757792, at *9 (S.D.N.Y. Oct. 24, 2005) ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding."); *In re Sumitomo*, 74 F. Supp. 2d at 399 ("[T]he Second Circuit and courts in this district also have taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation.").

Those interests are particularly salient in this case, which has required a massive investment of attorney time and expenses by Class Counsel with no avenue for compensation for their services until more than six years into the litigation. In order to incentivize the very best private attorneys to take on complex, lengthy, difficult, and expensive class actions, the fee awarded must be sufficient to justify the opportunity cost of foregoing hourly and fixed-fee cases where counsel are assured of compensation regardless of the outcome of the litigation at hand.

## II.    Class Counsel's Request for Reimbursement of Litigation Expenses Is Reasonable

Class Counsel also request reimbursement in the amount of $604,256.89 for out-of-pocket expenses reasonably and necessarily incurred in connection with the prosecution of this case between July 27, 2017 (the date of the Citi Settlement) and February 15, 2018 (the date of the HSBC Settlement). "[C]ourts in the Second Circuit normally grant expense requests in common fund cases as a matter of course." ECF 2683 at 2 (alteration in original).

The expenses incurred by Class Counsel include fees charged by experts, mediation fees, court fees, electronic research, photocopies, and travel in connection with this litigation. Courts regularly approve similar cost applications in large, complex antitrust class actions.[18] Indeed,

---

[18] *See, e.g.*, *In re Credit Default Swaps Antitrust Litig.*, 2016 WL 2731524, at *18 (approving $10 million in expenses "[m]ost of" which "were incurred in connection with retention of experts" where the case settled just prior to the due date for class certification motions); *In re Bank of Am. Corp. Secs., Derivatives & ERISA Litig.*, 2013 WL 12091355, at *1 (S.D.N.Y. Apr. 8, 2013) (approving $8 million in litigation expenses); *In re Citigroup Inc. Bond Litig.*, 988 F. Supp. 2d 371, 380 (S.D.N.Y. 2013) (approving $7.3 million in litigation expenses); *In re IPO*, 671 F. Supp. 2d at 505 (approving $46 million in expenses).

"[t]he fact that Class Counsel [were] willing to [incur these expenses], where reimbursement was entirely contingent on the success of this litigation, is perhaps the best indicator that the expenditures were reasonable and necessary." *Fleisher*, 2015 WL 10847814, at *23.

Additionally, relating to the Barclays and Citi Settlements, at the request of Settlement Class Counsel, Bates White—OTC Plaintiffs' expert economists—agreed to reduce their invoice to OTC Plaintiffs by $770,000. Accordingly, the total amount of expenses awarded by the Court and to be paid out of the Barclays and Citi settlement funds will be reduced *pro rata*[19] by that amount and be available for distribution to the Settlement Classes.

## CONCLUSION

For the foregoing reasons, OTC Plaintiffs respectfully request that the Court award from the Deutsche Bank and HSBC Settlements the requested attorneys' fees in the amount of $62,788,212 and reimbursement of litigation expenses in the amount of $604,256.89.

Dated: August 24, 2018

*/s/ Michael D. Hausfeld*
Michael D. Hausfeld
Hilary Scherrer
Nathaniel C. Giddings
HAUSFELD LLP
1700 Street NW, Suite 650
Washington, D.C. 20006
Telephone: 202-540-7200
mhausfeld@hausfeldllp.com
hscherrer@hausfeldllp.com
ngiddings@hausfeldllp.com

Scott Martin
HAUSFELD LLP
33 Whitehall Street, 14th Fl.
New York, NY 10004

*/s/ William Christopher Carmody*
William Christopher Carmody (WC8478)
Arun Subramanian (AS2096)
Seth Ard (SA1817)
Geng Chen (GC2733)
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Fl.
New York, New York 10019
Telephone: 212-336-3330
bcarmody@susmangodfrey.com
asubramanian@susmangodfrey.com
sard@susmangodfrey.com
gchen@susmangodfrey.com

Marc M. Seltzer
Glenn C. Bridgman

---

[19] Specifically, $34,019.29 of the expense reimbursement award for the Barclays Settlement will remain in the Barclays Settlement fund and $735,980.70 for the Citibank Settlement.

Telephone: 646-357-1100
smartin@hausfeldllp.com

Gary I. Smith
HAUSFELD LLP
325 Chestnut Street
Suite 900
Philadelphia, PA 19106
Telephone: 215-985-3270
gsmith@hausfeld.com

*Co-Lead Counsel for the OTC Plaintiff Class*

SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars
Los Angeles, California 90067-6029
Telephone: 310-789-3100
mseltzer@susmangodfrey.com
gbridgman@susmangodfrey.com

Matthew Berry
Drew D. Hansen
SUSMAN GODFREY LLP
1201 Third Avenue, Suite 3800
Seattle, WA 98101
Telephone: 206-516-3880
mberry@susmangodfrey.com
dhansen@susmangodfrey.com

Barry C. Barnett (BB1984)
Karen Oshman
Michael Kelso
SUSMAN GODFREY L.L.P.
1000 Louisiana Street
Suite 5100
Houston, TX 77002-5096
Telephone: 713-651-9366
bbamett@susmangodfrey.com
koshman@susmangodfrey.com
mkelso@susmangodfrey.com

*Co-Lead Counsel for the OTC Plaintiff Class*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 24, 2018, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

 */s/ Michael C. Kelso*
Michael C. Kelso
