UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
In re:

LIBOR-Based Financial Instruments
Antitrust Litigation

This Document Applies to:

  National Credit Union Administration
  Board v. Credit Suisse Group AG, et al.    13 Civ. 7394

  OTC Plaintiff Action    11 Civ. 5450

------------------------------------X

**MEMORANDUM & ORDER**

11 MD 2262 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

## INTRODUCTION

The Over-the-Counter ("OTC") plaintiffs obtained final judgments approving settlements with four defendants and certification of a litigation class maintaining antitrust claims against two defendants ("Litigation Class") in this consolidated multi-district litigation ("MDL"). From the earliest filing on the electronic court filing ("ECF") system referencing the first settlement to the entry of the last of the final judgments, 960 days passed. During that span of 960 days, there were over 60 entries on the docket sheet directly related to the settlements and the Litigation Class; multiple notices were filed in the financial press, both online and in print; and direct mail was sent to plaintiffs. This is the context in which we consider the National Credit Union Administration Board's ("NCUA") pending

1

motion to be excused for its failure to timely seek exclusion from the four settlements and the Litigation Class.

## **PROCEDURAL BACKGROUND**

Before discussing NCUA's motion, we set out in detail the procedural history of the settlements and the Litigation Class. On March 9, 2016, OTC plaintiffs moved for preliminary approval of their settlement with Barclays Bank plc ("Barclays"), see ECF No. 1336, which was granted on December 21, 2016, see ECF No. 1678.[1] OTC plaintiffs additionally moved for and obtained preliminary approval of their settlements with Citibank, N.A. and Citigroup Inc. (collectively, "Citi") on August 31, 2017, and HSBC Bank plc ("HSBC") and Deutsche Bank Aktiengesellschaft ("Deutsche Bank") on April 5, 2018.[2] See ECF Nos. 2195, 2247, 2448, 2472, 2480, 2481. Every settlement class included "all persons or entities . . . that purchased in the United States, directly from a Defendant (or a Defendant's subsidiaries or affiliates), a U.S. Dollar LIBOR-Based Instrument and that owned the U.S. Dollar LIBOR-Based Instrument any time during the period August 2007 through May 2010."[3] In re LIBOR-Based Fin. Instruments Antitrust Litig.

---

[1] Docket entry numbers that are cited in this Memorandum and Order refer to the master docket in In re LIBOR-Based Financial Instruments Antitrust Litigation, No. 11 MD 2262 (NRB) (S.D.N.Y. filed Aug. 12, 2011).
[2] Throughout this opinion, we refer to Barclays, Citi, HSBC, and Deutsche Bank as "Settling Defendants."
[3] "U.S. Dollar LIBOR-Based Instrument" included various types of swaps and similar instruments "that include[ ] any term, provision, obligation, or right to be paid by or to receive interest from a Defendant (or its subsidiaries or affiliates) based upon the U.S. Dollar LIBOR rate." Final Approval of Barclays and Citi Settlements, 327 F.R.D at 490 n.6.

("Final Approval of Barclays and Citi Settlements"), 327 F.R.D. 483, 490 (S.D.N.Y. 2018); see also ECF No. 2746 at 5 (approving settlements with HSBC and Deutsche Bank). This Court set the following deadlines for requesting exclusion from the settlements: October 9, 2017 (Barclays); January 2, 2018 (Citi); and September 28, 2018 (Deutsche Bank and HSBC). See ECF Nos. 1948, 2290, 2579.

On February 28, 2018, we also granted in part OTC plaintiffs' motion for class certification and certified a Rule 23(b)(3) class, which included plaintiffs asserting antitrust claims against Bank of America, N.A. and JPMorgan Chase Bank, N.A. ("Non-Settling Defendants").[4] See LIBOR VII, 299 F. Supp. 3d 430, 607-08 (S.D.N.Y. 2018). The notice program for the Deutsche Bank and HSBC settlements included information regarding the Litigation Class. In approving the proposed joint notice program, we used the same deadline – September 28, 2018 – for requesting exclusion from the Litigation Class. ECF No. 2579 at 3.

