**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: LIBOR-BASED FINANCIAL | MDL No. 2262 (NRB) |
| INSTRUMENTS ANTITRUST LITIGATION | Honorable Naomi Reice Buchwald |
| THIS DOCUMENT RELATES TO: | |
| MAYOR AND CITY COUNCIL OF BALTIMORE, et al., | No. 11-cv-5450 (NRB) |
| Plaintiffs, | |
| v. | |
| CREDIT SUISSE AG, et al., | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF OTC PLAINTIFFS' MOTION
TO AUTHORIZE DISTRIBUTION OF THE BARCLAYS, CITIBANK,
DEUTSCHE BANK, AND HSBC NET SETTLEMENT FUNDS TO CLAIMANTS AND
REIMBURSEMENT OF CLAIMS ADMINISTRATION EXPENSES**

## INTRODUCTION

OTC Plaintiffs move this Court for an Order authorizing (i) the distribution of the net settlement funds to claimants that have filed valid proofs of claims in the class settlements reached with Barclays Bank plc ("Barclays"), Citibank N.A. and Citigroup, Inc. ("Citi"), Deutsche Bank Aktiengesellschaft ("Deutsche Bank"), and HSBC Bank plc ("HSBC") (the "Settlements") and (ii) the reimbursement of approximately $6.5 million in expenses incurred by, or to be in incurred by, Class Counsel for services by the Claims Administrator Rust Consulting, Inc. ("Rust") and Bates White LLC ("Bates White") in connection with their processing and auditing of the validity of the over 7,000 Proof of Claim forms submitted to Rust— corresponding to over 41,000 distinct claims and consisting of over 11 million financial transactions submitted in connection with the claims administration process for the Settlements—and to distribute funds to the almost 2,000 Authorized Claimants whose claims are not *de minimis*.

## BACKGROUND

### A.    The Underlying Litigation and the Class Action Settlements

In this multi-district litigation, the OTC Plaintiffs alleged that the defendants—the banks that sat on the U.S. Dollar LIBOR panel between August 2007 and May 2010 (the "Panel Banks")—engaged in "conspiracy to manipulate LIBOR," causing LIBOR to be "suppressed artificially low, reaping hundreds of millions, if not billions, of dollars in ill-gotten gains." ECF No. 1857 ¶¶ 4-5. The OTC Plaintiffs are entities that entered into over-the-counter financial transactions tied to U.S. Dollar LIBOR directly with one or more Panel Banks and received artificially suppressed interest payments during the relevant period as a result of the Panel Banks' illicit conduct. *E.g.*, *id.* ¶¶ 12-14. OTC Plaintiffs represent a certified class challenging

the Panel Banks' coordinated suppression of the 1- and 3-month U.S. Dollar LIBOR tenors over the period August 2007 through August 2009. *See generally* ECF No. 2452 at 298-360.

On November 11, 2015, OTC Plaintiffs entered into an "icebreaker" $120 million settlement with Barclays to resolve these claims against Barclays on a classwide basis. ECF No. 1338-1 (Barclays Settlement). On August 15, 2017, OTC Plaintiffs settled with Citi on a classwide basis for $130 million. ECF No. 2226-1 (Citi Settlement). On February 6, 2018 OTC Plaintiffs settled with Deutsche Bank on a classwide basis for $240 million, ECF No. 2450 (Deutsche Bank Settlement), and on February 15, 2018, OTC Plaintiffs settled with HSBC on a classwide basis for $100 million, ECF No. 2474-1 (HSBC Settlement). The Court granted final approval of the Barclays and Citi settlements on August 1, 2018, ECF No. 2655, and final approval of the Deutsche Bank and HSBC settlements on October 25, 2018, ECF No. 2746. Given the timing of the Court's orders granting final approval to all four Settlements, Class Counsel determined, in consultation with the Claims Administrator, that a single claims validation and distribution process would save expense and maximize the class recoveries. For example, this process allows claimants to receive a single check representing their total distribution from all Settlements to which they submitted a valid claim, rather than separate checks for each Settlement.