This Court entered final judgments approving the Barclays and Citi settlements on August 1, 2018, and the Deutsche Bank and HSBC settlements on October 25, 2018. See ECF Nos. 2655, 2746.[5] In

---

[4] The certified class included "all persons or entities residing in the United States that purchased, directly from a Panel Bank (or a Panel Bank's subsidiaries or affiliates), a LIBOR-Based Instrument that paid interest indexed to a U.S. dollar LIBOR rate set at any time during the period August 2007 through August 2009 ("Class Period") regardless of when the LIBOR-Based Instrument was purchased." LIBOR VII, 299 F. Supp. 3d at 608.

[5] This Court also held public fairness hearings concerning the settlements on October 23, 2017 (Barclays), January 23, 2018 (Citi), and October 25, 2018 (HSBC and Deutsche Bank).

3

entering the final judgments, we found that the notice programs for the four settlements satisfied due process and Rule 23 because the programs incorporated "myriad methods" and constituted "the best notice practicable under the circumstances."[6]  Final Approval of Barclays and Citi Settlements, 327 F.R.D at 491-92; see also ECF No. 2746, ¶ 11 (making similar findings for the Deutsche Bank and HSBC notice program).  The notice programs clearly informed class members of their right to opt out and the consequences of failing to do so, explaining that "[u]nless you exclude yourself, you give up the right to sue [Settling Defendants] for the claims that you release through this Settlement."  ECF No. 1943-1 at 9 (Barclays settlement); see also ECF Nos. 2266-1 at 8 and 2576-1 at 10 (similar language for other settlements).  In addition, notifications of 61 separate ECF entries related to the four settlements and the Litigation Class were sent to the counsel of record for all parties.  See Settling Defs.' Br. Appx., ECF No. 2829 (list of the ECF entries).

---

[6] The approved notice programs were comprehensive. In addition to sending direct mail to potential class members, the notice programs included: "publication notices appearing in widely read financial media such as Barron's, the Financial Times, Investor's Business Daily, the Wall Street Journal, Bloomberg Businessweek, and The Economist"; "extensive online outreach including banner ads on various websites, sponsored keyword searches with Google, Bing, and other search engines"; and "dissemination of a press release through numerous online platforms" to key financial and business media throughout the world. Settling Defs.' Joint Mem. of Law in Opp. to NCUA's Mot. for Exclusion ("Settling Defs.' Br."), ECF No. 2829, at 2-3; see also ECF Nos. 2275-1, 2380, 2699 (declarations describing the notice programs for the four settlements).

**DISCUSSION**

Despite these extensive, multi-faceted notice programs, NCUA - who filed a complaint on September 23, 2013, asserting LIBOR-related claims on behalf of five liquidated Credit Unions[7] - claims that it received <u>none</u> of the notices regarding the four settlements or the Litigation Class. According to NCUA, it first learned about its failure to opt out on October 30, 2018 – after this Court entered the final judgments approving the four settlements and their notice programs – when counsel for Barclays contacted NCUA's counsel regarding the Barclays settlement. <u>See</u> Mem. of Law in Supp. of Mot. for Exclusion form Class Settlements ("NCUA's Br."), ECF No. 2839, at 6.

In support of its motion for exclusion from the four settlements and the Litigation Class, NCUA argues that its failure to opt out formally was due to "excusable neglect" under Fed. R. Civ. P. 6(b)(1)(B), <u>see</u> NCUA's Br., at 10-11, and that formal opt-out was not necessary because it "affirmatively expressed its intent to opt out of the [s]ettlements and the Litigation Class" by actively litigating its individual claims against the defendants, <u>id.</u> at 2. We consider each argument in turn.