**B.    Class Notice**

As part of the Court's approval of the subject Settlements, the Court also approved OTC Plaintiffs' proposed notice plans for the Barclays Settlement, ECF Nos. 1948, 2155, Citi Settlement, ECF No. 2290, and the Deutsche Bank and HSBC Settlements, ECF No. 2579. Accordingly, notice programs consisting of direct notice to over 135,000 potential class members; paid media in national newspapers, business and trade magazines, and targeted

websites; global earned media with an internationally distributed press release; and dedicated settlement websites were implemented by Rust and Kinsella Media. ECF Nos. 2275-1, 2380, 2699. Rust also maintained a toll-free hotline and dedicated email address for responding to class member inquiries, and responded to thousands of direct inquiries from potential class members during the notice periods. ECF No. 2275-2, 2376, 2695. As part of these efforts, Rust was also engaged by certain defendants to provide direct notice to their own counterparties with respect to the Citi, Deutsche Bank, and HSBC settlements, as contemplated by OTC Plaintiffs' proposed notice programs. *See* ECF No. 2252 at 1, 4-5; ECF No. 2516 at 2, 6. Counsel for OTC Plaintiffs agreed to seek reimbursement of the costs of these defendant-directed notices from the respective settlement funds.

## C.    The Claims Administration Process

The final claims deadline closed on December 20, 2018. Declaration of Amy L. Lake in Support of OTC Plaintiffs' Motion to Authorize Distribution of the Barclays, Citibank, Deutsche Bank, and HSBC Net Settlement Funds to Claimants and Reimbursement of Claims Administration Expenses ("Lake Decl.") ¶ 9. Claimants were required to submit a claim form either in paper format or electronically. *Id.* ¶ 13. The claim form required claimants to provide, for every individual U.S. Dollar LIBOR-based transaction supporting their claim, the information necessary to process and audit the validity and invalidity of each transaction, including, *inter alia*:

- o   The identity of the Panel Bank counterparty paying interest tied to LIBOR;

- o   The effective date of the transaction (for various swaps) or issue/purchase date (for bonds and floating rate notes);

- o   The maturity or cancelation date of the transaction (for various swaps) or

maturity/call/sale date (for bonds and floating rate notes);

o   The tenor of U.S. Dollar LIBOR applicable to the transaction;

o   A confirmation that U.S. Dollar LIBOR was the applicable LIBOR currency;

o   The notional amount of the transaction;

o   The frequency of LIBOR interest payments under the transaction; and

o   Any non-standard terms of the transaction.

*E.g.*, ECF No. 2700 at 23-30 (Proof of Claim form for HSBC and Deutsche Bank Settlements). Claimants were required to submit this information under penalty of perjury. *Id.* Because Proof of Claim forms may be submitted by institutional filers and include claims on behalf of multiple individual beneficial account owners, Rust received over 41,000 distinct claims in total. Lake Decl. ¶¶ 11, 34. Rust, working with Bates White Consulting ("Bates White"), then processed and reviewed all of these claims and the more than 11 million transactions submitted with those claims to determine their validity and invalidity. *Id.* ¶¶ 14-19. Bates White specializes in advanced financial, economic, and data analysis, and was engaged to assist Rust with validating claims and/or transactions and calculating distributions to Authorized Claimants. *See* Declaration of S. Ilan Guedj in Support of OTC Plaintiffs' Motion to Authorize Distribution of the Barclays, Citibank, Deutsche Bank, and HSBC Net Settlement Funds to Claimants and Reimbursement of Claims Administration Expenses ("Guedj Decl.") ¶¶ 1, 4.

Claims and/or transactions[1] were determined to be either (i) valid, (ii) invalid, (iii) or deficient. Lake Decl. ¶¶ 8, 20; Guedj Decl. ¶¶ 10-15. Valid claims or transactions required no

---

[1] Although sometimes all transactions in a claim received the same classification (either valid, invalid, or deficient), it was often the case that different transactions submitted as part of a claim received different designations. For this reason, some claimants received notifications that their entire claim was invalid or deficient, while others received notifications that a subset of the transactions they submitted were invalid or deficient.

further action by the claimant and would be included in the calculation of the claimant's distribution. Guedj Decl. ¶ 10. Claimants whose claims or transactions that were partially or totally invalid or deficient were sent deficiency and invalidity notifications, which listed on a per transaction basis the applicable deficiency and invalidity "codes" and instructions for how to cure the transactions, if it was possible to do so. Lake Decl. ¶¶ 20-21; Guedj Decl. ¶¶ 11-15. Generally, invalid transactions showed indicia that they were not curable (*e.g.*, they were not tied to U.S. Dollar LIBOR), while deficient transactions were missing sufficient information to make a validity or invalidity determination or to calculate the distribution associated with that transaction. Guedj Decl. ¶¶ 10, 12-15.