---

[7] The five Credit Unions are: U.S. Central Federal Credit Union, Western Corporate Federal Credit Union, Members United Corporate Federal Credit Union, Southwest Corporate Federal Credit Union, and Constitution Corporate Federal Credit Union. NCUA originally filed the complaint in the District of Kansas, and the action was transferred to this District and was subsequently consolidated into this MDL.

I.   **"Excusable Neglect"**

In general, "[a] class member seeking permission to opt out late must first demonstrate 'excusable neglect' for his or her failure to comply with a fixed deadline" consistent with 6(b)(1)(B).  In re Painewebber Ltd. P'ships Litig., 147 F.3d 132, 135 (2d Cir. 1998); see also In re Four Seasons Sec. Laws Litig., 493 F.2d 1288, 1290 (10th Cir. 1974).  A party seeking relief under the "excusable neglect" standard "must show both good faith and a reasonable basis for not acting within the specified period." In re Del-Val Financial Corp., 154 F.R.D. 95, 96 (S.D.N.Y. 1994) (citing Four Seasons, 493 F.2d at 1290).  The determination of whether the movant's conduct constitutes "excusable neglect" is an equitable one that requires a court to consider "all relevant circumstances." Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership, 507 U.S. 380, 391 (1993).  However, in applying the Supreme Court's ruling in Pioneer, the Second Circuit has noted that "the equities will rarely if ever favor a party who fails to follow the clear dictates of a court rule" and held that "where the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose under the Pioneer test." Silivanch v. Celebrity Cruises, Inc., 333 F.3d 355, 366 (2d Cir. 2003) (internal citations omitted).

Settling Defendants contend that NCUA's motion "should be viewed as a motion for relief from judgment under Rule 60(b)" and

6

thus can only be granted if NCUA makes a showing of exceptional circumstances. Settling Defs.' Br. at 5. We agree that NCUA's motion should be viewed as a Rule 60(b) motion. NCUA is not seeking a simple extension of time to submit opt-out requests. Rather, NCUA is seeking to be relieved from this Court's final judgments approving the four settlements. However, we recognize that Rules 6(b)(1)(B) and 60(b) embody the same "excusable neglect" standard.[8] See 3 William B. Rubenstein, Newberg on Class Actions § 9:45 (5th ed. Jun. 2019 update) (the "excusable neglect" standard "arises from the court's discretion to grant an extension of time under Federal Rule of Civil Procedure 6(b), to grant relief from its judgment or order under Rule 60(b)(1), and to enter orders managing class actions under Rule 23(d)," and the standard is "identical under all three"); see also Pioneer, 507 U.S. at 392-93 (finding that the "excusable neglect" standard is the same for Federal Rules of Civil Procedure 6(b) and 60(b)(1)).

In an effort to make a showing of "excusable neglect," NCUA argues that NCUA "acted in good faith by relying on an established [internal] process," in which NCUA's Asset Management and Assistance Center ("AMAC") "reviews and processes mailed notices of class-action settlements." NCUA's Br. at 12. NCUA asserts that AMAC searched its email archive and mail logging system for

---

[8] In addition, although the parties dispute whether the Second or Tenth Circuit law applies to NCUA's motion, we find that the "excusable neglect" standard is applied in both the Second and Tenth Circuits.

any class-action notices relating to Settling and Non-Settling defendants and did not find any. See Decl. of Conrad Wirries ("Wirries Decl."), ECF No. 2840, ¶ 7.