These deficiency and invalidity notices were sent on a rolling basis as Rust and Bates White continued to process and audit the tens of millions of transactions received during the claims process. Lake Decl. ¶ 20; Guedj Decl. ¶ 17. The notices stated in clear and conspicuous language that failure to appropriately respond to the notice with a curative or supplemental submission would result in rejection of the claim or transactions in question. Lake Decl. ¶¶ 20-21.

Throughout the deficiency notification process, Rust engaged in regular correspondence with claimants or their authorized representatives to explain the deficiency and invalidity determinations and assist them in curing their claims and transactions, if they were curable. Lake Decl. ¶¶ 4, 22. Rust also continued to receive new claims, which were processed and audited for validity and invalidity if submitted on or before October 1, 2019. *Id.* ¶¶ 29, 34-36. Claims received after October 1, 2019 were not processed or audited for validity or invalidity, as it was determined that processing and auditing them at that late stage would unduly burden and delay the final distribution of the net settlement funds to claimants. *Id.*

After reviewing claimants' responses to the deficiency and invalidity notices, Rust and Bates White also performed a quality assurance review that covered 99.9% of the overall notional amount of all claims submitted to the Settlements. Lake Decl. ¶ 25; Guedj Decl. ¶¶ 18-22. During the validation process, Rust also sent additional notifications to all claimants reflecting the status of their claims and transactions and provided information on how to contest the Claims Administrator's determinations of claim or transaction validity. Lake Decl. ¶¶ 24-25. Only one claimant, corresponding to Claimant IDs 5000260 and 5000261, has indicated that it wishes to present a dispute over the validity of its claims to the Court for review, *id.* ¶ 32, as provided for in the Settlement Agreements, *e.g.*, ECF No. 2450-1 ¶ 11(c)(iv). That claimant's transactions were rejected because they were not qualifying U.S. Dollar LIBOR Instruments, as the claimant paid and did not receive interest tied to U.S. Dollar LIBOR on those transactions. Lake Decl. ¶ 32. Accordingly, Class Counsel recommends that the Court approve the Claims Administrator's determination that this claim be rejected.

All told, of the over 11 million transactions processed and audited by Rust and Bates White, approximately 1.3 million transactions, representing 11% percent of all transactions submitted, were ultimately determined to be valid during the claims auditing process. Lake Decl. ¶¶ 4, 26-27. Rust and Bates White processed and audited almost 6 million transactions that were ultimately rejected, most commonly because the transaction was not a qualifying U.S. Dollar LIBOR Instrument (*e.g.*, a bank loan on which the claimant paid interest tied to LIBOR for a currency other than U.S. Dollar or an instrument tied to a non-LIBOR interest rate). Lake Decl. ¶ 26; Guedj Decl. ¶ 24.[2] Furthermore, Rust and Bates White processed over 4 million transactions

---

[2] Indeed, the volume of facially invalid transactions submitted to Rust suggests that many prospective claimants had prepared generic summaries of all of their financial dealings to be submitted in the Yen LIBOR, Foreign Exchange, ISDAfix, and other recent financial antitrust

that claimants later voluntarily withdrew from their claims. Lake Decl. ¶ 28.

**D.    Class Counsel's Proposed Distribution**

    **i.    The Net Settlement Fund**

The original aggregate amount of the common fund created by the Settlements was $590 million. After deducting attorneys' fees, incentive awards, and litigation expenses previously authorized by the Court, and including interest received and taxes paid by the Court-approved escrow agent Huntington Bank, the aggregate settlement fund was $476,108,082.02 as of June 30, 2021, or $99,120,905.32 in the Barclays settlement fund, $96,707,914.81 in the Citi settlement fund, $82,069,838.25 in the HSBC settlement fund, and $198,209,423.64 in the Deutsche Bank settlement fund. Declaration of Geng Chen ¶ 4. If reimbursement of the expenses incurred by Class Counsel in connection with Rust and Bates White's claims processing and auditing services is approved by the Court, the total amount available for distribution to claimants as of June 30, 2021 would be $469,571,729.79, or on a per settlement basis, the Net Settlement Funds would total $96,890,207.83 for Barclays, $94,698,568.99 for Citi, $80,921,683.80 for HSBC, and $197,061,269.19 for Deutsche Bank.