To the contrary, the mailing record provided by lead counsel for OTC plaintiffs shows that three mailed notices were delivered to Catalyst Corporate Credit Union ("Catalyst"), the successor to one of the named plaintiffs in NCUA's individual action, Southwest Corporate Credit Union ("Southwest Corporate").[9] See NCUA's Ex. 2, ECF No. 2839-1. NCUA argues that Catalyst is not one of the five defunct credit unions on whose behalf it has brought claims. However, NCUA admits that Catalyst is the successor to Southwest Corporate, thus making applicable the case law holding that found "[t]he failure of the internal procedures of the plaintiffs to see that the notice reached the proper person [to be] no excuse." Supermarkets Gen. Corp. v. Grinnell, 59 F.R.D. 512, 514 (S.D.N.Y. 1973), aff'd sub nom. Manhattan-Ward, Inc. v. Grinnell Corp., 490 F.2d 1183 (2d Cir. 1974). Moreover, due process notice requirements are not dependent on whether all potential class members physically receive mailed notice. See State of West Virginia v. Chas. Pfizer & Co., 440 F.2d 1079, 1090-91 (2d Cir. 1971) (holding that, although some potential class members did not

---

[9] As Settling Defendants point out, a notice regarding another unrelated class action settlement that was mailed to Catalyst Corporate Credit Union "enabled NCUA's settlement evaluation processes to function." Settling Defs.' Br., at 12 (citing Wirries Decl.'s Ex. A, ECF No. 2840-1).

8

receive notice regarding the settlement, the notice program still satisfied due process because it was the best notice practicable under the circumstances). The burden does not fall on Settling Defendants to ensure that NCUA actually received the mailed notices, and a failure in NCUA's internal system to properly process the notices is entirely NCUA's fault and responsibility.[10]

Even if we assume arguendo, and contrary to the record, that NCUA did not receive any mailed notice, NCUA received legally sufficient notice of the settlements and the Litigation Class through the publication notice programs approved by this Court. The settlement administrator utilized "a rigorous publication notice program spanning" major national newspapers and magazines and "Internet advertising . . . across various targeted websites." See OTC Pls.' Mem. of Law in Supp. of Mot. for Order Approving Joint Notice Program for Deutsche Bank and HSBC Settlements, ECF No. 2516, at 6-7. Furthermore, NCUA was on notice of the opt-out deadlines through its counsel, who received no fewer than 61 ECF notices regarding the four settlements and the Litigation Class.[11]

---

[10] In fact, other government entities who had also filed separate actions in this MDL opted out of the settlements and the Litigation Class without any issue. See, e.g., ECF Nos. 2319, 2412 (lists of class members who properly submitted opt-out requests). For example, the Federal Deposit Insurance Corporation is a government entity that, just like NCUA, is asserting claims as a receiver of multiple failed financial institutions.

[11] See, e.g., ECF Nos. 1336-38, 2195-96, 2226, 2448-50, 2472-74 (preliminary approval motions); ECF Nos. 1926-30, 1939, 1943, 2155, 2229, 2251-54, 2515-18, 2590-91 (filings concerning settlement notices and notice programs); ECF Nos. 1948, 2290, 2579 (orders establishing the opt-out deadlines). In addition, ECF notifications regarding the public fairness hearings were sent to the counsel of record for all parties.

Incredibly, NCUA argues that the ECF system was not one of the approved mechanisms for providing notice to potential class members. NCUA's Br., at 13. However, as Settling Defendants underscore, NCUA is chargeable with the information that was included in the ECF notifications its counsel received. See, e.g., Nemaizer v. Baker, 793 F.2d 58, 62-63 (2d Cir. 1986) ("[A]n attorney's actions, whether arising from neglect, carelessness or inexperience, are attributable to the client, who has a duty to protect his own interests by taking such legal steps as are necessary. To rule otherwise would empty the finality of judgments rule of meaning." (emphasis added)); see also Shumsker v. Citigroup Global Mkts. Inc., 569 Fed. App'x 16, 19 (2d Cir. 2014) (finding no excusable neglect where counsel "had actual notice of the opt-out requirement"). Thus, NCUA can be "held accountable for the acts and omissions of [its] attorneys." Pioneer, 507 U.S. at 396.