    **ii.    Proposed Treatment of Late Filed Claims**

A number of claims were filed after the claims deadlines for the Settlements had passed. Lake Decl. ¶ 34. As discussed above, a determination was made that these 960 late claims, all of which were received prior to October 1, 2019, would be processed and audited for validity or invalidity, as doing so would not unduly burden the net settlement funds or delay final

---

settlements. *See* Lake Decl. ¶ 27 n.5 (describing example of an institutional filer who submitted almost 7 million transactions, of which over 4 million were rejected); *cf.* ECF No. 2655 at 33 (observing objector MCAG had "submitted claims based on its educated guesses" thereby "foisting on the claims administrator the entire burden of determining which entities in fact had valid claims and, as a corollary, saddling the class with the expenses incurred by the claims administrator in so doing").

distribution to other claimants. *Id.* ¶¶ 29, 34. This determination took into account the experiences of the Claims Administrator in administering class action settlements, where it is typical to accept some claims after the official deadlines. *Id.* ¶ 29.

It is appropriate for the Court to approve distribution to claimants who filed late claims where the equities favor such distribution. *Zients v. LaMorte*, 459 F.2d 628, 629-30 (2d Cir. 1972) ("Until the fund created by the settlement is actually distributed, the court retains its traditional equity powers."). Here, "the administration of the fund would be insignificantly hampered by allowing these [] late claims" filed before October 1, 2019. *Id.* at 630-31. Class Counsel therefore proposes that the Court order that claims filed before October 1, 2019 be accepted, and that no claims submitted after October 1, 2019 be accepted to avoid delay of distribution and prejudice to other claimants.[3]

### iii.    Requested Reimbursement of Claims Administration Expenses

OTC Plaintiffs also request the reimbursement of $6,536,352.23 in expenses incurred by Class Counsel for claims administration work performed by Rust and Bates White from the settlement funds as well as for expenses associated with providing direct notice to certain defendants' counterparties. *See, e.g.*, ECF No. 1338, Ex. A ¶ 10(b) ("All costs and expenses incurred in connection with providing Class Notice and the administration of the settlement in excess of $500,000 shall be paid from the Settlement Fund, subject to approval for the Court."); ECF No.  2226-1 ¶ 10(b) (same); ECF No. 2450-1 ¶ 10(b) (same); ECF No. 2474-1 ¶ 10(b) (same). Rust and Bates White performed necessary and reasonable work in connection with the

---

[3] *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 CPS/SMG, 2009 WL 803382, at *6 (E.D.N.Y. Mar. 25, 2009) ("there is an implicit recognition that late claims should ordinarily be considered in the administration of a settlement" unless untimely claims "cause[] significant delay to the distribution of the net settlement fund or otherwise prejudiced any claimant") (internal citations and quotation marks omitted).

processing and auditing the over 41,000 claims and almost 11.5 million underlying transactions submitted by claimants.

Rust's efforts included (1) handling the intake of all digital and paper Proof of Claim forms; (2) transposing the contents of the almost 5,000 "hard copy" forms and voluminous other supporting documents into a digital form that could be systematically processed along with the digital records; (3) analyzing and loading over 1,600 e-filed transaction data files, many of which were submitted in non-standard format, to load the approximately 11 million transactions contained in these documents into a useable database; (4) sending thousands of deficiency and invalidity notices to claimants; (5) handling the intake and processing of thousands of claimant responses; and (6) regularly corresponding with claimants through written and telephonic means to help claimants understand and, if possible, cure claims or transactions initially determined to be invalid or deficient; Rust will also (7) distribute the settlement funds to Authorized Claimants based on the *pro rata* share determinations ordered by this Court, as reflected in Exhibit 1 to the Guedj Declaration, or in such other amounts as the Court may order. Lake Decl. ¶¶ 4, 7-26, 37-38. Rust also provided direct notice to certain defendants' counterparties. *See id.* ¶ 4; *see also supra* p. 4.