NCUA also argues that there is no prejudice to defendants in allowing NCUA to opt out late, and that "[t]he only effect of granting NCUA's request would be to allow NCUA to continue to litigate the claims that it is already litigating." NCUA's Br., at 13. However, Settling Defendants would indisputably suffer prejudice from reviving claims that were previously and properly released in exchange for consideration totaling $590 million. See In re Am. Express Fin. Advisors Sec. Litig., 672 F.3d at 130 ("[Defendant] would suffer prejudice if [the movants] were

10

permitted to opt out of the Class Settlement three years late, as it would be exposed to liability that it had every reason to think had been foreclosed by the entry of the Settlement Agreement in federal court."). Therefore, we find that NCUA has not demonstrated any sufficient showing of "excusable neglect."

## II. "Active Litigation"

NCUA's argument that it affirmatively expressed its intent to opt out of the four settlements and the Litigation Class by actively litigating its individual action fares no better. As a threshold matter, "most courts hold that pending parallel litigation is not sufficient to communicate an opt-out request." 3 William B. Rubenstein, Newberg on Class Actions § 9:46 (5th ed. Jun. 2019 update); see also Berman v. L.A. Gear, Inc., No. 91-cv-2653 (LBS), 1993 WL 437733, at *5 n.1 (S.D.N.Y. Oct. 26, 1993), aff'd., 29 F.3d 621 (2d Cir. 1994) ("It is well recognized that pendency of an individual action does not excuse a class member from filing a valid request for exclusion.").

NCUA asserts that this widely accepted case law is not applicable to this case because it did not just merely rely on "pendency of an individual action" but "has taken active steps to pursue its individual claims during the opt-out period." NCUA's Reply Mem. of Law in Further Supp. of Mot., ECF No. 2836, at 5. NCUA selectively quotes generous language from Four Seasons – in which the Tenth Circuit found that "[a] reasonable indication of

11

a desire to opt out ought to be sufficient" – and asserts that its litigation activities of "notic[ing] an interlocutory appeal, amend[ing] its protective complaint, and submit[ing] briefing in support of its motion to amend its original complaint," NCUA's Br., at 2, were reasonable indications of its desired exclusion.

However, Four Seasons is readily distinguishable on its facts. In Four Seasons, Bank of America - the entity seeking to opt out after the deadline - had actually contacted the settlement trustee before the deadline to confirm "whether it could participate in the class recovery as a member of a class and also retain its cause of action which was already filed" and, after further correspondence with class counsel, wrote to the trustee one day after the deadline to request an opt-out form. 493 F.2d at 1290. Therefore, when the Tenth Circuit assessed "a reasonable indication of a desire to opt out," id. at 1291, it is abundantly clear that the Circuit was referring to Bank of America's actual engagement with the settlement administrator, not its active litigation of its individual action.

Furthermore, as Settling Defendants point out, NCUA's focus on the "active" nature of its participation in this MDL "only confirms the absence of any excuse for ignoring settlement class opt-out deadlines of which they had actual notice." Settling Defs.' Br., at 17. As discussed supra, NCUA received actual notices through the notice programs that satisfied due process and

12

Rule 23, but NCUA did not take any step in the span of 960 days to notify this Court, the settlement administrator, or any of the defendants about its desire to opt out before the deadlines to do so expired. Therefore, allowing NCUA to be excluded from the four settlements and the Litigation Class – especially after we have already entered the final judgments – "will erode finality of complex adjudications, discourage class action settlements, permit return of the former option of one-way intervention, and place a burden on judicial resources." McCubbrey v. Boise Cascade Home & Land Corp., 71 F.R.D. 62, 69 (N.D. Cal. 1976).

NCUA cites several cases in which courts allowed plaintiffs who did not satisfy specific opt-out requirements to be excluded because they reasonably indicated their desired exclusion. However, unlike NCUA, the plaintiffs in those cases did not utterly fail to notify any relevant party about their desired exclusion after receiving multiple settlement notices. We consider each case in turn.