Bates White's efforts included (1) auditing the underlying transactions to make initial determinations of validity, invalidity, or deficiency; (2) processing and analyzing claimant responses; (3) working with Rust to help claimants cure claims and transactions, where possible; (4) performing an extensive quality assurance process covering 99.9% of the total notional amount of all transactions submitted; and (5) calculating every Authorized Claimant's pro rata share, based on the approved plans of distribution. Guedj Decl. ¶¶ 10-34.

The costs associated with direct notice to certain defendants' counterparties and this

claims administration process for which Class Counsel seeks reimbursement from the Settlements, including estimates of costs that will be incurred by Rust and Bates White for the actual distribution to Authorized Claimants, total $6,536,352.23. Lake Decl. ¶ 43; Guedj Decl. ¶ 35. Specifically, the expenses on a per-Settlement basis constitute $2,230,697.50 associated with the Barclays Settlement, $2,009,345.83 associated with the Citi Settlement, $1,148,154.46 associated with the HSBC Settlement, and $1,148,154.46 associated with the Deutsche Bank Settlement. Lake Decl. ¶ 43; Guedj Decl. ¶ 35. These costs varied among the Settlements for a number of reasons, including (1) the Proof of Claim forms for Settlements other than the Barclays Settlement allowed claimants who had previously filed claims to rely on the transaction data previously submitted rather than re-submitting the same data, which affected processing and validation costs; (2) one Proof of Claim form was used for the HSBC and Deutsche Bank Settlements; and (3) the costs of direct defendant-directed notice varied between the Settlements. *See, e.g.*, ECF No. 2518-3 (Proof of Claim for HSBC and Deutsche Bank Settlements); Lake Decl. ¶ 4. Class Counsel respectfully requests reimbursement of these totals from the common settlement funds prior to their distribution to claimants with valid claims.

### iv.    Proposed Distribution to Claimants

Consistent with the Court-approved plans of distribution, Class Counsel proposes that claimants be compensated *pro rata* based on their *pro rata* share (*i.e.*, the claimant's overall notional stake for transactions determined to be valid, divided by the aggregate notional stake for transactions determined to be valid of all Authorized Claimants). *E.g.*, ECF No. 2517-1. Because not every claimant submitted claims in every settlement and consistent with the plans of distribution, claimants' *pro rata* shares have been calculated on a per-Settlement basis as reflected in Exhibit 1 to the Guedj Declaration.

The plans of distribution include provisions for *de minimis* claims, defined as claims with distributions of $10 or less. *E.g.*, ECF No. 2517-1 ¶ 7. Claimants with *de minimis* claims will not receive a distribution because the cost of distributing these claims is greater than the value of the claims themselves. *E.g.*, *id.* Consistent with the single distribution process for all four Settlements, the determination of whether a claim is *de minimis* was performed across all settlements to which the claimant submitted a claim, rather than on a settlement-by-settlement basis. Guedj Decl. ¶¶ 32-33. This ensures that claimants with relatively low-dollar value claims have a greater opportunity to participate in the Settlements (*e.g.*, a claimant with $5 claims to each of the four Settlements would receive a distribution of $20 instead of nothing), at minimal additional cost to the class. To the extent that the Court-approved plans of distribution is read to require *de minimis* calculations to be performed on a settlement-by-settlement basis, Class Counsel respectfully requests a minor modification to implement the cross-settlement calculation described in this paragraph.

If the proposed distribution and request for reimbursement of expenses is approved by the Court, (1) claimants for the Barclays Settlement will receive their *pro rata* share of the $96,890,207.83 Barclays Net Settlement Fund, as calculated in Exhibit 1 to the Guedj Declaration; (2) claimants for the Citi Settlement will receive their *pro rata* share of the $94,698,568.99 Citi Net Settlement Fund, as calculated in Exhibit 1 to the Guedj Declaration; (3) claimants for the HSBC Settlement will receive their *pro rata* share of the $80,921,683.80 HSBC Net Settlement Fund, as calculated in Exhibit 1 to the Guedj Declaration; (4) and claimants for

the Deutsche Bank Settlement will receive their *pro rata* share of the $197,061,269.19 Deutsche Bank Net Settlement Fund, as calculated in Exhibit 1 to the Guedj Declaration.[4]

## CONCLUSION

For the foregoing reasons, Class Counsel respectfully requests the Court enter the proposed order attached to this motion which provides:

(1) Approval of the Claims Administrator's administrative determinations concerning the claims submitted, which incorporate Class Counsel's recommendations concerning late-filed claims, aggregation of *de minimis* claim calculations, and the one dispute submitted by a claimant for the Court's review, as discussed above;

(2) Approval of the proposed distribution of *pro rata* claims reflected in Exhibit 1 to the Guedj Declaration;

(3) Reimbursement of expenses incurred for claims administration;

(4) Prohibition of any additional claims to these Settlements;

(5) Release of claims against persons involved in the claims administration process for claims arising out of such involvement; and

(6) Reiteration of the Court's continued jurisdiction over the administration of these Settlements.

Dated: July 9, 2021

---

[4] Because the plans of distribution require *pro rata* claims to be rounded to the nearest dollar, approximately $1,000 from the total Net Settlement Funds have not been allocated in this initial distribution. Pursuant to the Settlement Agreements, this amount plus any other balance remaining in the Net Settlement Funds "whether by reason of tax refunds, uncashed checks or otherwise" after six months from the date of distribution may be re-allocated by the Claims Administrator "if logistically feasible and economically justifiable," and to the extent there is a *de minimis* balance, it may be donated upon approval by the Court. *E.g.*, ECF No. 1338, Ex. A ¶ 11(j).

By:    /s/ Michael D. Hausfeld                    /s/ William Christopher Carmody

Michael D. Hausfeld                              William Christopher Carmody (WC8478)
Hilary Scherrer                                  Arun Subramanian (AS2096)
Nathaniel C. Giddings                            Seth Ard (SA1817)
HAUSFELD LLP                                     Geng Chen (GC2733)
888 16th Street, N.W., Suite 300                 SUSMAN GODFREY L.L.P.
Washington, DC 20006                             1301 Avenue of the Americas, 32nd Fl.
Telephone: (202) 540-7200                        New York, NY 10019-6023
Facsimile: (202) 540-7201                        Telephone: (212) 336-3330
mhausfeld@hausfeld.com                           Facsimile: (212) 336-8340
hscherrer@hausfeld.com                           bcarmody@susmangodfrey.com
ngiddings@hausfeld.com                           asubramanian@susmangodfrey.com
                                                 sard@susmangodfrey.com
Gary I. Smith, Jr.                               gchen@susmangodfrey.com
HAUSFELD LLP
325 Chestnut Street, Suite 900                   Marc M. Seltzer
Philadelphia, PA 19106                           Glenn C.  Bridgman
Telephone: (215) 985-3270                        SUSMAN GODFREY L.L.P.
Facsimile: (215) 985-3271                        1900 Avenue of the Stars, Suite 1400
gsmith@hausfeld.com                              Los Angeles, CA 90067-6029
                                                 Telephone: (310) 789-3100
                                                 Facsimile: (310) 789-3150
                                                 mseltzer@susmangodfrey.com
                                                 gbridgman@susmangodfrey.com

                                                 Matthew Berry
                                                 Drew D. Hansen
                                                 SUSMAN GODFREY L.L.P.
                                                 1201 Third Avenue, Suite 3800
                                                 Seattle, WA 98101-3000
                                                 Telephone: (206) 516-3880
                                                 Facsimile: (206) 516-3883
                                                 mberry@susmangodfrey.com
                                                 dhansen@susmangodfrey.com

                                                 Barry C. Barnett (BB1984)
                                                 Karen Oshman
                                                 Michael Kelso
                                                 SUSMAN GODFREY L.L.P.
                                                 1000 Louisiana Street, Suite 5100
                                                 Houston, TX 77002-5096
                                                 Telephone: (713) 651-9366
                                                 Facsimile: (713) 654-6666
                                                 bbamett@susmangodfrey.com

koshman@susmangodfrey.com
mkelso@susmangodfrey.com

*Co-Lead Class Counsel for the OTC Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 9, 2021, I caused the foregoing document to be served via the

Electronic Case Filing (ECF) system in the United States District Court for the Southern District

of New York, on all parties registered for CM/ECF in the above-captioned matter.


Dated: July 9, 2021

*/s/ Geng Chen*
Geng Chen