In Butler v. Fairbanks Capital, No. 04-cv-0367 (RMU), 2005 WL 5108537 (D.D.C. Jan. 3, 2005), a plaintiff seeking to be excluded from a class action settlement filed an individual action against the defendant during the opt-out period. See id. at *1-2. In the instant case, NCUA had commenced its lawsuit more than two years before OTC plaintiffs moved for preliminary approval of the first settlement that was reached with Settling Defendants. Filing a

13

lawsuit during the opt-out period can be a clear statement of desired exclusion, but litigation activities in a pending case do not necessarily mean that a party does not wish to take advantage of the settlement between the class and a defendant. NCUA cannot expect this Court or Settling Defendants to be mind readers who can decipher NCUA's intent based on its litigation activities unrelated to the proposed settlements, especially when NCUA is still asserting claims against defendants that were not part of the four settlements or the Litigation Class.

In McCubbrey, the court ruled that two specific groups of plaintiffs who brought individual suits were not bound by the settlement: (1) those who commenced individual suits against the defendant prior to receipt of a settlement notice because they "were afforded inadequate notice of the class settlement"[12]; and (2) those who filed suit after receipt of the notice but prior to termination of the opt-out period because they "effected substantial compliance with the opt-out requirement." 71 F.R.D. at 67. None of those rulings helps NCUA, since NCUA: (1) does not argue that the language of the notices was inadequate; and (2) did not commence its individual action during the opt-out period.

---

[12] The McCubbrey court found the notice inadequate because "[n]othing in the detailed, 29-page Notice would alert even a careful reader that he must satisfy the exclusion requirements or suffer the consequence of permitting his ongoing litigation to evaporate." 71 F.R.D. at 68.

14

In In re Brand Name Prescription Drugs Antitrust Litig., 171 F.R.D. 213 (N.D. Ill. 1997), a plaintiff's individual action was consolidated into the MDL action, and the plaintiff "followed the procedures for opting out of the class" but sent the opt-out notice to an incorrect address. See id. at 214. The plaintiff then filed another action against the same defendants and four new defendants after the opt-out deadline. See id. at 214-15. In the instant case, NCUA did not even attempt to follow the court-approved procedures for opting out before the deadlines.

In Morris v. Affinity Health Plan, Inc., 928 F. Supp. 2d 805 (S.D.N.Y. 2013), aff'd, 558 F. App'x 51 (2d Cir. 2014), a plaintiff did not file a formal notice of exclusion but indisputably objected to the settlement agreement by "timely fil[ing] her objections with the Court." Id. at 809. This ruling does not help NCUA since it did not file any objection to the settlements or the Litigation Class with this Court before the opt-out deadlines.

In Bonner v. Texas City Indep. Sch. Dist. of Tex., 305 F. Supp. 600 (S.D. Tex. 1969), the court found that certain plaintiffs in a racial discrimination lawsuit "expressed a firm desire not to become associated with this [class] action" in their testimony at trial. Id. at 617. This expression was "sufficient to constitute a request to be excluded." Id. NCUA has never expressed on the record in open court "a firm desire not to become associated" with the OTC class action.

In sum, NCUA's reliance on those cases is nothing more than a futile attempt to fit a square peg into a round hole. We thus reject NCUA's argument that it affirmatively expressed its desired exclusion by actively litigating its individual action.

## CONCLUSION

As we noted at the outset of this opinion, NCUA failed to exclude itself from the four settlements and the Litigation Class despite direct mail, multiple notices in the financial press, and dozens of ECF notifications. To find on these facts that NCUA has demonstrated a showing of "excusable neglect" or affirmatively expressed its intent to opt out by "actively litigating" its individual action would effectively write those legal standards out of the law. We decline to do so.

For the foregoing reasons, NCUA's motion for exclusion from the OTC class settlements and the OTC Litigation Class is denied. The Clerk of Court is respectfully directed to terminate the pending motions listed at docket entries 2838 in 11 MD 2262 and 279 in 13 CV 7394.

**SO ORDERED.**

Dated: New York, New York
July *10*, 2019

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE